**IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | | |
|---|---|---|
| Dipesh Singla, | ) | 1:25-cv-08098<br>Judge Sara L. Ellis<br>Magistrate Judge Jeffrey T. Gilbert<br>RANDOM / Cat. 1 |
| Plaintiff, | ) | |
| | ) | |
| **BC** v. | ) | **Case No**. _____ |
| | ) | **Hon'ble Judge**. _____ |
| UNIVERSITY OF CHICAGO; | ) | |
| BOARD OF TRUSTEES AT THE UNIVERSITY OF CHICAGO; | ) | |
| UNIVERSITY OF CHICAGO SENATE; | ) | |
| PROVOST UCHICAGO (AND OFFICE); | ) | |
| PRESIDENT OFFICE UCHICAGO (AND OFFICE); | ) | |
| DEPARTMENT OF PHYSICS; | ) | |
| CAMPUS AND STUDENT LIFE; | ) | |
| HARRIS SCHOOL OF PUBLIC POLICY; | ) | |
| UCHICAGO HUMAN RESOURCES; | ) | |
| SOCIAL SCIENCES COMPUTING SERVICES; | ) | |
| UNIVERSITY OF CHICAGO BURSAR OFFICE; | ) | |
| MANSUETO INSTITUTE FOR URBAN INNOVATION; | ) | |
| OFFICE OF INTERNATIONAL AFFAIRS; | ) | |
| STUDENT DISABILITY SERVICE; | ) | |
| UNIVERSITY OF CHICAGO MEDICINE; | ) | |
| UNIVERSITY OF CHICAGO HOSPITALS; | ) | |
| CHARTWELLS HIGHER EDUCATION UNIVERSITY OF CHICAGO; | ) | |
| UCHICAGO DINING; | ) | |

RECEIVED AXK
7/16/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

CAMPUS DINING ADVISORY BOARD;                                    )

TEAMSTERS LOCAL 743;                                            )

UNIVERSITY OF CHICAGO ARTS;                                     )

GRADUATE STUDENT UNITED (UCHICAGO);                            )

EQUAL OPPORTUNITY PROGRAMS;                                     )

DEAN KATE S. BIDDLE (HARRIS SCHOOL OF PUBLIC POLICY);   )

DEAN ETHAN BUENO DE MESQUITA;                                  )

DEAN BAHAREH LAMPERT;                                          )

DR. DON COURSEY;                                               )

DR. BRUCE MEYER;                                               )

DR. MARIN BAUTISTA;                                            )

DEAN MICHAEL HAYES;                                            )

PRESIDENT PAUL ALIVISATOS;                                     )

PROVOST KATHERINE BAICKER;                                     )

MELISSA B. M. VERGARA;                                         )

JEREMY W. INABINET;                                           )

DANIELLE NEMSCHOFF;                                           )

ANGIE GLEGHORN (HR);                                          )

CHRISTINA KLESPIES;                                           )

TRACI VERLEYEN HOPE;                                          )

CAROL BRIDGEMAN (CSI);                                        )

ANNIE DIAMOND (DIVISIONAL COORDINATOR, SSCD);          )

DR. ADA PALMER;                                               )

AYRELLE GILES (QAD, CHARTWELLS HIGHER EDUCATION);      )

ARUN BANOTRA (SSCS);                                             )

BART LONGACRE (ASSISTANT DEAN FOR INFORMATION -                  )

TECHNOLOGY, SSCS);                                              )

DIANA GONZÁLEZ (SSD DEAN OFFICE);                              )

DEAN AND OFFICE OF SOCIAL SCIENCES DIVISION;                   )

KERRY SHARKEY (SSCS);                                          )

SCOTT BRADWELL (SSCS);                                         )

SHOMARI TATE (SSCS);                                           )

NELSON BALBARIN (SSCS);                                        )

CORY MARTIN (SSCS);                                            )

ARKUS ROSE (RUSTANDY);                                         )

CARA PARRISH (UCHICAGO ARTS);                                  )

LOGAN CENTER;                                                  )

ERIN BRENNER (LOGAN CENTER);                                   )

FRANK GILBERT (LOGAN CENTER);                                  )

BRIAN WILSON (MANSUETO INSTITUTE FOR URBAN INNO);              )

AIMEE GILES-SCOTT; (MANSUETO INSTITUTE FOR URBAN Inn); )

HEIDI LEE(MANSUETO INSTITUTE FOR URBAN INNO);                 )

PROFESSOR DR. JOHN BURROWS (Harris School of PP);             )

JASMIN JOHNSON;   (HR)                                        )

CHRISTINA KLESPIES (SSD HR);                                  )

MARY MCCLELLAND;   (HR)                                       )

OFFICE FOR SEXUAL MISCONDUCT PREVENTION;                      )

MEGAN HECKEL (OFFICE FOR SEXUAL -                             )

MISCONDUCT PREVENTION);                                          )

VICKIE SIDES;                                                    )

VOGEL LABS;                                                      )

UCHICAGO FACILITIES;                                            )

TITLE IX AND ADA/SECTION 504 COORDINATOR                         )

OFFICES/GROUP AT UCHICAGO;                                       )

UCHICAGO CARES;                                                  )

DEPARTMENT OF SAFETY AND SECURITY;                               )

SEXUAL ASSAULT DEAN ON CALL;                                     )

CAMPUS SECURITY AUTHORITY UCHICAGO,                              )

   Defendants.                                    )

[and other individuals and entities to be named with attorney guidance, and full complaint], Plaintiff reserves the right to amend this Complaint to name additional defendants as identified through discovery or based on counsel's investigation

**Defendants.**                                                  **)**

**JURY TRIAL DEMANDED**

**COMPLAINT FOR DAMAGES, DECLARA TORY, AND INJUNCTIVE RELIEF**

**(All statements below requested to be considered allegations as per Hon'ble court procedures/protocols) (Plaintiff request further protection of any action against, as this complaint is filed in good faith, and allegedly as whistleblower also)**

## I. PRELIMINARY STATEMENT

1. This is a civil rights, whistleblower, discrimination, and breach of contract action brought by John Doe ("Plaintiff with Pseudo Name"), a former graduate student and employee of the University of Chicago. This complaint seeks redress for a systematic pattern of retaliation, discrimination, harassment, denial of due process, Breach of contract and other

unlawful conduct perpetrated by the University of Chicago and its various officers, departments, and agents. These actions led to his wrongful expulsion, wrongful termination, jobs losses, and harm to his education, career, research, health, and wellbeing.

2. After Plaintiff allegedly engaged in legally protected activities including reporting safety violations, food safety and quality issues, gases mishandling, filing union and internal grievances in good faith, whistleblowing, discrimination, and reporting a physical and sexual assault by person identified as "Shrivatsa Thulasiram", Defendants orchestrated a coordinated campaign of reprisal. This campaign included the termination of multiple student employment positions, the initiation of a biased, prejudged, predetermined, and pretextual disciplinary process based on falsified evidence, omission of evidence, the denial of disability accommodations, and ultimately, Plaintiff's wrongful expulsion from the University. Plaintiff, acting as a whistleblower, reported misconduct including discrimination, misuse of federal funds/non-profit status for personal purchases etc, unsafe campus conditions, unclean (dirty) dinning and facilities, and assault cover-ups and inaction on such serious offences. Defendants retaliated by expelling him, firing him, denying disability accommodations, and intimidating him, violating federal and state laws.

3. Plaintiff respectfully asks the Court to grant the following relief: monetary damages as determined by a jury, including compensation for lost educational, employment, research, mental and emotional harm; a formal ruling that the University violated Plaintiff's rights; an order requiring changes to the University's policies and practices; public apologies approved by the Plaintiff; refund of tuition and fees; other damages jury seems important for plaintiff and future; lost opportunities damages; recognition of Plaintiff's disadvantaged background; and investigation into the misuse of federal funds and nonprofit status. Plaintiff also requests appointment of counsel under 28 U.S.C. § 1915(e)(1) and Local Rule 83.35 and asks that the Court protect Plaintiff's identity and personal information by allowing sealed or anonymous filings to avoid further harm.

4. Defendants' actions have caused Plaintiff severe emotional, professional, and financial harm. Plaintiff brings this action to hold Defendants accountable for their unlawful conduct, to seek compensatory and punitive damages, and to obtain injunctive and declaratory relief to prevent such abuses from happening to others. Plaintiff brings this action in the capacity of a whistleblower, seeking to expose and obtain redress for misconduct that threatens the

public interest, public safety, involves employer wrongdoing, a demonstrated pattern of retaliation, discrimination, falsification of records, fabricated disciplinary measures, Breach of contract, and violations impacting whistleblowers, grievance filers, children's rights, taxpayer funds, non-profit status, patient and research subject rights, individual civil rights, human rights, as well as rights guaranteed under state and federal constitutions. Plaintiff further seeks to protect the rights of grievance filers and whistleblowers, and to address concerns relating to food safety, sanitary conditions, and the fundamental rights implicated thereby.

5. This Complaint is filed pursuant to Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff has endeavoured to present the facts in a short, plain, and organized manner, with each paragraph limited to a distinct occurrence or legal contention, in compliance with Rule 10(b). Plaintiff attached redacted version of full complaint in first information packet for more details and after seal plaintiff request that plaintiff can upload the full version of complaint, redacted version can be docketed for public in good faith.

6. Plaintiff respectfully requests that the full version of complaint be submitted to the Court under seal pursuant to Local Rule 26.2 and relevant case law allowing for restricted public access to sensitive personal information. Plaintiff further requests that a redacted version be made available on the public docket, wherein identifying information, including the Plaintiff's name, photographs (like screenshots of emails, video recordings or other personal details capable of linking the individual to the allegations (including religion, caste, sex, disability, but not limited to these), addresses including email if any, Medical or mental health information, Employment records, Harassment or assault allegations, Student or minor data, IFP be omitted or anonymized. Plaintiff further requests that the Court maintain the IFP application under seal and restrict access to Defendants and public, as the financial information is solely for the Court's assessment and irrelevant to the merits of the case. Plaintiff requests that these proceedings and filings be sealed at this time to protect sensitive interests as set forth herein, but expressly reserves the right to seek an order from this Court to lift the seal and make these records publicly accessible upon prevailing/winning in this matter or upon a subsequent showing of good cause.

7. Plaintiff respectfully requests that any remote video or audio proceedings in this matter not be recorded and not to be entered into the public record, and, if recorded by the Court for

internal purposes, that the recording remain sealed and inaccessible to the public or Defendants, in light of Plaintiff's overseas location and the sensitive nature of the circumstances.

8. Plaintiff makes this request in recognition of the fact that courts are public forums. This request is made to avoid further reputational harm, including but not limited to defamation, academic or professional retaliation, interference with future employment, damage to career trajectory, educational barriers, immigration consequences, and social stigmatization especially in the event of an unfavourable disposition of this matter.

9. The Plaintiff further submits that this case raises issues of systemic importance and should serve as a reference for future litigants and courts. Accordingly, Plaintiff is amenable to a redacted or abstract version of this matter being cited in public legal resources, so long as the Plaintiff remains unidentifiable therein.

10. This request is to serve the interests of justice while respecting the public's right of access to court proceedings and is supported by precedents including *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981), and Local Rules of the U.S. District Court for the Northern District of Illinois governing sealed filings and redactions.

## I.A REQUEST TO PROCEED UNDER PSEUDONYM

11. Plaintiff respectfully moves this Court to allow this action to proceed under the pseudonym "John Doe," and to permit the filing of a redacted complaint on the public docket. This request is necessary to protect Plaintiff's personal privacy and safety, and to avoid additional harm that could result from public disclosure of sensitive information.

12. This matter involves allegations of discrimination, retaliation, disability rights violations, and whistleblower claims against a powerful and resource-rich academic institution. Plaintiff, a former student and employee of the University, has already suffered significant reputational harm, professional exclusion, and educational setbacks. Disclosure of his identity in the public record particularly in the event of an unfavourable outcome would risk further defamation, blacklisting, further academic retaliation, and interference with future career and immigration prospects.

13. Plaintiff acknowledges the public nature of judicial proceedings but asserts that the public interest can be preserved through access to anonymized filings. Courts have

recognized the permissibility of pseudonymous litigation where the issues are sensitive and where plaintiffs face potential harm, including social stigma, reputational injury, and institutional retaliation. See *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981); *Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710 (7th Cir. 2011). The use of a pseudonym is consistent with Local Rule 26.2 and the Court's inherent discretion to protect litigants from unnecessary exposure. Accordingly, Plaintiff requests that all future public filings reference Plaintiff by pseudonym, and that the Court grant leave to file a sealed, unredacted version of the Complaint and related pleadings with the Clerk of Court.

## I.B REQUEST FOR CONFIDENTIAL SUBMISSION OF SENSITIVE EMPLOYMENT AND LEGAL SEARCH RECORDS

14. Plaintiff respectfully requests leave to confidentially submit to the Court, under seal, select digital records showing Plaintiff's diligent efforts to retain counsel and apply for employment during the relevant period. These records include job application submissions, rejections, and outreach to various law firms and organizations. These documents are intended solely to show Plaintiff's good faith attempt to secure legal representation and income, and not for publication or general disclosure.

15. Plaintiff requests that this material be withheld from the Defendants and the public docket pursuant to **Fed. R. Civ. P. 5.2(d)** and **Local Rule 26.2**, as its disclosure may interfere with future employment and professional opportunities and would result in additional reputational harm, prejudicing Plaintiff's ability to seek redress. The Plaintiff affirms this request is narrowly tailored to preserve fairness, judicial efficiency, and Plaintiff's rights.

## II. JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) as Plaintiff's claims arise under the Constitution and laws of the United States, including but not limited to Title VI and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d & § 2000e; Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681; the Americans with Disabilities Act (ADA); the Rehabilitation Act; the False Claims Act, 31 U.S.C. § 3729; and 42 U.S.C. § 1983.

17. Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391, as Defendants are located in Chicago, Illinois, and the events occurred here.

18. "6. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Defendant University of Chicago's challenged actions constitute state action (plausibly alleged) under 42 U.S.C. § 1983. Though organized as a private institution, Defendant meets all three tests for state action established by the Hon'ble Supreme Court:

First, Defendant performs the traditional public function of immigration control through its mandatory administration of the SEVIS program on behalf of the Department of Homeland Security, 8 C.F.R. § 214.3 (United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292 (2d Cir. 1991)).

Second, Defendant is pervasively entwined with government through its acceptance of multi million (if not billion) in annual Title IV funding and federal research grants (Brentwood Acad. v. TSSAA, 531 U.S. 288, 296 (2001)). Even absent traditional state action, Defendant's acceptance of Title IV funds (34 C.F.R. § 668.1) imposes constitutional duties under Doe v. Washington Univ., 780 F.3d 479, 485 (8th Cir. 2015) (holding private universities "voluntarily submit to First Amendment constraints" by accepting federal aid).

Third, Defendant's University of Chicago Police Department - a state-commissioned law enforcement agency with full arrest powers/detention powers – allegedly engaged in retaliatory surveillance, intimidation, obstruction of grievances, of Plaintiff (Flagg v. City of Detroit, 252 F. App'x 30 (6th Cir. 2007)). Notwithstanding Rendell-Baker v. Kohn, 457 U.S. 830 (1982), Defendant's unique hybrid of federal immigration authority and police powers distinguishes this case from ordinary private university matters. Such activity is analogous to the circumstances recognized in Flagg v. City of Detroit, 715 F.3d 165 (6th Cir. 2013), where private police officers were deemed state actors when exercising state-conferred powers in a discriminatory or retaliatory manner.

Fourth, Private entity allegedly performing municipal functions like defendant was deemed a state actor. Notre Dame provided housing, utilities, police, and other services typically reserved to municipalities, suggesting it performed a "public function (3:13 CV 1239, 2016 WL 5394493 (N.D. Ind. Sept. 27, 2016)). The court allowed the § 1983 claim to proceed, distinguishing this case from Rendell-Baker v. Kohn (457 U.S. 830, 1982), where a private school was not a state actor despite public funding, by focusing on Notre Dame's role as a quasi-municipal entity rather than solely an educational institution. The court held that

Notre Dame could be a state actor because its self-contained campus operated like a "company town" under Marsh v. Alabama, 326 U.S. 501 (1946). The plaintiff successfully alleged that Notre Dame controlled public-like services and infrastructure—such as roads, utilities, and housing, and exercised delegated state policing powers through its security force. These factors mirrored municipal functions, making the state actor claim plausible. Likewise, the Defendant, University of Chicago's expansive campus, with its own police force wielding state authority, public infrastructure, and comprehensive governance, exhibits the same characteristics. Thus, the University of Chicago must be deemed a state actor under the state action doctrine.

Fairly together, the University's role in enforcing federal immigration laws, operating a deputized police force, and reliance on public funds supports, non-profit status, a finding that its actions in the context of Plaintiff's discipline, surveillance, and retaliation are "fairly attributable to the state." Accordingly, Defendant is subject to liability under the Fourteenth Amendment and 42 U.S.C. § 1983 for constitutional violations arising from its conduct. In the alternative, even if Defendant is not deemed a state actor under prevailing constitutional doctrine, its conduct nonetheless violates Title IX, Title VI, and the ADA, which independently prohibit discrimination and retaliation by recipients of federal financial assistance."

19. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same nucleus of operative facts as the federal claims.

20. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and the Defendants conduct business and are located in this district.

### III. THE PARTIES

21. Plaintiff **John Doe (Pseudo Name Plaintiff)** is an individual and a former graduate student and student-employee at the University of Chicago.

22. Defendant **THE UNIVERSITY OF CHICAGO,** is a private, federally funded, and non-profit university located in Chicago, Illinois (5801 S. Ellis Ave., Chicago, IL 60637). It receives substantial federal funding and is subject to federal and states laws governing education, employment, and civil rights. The other named Defendants are agents,

departments, students, staff, affiliates, or governing bodies of the University of Chicago who were directly or indirectly involved in the events described herein.

23. Defendant Board of Trustees oversees the University's policies, at the same address.

24. Defendants Office of the Provost, Office of the President, Harris School of Public,   Policy, Social Sciences Computing Services (SSCS), Student Disability Services, Office of International Affairs, University of Chicago Police Department, and Mansueto Institute but not limited to these institutions and individuals,  are University units responsible for actions against Plaintiff, some at the same address and some in nearby Hyde Park community.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Status and Protected Activities

25. Plaintiff was an international graduate student at the University of Chicago Started September 2023 and held multiple student-employee positions across various university departments, including union-eligible roles.

26. Plaintiff has a documented disability with University of Chicago and had requested reasonable accommodations from the University of Chicago, that were denied.

27. Throughout his time at the University, Plaintiff alleges that plaintiff acted in good faith as a whistleblower by reporting multiple instances of misconduct, including A. Unsafe handling of hazardous materials (gas cylinders) in the Physics Department basement. B. A sexual and physical assault perpetrated by a person who was or is a student and student staff affiliated with the University of Chicago. C. Systematic food safety violations in campus dining facilities and cafés. D. Potential financial misconduct, including misuse of non-profit status and improper tax practices. E. Wrongful termination of job role F. Misuse of federal funds and/or nonprofit status, G. Discrimination and unequal treatment H. Child labour in university event (may have discussed in SSCS office) I. Good staff including faculty and offices staffs leaving university (Inability to retain talent and good natured staff) J. Wrongful termination of plaintiff boss at the SSCS(and/or as lecturer as well), University of Chicago, K Discrimination L. Autocratic wrongful terminations by university and HR Managers/Executives. M. Quality of education (low quality education, new and un-interested professors as opposed to world-class faculty).  N. No recognition of ideas, free

speech and expression, Unequal treatment and discrimination based on nationality, O. Wrongful cancelations of Job Interviews, and unfair and discriminatory hiring practices based on protected classes. P. Pattern of staff removal after someone leaves office or get terminated Q. Mental health conditions R. Denial of disability accommodations S. Protection of assaulter (or assailant or assailants) T. Data privacy violations U. Abusive use of authority and it's powers V. Denial of due process W. Student protective policies like title IX being on papers only. X. No issuance of No Contact directives to plaintiff. Y. Student government election misconduct unequal treatment, and discrimination. Z. Retaliation and Breach of contract.

28. On or about January, 2025 end, Plaintiff requested to initiate a formal grievance through the Graduate Student United (GSU) at University of Chicago for the wrongful termination of his employment. The union submitted a formal grievance notice on his behalf on or about February 1, 2025. This constitutes protected activity under the National Labor Relations Act (NLRA). Plaintiff was subjected to retaliation shortly, thereafter, including jobs termination, disciplinary action, and ultimately expulsion.

29. University officials failed to follow due process, did not provide progressive discipline, and retaliated for Plaintiff's protected activities.

30. Plaintiff asserts was subject to discriminatory treatment based on race, gender, caste, nationality, religion, and disability and protected activities participation.

31. Plaintiff asserts that plaintiff was also subjected to surveillance and breach of privacy, in violation of FERPA and other applicable laws.

32. Plaintiff is reporting misconduct, including:

   a. Discrimination based on disability, Indian origin, Hindu religion, and caste.

   b. Retaliation against students reporting sexual assault and Title IX violations.

   c. Misuse of federal funds, tax-exempt status, and student aid, including falsified financial records and donor fund misuse.

   d. Unauthorized surveillance of student activists by University police.

   e. Unsafe conditions, including Gas/chemical mishandling, food safety violations, and environmental negligence.

f. Deceptive tuition pricing, false job outcome claims, and coercive loan practices.

g. Research misconduct, including informed consent violations in NIH studies.

## B. <u>The University's Retaliatory Campaign</u>

33. Immediately following Plaintiff's protected activities, Defendants began a series of adverse and retaliatory actions.

34. **Wrongful Terminations:** Plaintiff was terminated from **at least seven different student employment positions** in short succession, including his role at the Social Sciences Computing Services (SSCS) and a union-protected role at the Mansueto Institute. These terminations were often without notice or legitimate cause.

35. **Pretextual Disciplinary Action:** On or about February 12, 2025, just days after Plaintiff filed a union grievance, the University issued a disciplinary summons against Plaintiff. The charges were based on pretextual grounds, relying on alleged incidents that either occurred well before the issuance of the summons, had already been resolved, or in fact never existed. The University abruptly initiated these charges only after Plaintiff filed the grievance, denied Plaintiff any meaningful due process, and imposed discipline based on matters over a year old, in direct violation of the University's own 60-day limitations rule.

36. **Use of Fabricated Evidence:** Plaintiff alleges and asserts that the "Travel Notification Form" used as the primary basis for his expulsion was forged or fraudulently created by university officials. Plaintiff never submitted the form, nor did he receive the standard automated email confirmation that accompanies all such submissions. The University failed to provide any technical validation (IP logs, metadata) to prove the form's authenticity, despite requests.

37. **Denial of Due Process:** The disciplinary hearing was fundamentally biased. The panel selectively ignored exculpatory evidence, prevented discussion of Plaintiff's union-protected employment, and was improperly influenced by non-voting administrators like Dean Kate Biddle, who misrepresented facts during the proceeding. The entire process appeared to be pre-determined, prejudged, and fabricated to result in expulsion, and it's appeal's process.

38. **Wrongful Expulsion:** On February 25, 2025, before the union grievance of February 1 2025, process could proceed and before Plaintiff's appeal period on the disciplinary matter had concluded, the University formally expelled him. This action effectively silenced his grievances and denied him any meaningful redress.

39. **Discrimination and Hostile Environment:** Throughout this period, Plaintiff was subjected to a hostile environment based on his disability, religion (Hindu), and national origin (Indian). This included mocking comments from staff about his disability, discriminatory application of work-hour rules that were not applied to other students, and a general environment of exclusion.

40. **Retaliatory Surveillance:** After filing complaints, Plaintiff alleges that plaintiff observed the conspicuous and intimidating presence of University of Chicago Police Department (UCPD) vehicles near his residence, a tactic reasonably perceived as surveillance and harassment.

41. **Defendants retaliated by (Not limited to):**

a. Expelling Plaintiff in with alleged unfair, bias, predetermined, prejudged, hearing and allegedly using forged evidence.

b. Discriminatively terminating his jobs at SSCS and Mansueto Institute with pretextual reasons.

c. Denying disability accommodations without an interactive process or appeal.

d. Misreporting data, delaying transcripts, and allegedly tampering with records, by strategically sending transcripts again or after the discipline blot was added on transcripts especially to Harvard law school as was cached so that plaintiff may not get legal support or knowledge to sue them for their alleged wrongdoing, misconduct, falsification, discrimination, and pattern of multiple retaliations.

e. Conducting surveillance and intimidation via university police.

f. Ignoring grievances, violating University policies and federal law.

g. Plaintiff full time job roles interview got cancelled without reason.

h. University gave terminations for non-union roles, but not for union roles

i. University didn't gave wages of many hours that plaintiff worked

j. Non hearing of grievances of discrimination, retaliation

42. Defendants' actions caused Plaintiff severe emotional distress, trauma, depression, anxiety, financial loss (tuition, wages, opportunities), and career disruption. Plaintiff believes plaintiff felt tortured by the university campaigns from alleged bad quality education, non-supportive professors and staff, grievance fillings, assault, protection of assault, wrongful terminations, discrimination, retaliation, unsafe environment of university, and plaintiff in internal grievance had also mentioned that allegedly, that all made breathing become difficult in that environment.

43. Plaintiff's grievances were dismissed or mishandled, reflecting systemic retaliation against whistleblowers, abuse of authority, and discrimination.

44. Defendants' misconduct may imply misuses public funds, harms students, and violates civil rights, necessitating judicial intervention.

45. The expulsion process lacked impartiality, due process, breached University rules, causing educational, professional, mental and health harm.

## C. Further whistleblowing

46. Plaintiff further alleges and brings to the Court's attention, as a whistleblower, that UChicago Medicine and its affiliated hospitals are engaged in research misconduct and fraudulent research practices. Plaintiff also alleges that Vogel Lab is conducting research studies in bad faith. Additional details regarding these allegations are set forth in the full complaint. Multiple other whistleblowers are in full document of complaint.

## V. CLAIMS FOR RELIEF

## COUNT I: RETALIATION IN VIOLATION OF FEDERAL AND STATE LAW (Title VII, Title IX, ADA, Illinois Whistleblower Act, and Public Policy)

47. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

48. Defendants took severe, adverse educational and employment actions against Plaintiff, including termination and expulsion, as a direct result of his engagement in legally protected activities. These activities include filing a union grievance, reporting safety violations, reporting a sexual and physical assault, and reporting financial and academic misconduct.

49. The adverse actions would not have occurred "but-for" Plaintiff's protected activities. The close temporal proximity between Plaintiff's complaints and the University's adverse actions establishes a causal link.

50. Defendants' actions violate the anti-retaliation provisions of Title VII, Title IX, the ADA, the Illinois Whistleblower Act, Student Manuals, and the common law tort of retaliatory discharge.

51. Plaintiff further alleges that university retaliated and took no action against assaulter since he was working in Gordon Center, and plaintiff suspects that he might be working on federally funded program/project(and/or with professor and/or lab, and/or institute, and/or department) who gets such funding) so pressing any charges against him might have reputational harm, funding revocations, care of assaulter future, for the university, whereas plaintiff was not in similar position, That's why after initially suggesting no contact directive, university didn't gave the NCD.

**COUNT II: <u>DISCRIMINATION IN VIOLATION OF FEDERAL AND STATE LAW (Title VI, Title IX, ADA, Rehabilitation Act, and Illinois Human Rights Act)</u>**

52. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

53. Defendants subjected Plaintiff to discrimination and a hostile educational and work environment based on his disability, religion, race, and national origin.

54. This discrimination included failing to provide reasonable disability accommodations, subjecting him to ridicule, applying policies in a disparate manner compared to non-Hindu and non-Indian students, and failing to provide equal access to institutional resources and protections.

55. Defendants' actions violate Title VI, Title IX, the ADA, Section 504 of the Rehabilitation Act, and the Illinois Human Rights Act.

## COUNT III: <u>DENIAL OF DUE PROCESS AND BREACH OF CONTRACT</u>

56. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

57. The University of Chicago, by accepting Plaintiff as a student and employee, entered into an express and implied contract to provide a fair educational environment and to abide by its own published policies, including its student manual, disruptive conduct policy, and grievance procedures.

58. Defendants breached this contract and violated Plaintiff's right to procedural and substantive due process by: a. Conducting a sham disciplinary proceeding based on fabricated evidence. b. Failing to provide a neutral and unbiased adjudicator. c. Ignoring and suppressing exculpatory evidence. d. Denying Plaintiff the right to an informal grievance resolution process. e. Prematurely imposing sanctions before the conclusion of all appeal and grievance processes.

59. These actions deprived Plaintiff of his property and liberty interests in his education and employment without the due process of law guaranteed by the Fourteenth Amendment and Illinois common law.

## COUNT IV: <u>FRAUD, MISREPRESENTATION, AND CONSUMER FRAUD (Illinois Consumer Fraud and Deceptive Business Practices Act)</u>

60. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

61. Defendants engaged in unfair and deceptive practices by making material misrepresentations to Plaintiff and the public regarding the quality of its educational programs, student support services, career outcomes, and financial aid practices.

62. These misrepresentations induced Plaintiff to enroll and pay substantial tuition. The University's practices, including flawed exam procedures, deceptive employment statistics, and coercive financial aid arrangements, constitute violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.

**COUNT V: <u>VIOLATION OF PRIVACY RIGHTS (FERPA, CONSTITUTIONAL LAW)</u>**

**63.** Defendant unlawfully accessed Plaintiff's communications and educational records without consent.

**COUNT VI: <u>MISUSE OF FEDERAL FUNDS AND FALSE CLAIMS ACT VIOLATIONS (31 U.S.C. § 3729 et seq.)</u>**

**64.** Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein. Plaintiff alleges, upon information and belief, that the University of Chicago permitted student workers including international students working in multiple institutional roles in excess of the federally and/or institutionally mandated hourly limits under F-1 student visa regulations, union contracts, and internal employment policies.

**65.** These violations raise significant concern where such labor appears tied to federally funded programs, research initiatives, or educational services for which the University claims federal reimbursement, grants, or other nonprofit benefits.

**66.** Plaintiff further alleges that such conduct may constitute a pattern of misuse of federal funds, potentially violating the False Claims Act (31 U.S.C. § 3729), which prohibits knowingly presenting false claims for payment or approval to the United States Government or knowingly retaining overpayments. Further, Plaintiff contends that the institution's nonprofit status and access to federal funding were used in bad faith to support discriminatory and retaliatory practices including selective enforcement of disciplinary action, denial of procedural fairness, and expedited sanctions following protected grievance activity all in violation of state and federal laws, including the False Claims Act (31 U.S.C. § 3729), Title VI, Title IX, and the Equal Protection and Due Process Clauses of the Constitution.

**67.** Upon information and belief, the University's conduct may involve knowingly misclassifying or underreporting work hours, leveraging nonprofit exemptions in bad faith, and concealing or failing to disclose these practices in federally required documentation and grant compliance reports.

**68.** If substantiated through discovery, such acts constitute fraudulent misrepresentations and/or omissions in connection with the receipt and use of federal education, research, or employment funds, and warrant investigation, restitution, penalties, and equitable relief.

**69.** Plaintiff seeks injunctive and declaratory relief, including referral to appropriate federal authorities for investigation of potential violations of the False Claims Act and applicable Department of Education and Department of Labor grant compliance standards.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor after jury trial and against all Defendants, jointly and severally, and grant the following relief:

**A.** A declaration that Defendants' actions violated Plaintiff's rights under federal, constitutional and state law.

**B.** Declaration of University of Chicago being state actor

**C.** Revocation of all of Universities Federal Fundings,

**D.** Revocation of Non-profit and Tax-exempt status.

**E.** Revocation of privilege of sponsoring international student; Revocation of ability to sponsor F1 Visa, I-20 Forms, SEVIS Records, CPT and OPT Authorizations,

**F.** Revocation of FERPA Authorizations/Records, etc.

**G.** Relevant penalties to defendants.

**H.** Compensatory damages sum in an amount to be determined at trial by jury for **all** economic losses, harassment, mental torture, discrimination, violations of human, constitutional, federal, and state rights, emotional distress, future opportunities, and reputational harm, and other things mentioned in this or full version of complaint.

**I.** Full Tuition Fee and scholarship refund as compensation

**J.** Punitive damages against Defendants for their wilful, malicious, and reckless disregard of Plaintiff's rights.

**K.** Attorney's fees and the costs of this litigation (if any).

**L.** Lost opportunities and top universities admit or relevant heavy damages (If possible)

**M.** Answer to nuanced constitutional questions arise out of this complex matter, considerations of constitutional issues, and recommendations/proposal to amendments as required to the legislative or other relevant bodies, for such cases no to happen again

**N.** Recognition of term "Educational Terrorism" and/or "Educational terrorists" as mentioned in detail in full complaint.

**O.** Public Apology by each individual involved and by the defendant university to be published that is to be approved and updated by plaintiff, with best search engine optimization on university website for outreach of page, and official YouTube, Twitter, and LinkedIn channels of the university of Chicago and relevant schools and individuals. Manually handwritten letters of apology by defendents to be sent out to plaintiff (Around 5000 letters), to be sent to all place and university plaintiff have to apply for afterwards.

**P.** Any other and further relief that the Court and Jury deems just, equitable, and proper in favour of plaintiff.

**Q.** Recognition of Socioeconomic Vulnerability: Plaintiff requests the Court consider Plaintiff's low/zero-income and deprived status in assessing equitable relief, procedural accommodations, and judicial understanding of power imbalance between Plaintiff and institutional Defendant.

**R.** Formal Acknowledgment of Persecuted Status: Plaintiff respectfully requests that, where permissible under federal law (including Title VII of the Civil Rights Act, Equal Protection Clause, or public policy), the Court formally recognize Plaintiff's identity as a member of a persecuted or marginalized minority group and/or economically disadvantaged class, as a relevant context in assessing the harm and relief due.

## VII MOTIONS

**70.** Plaintiff moves for appointment of counsel, as he is indigent, unemployed, and faces complex legal issues, per Local Rules 83.35, 83.36, and 28 U.S.C. § 1915(e)(1).

**71.** Plaintiff moves to proceed in forma pauperis, unable to pay fees due to financial hardship, per Local Rule 3.3 and 28 U.S.C. § 1915.

**72.** Plaintiff moves for a protective order under FRCP 26(c) to block discovery on unsubstantiated academic misconduct claims, citing reputational harm.

**73.** Plaintiff respectfully moves this Honourable Court to permit service of summons via email or, alternatively, through assistance of the Clerk or U.S. Marshal, in light of Plaintiff's current residence outside the United States and limited ability to effect personal service.

## VIII.  CONFIDENTIALITY REQUEST

Plaintiff requests redaction of his identity and sensitive allegations from public filings under FRCP 5.2 and Illinois Supreme Court Rule 15, citing retaliation risks, per *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981). Nonetheless, Plaintiff respectfully requests that a redacted version of the complaint omitting Plaintiff's name, cultural and religious identifiers, national, details of the assault, caste, race, and medical information remain accessible in the public record, in good faith, for the benefit of law students, scholars, faculty, and members of the legal profession, including attorneys and counsels.

## IX. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: June 25, 2025

Respectfully submitted,

***Signature***

Dipesh Singla

*Pro Se* Plaintiff