BC

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**FILED**
8/27/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

E.C

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS

)
)
)
Plaintiff )
)
v. )
)
)
)
Defendant )

**Case Number**:

**Judge**:

**Magistrate Judge**:

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

**EVIDENCE OF MALICE, FRAUD, OPPRESSION, AND RETALIATION**

The January 7 email correspondence further demonstrates Plaintiff's good faith effort to have hours corrected "according to the rules." Instead of correcting the record, Defendant's staff, including Brian, escalated matters **by threatening** to contact the Dean and academic advisors—individuals who had no supervisory role over the disputed hours—thereby **weaponizing academic channels to intimidate and retaliate**. Plaintiff reasonably perceived this conduct as threatening, coercive, and retaliatory, designed to silence protected activity.

Moreover, Plaintiff specifically noted that disputed hours did not fall within the **academic year.** Despite this, Defendants pushed Plaintiff into a forced meeting that Plaintiff characterizes as a pretextual setup. During this meeting, three Mansueto staff members aggressively pressured Plaintiff regarding **11.1 hours that had been unilaterally added by Heidi**, and not by plaintiff, and which Plaintiff later discovered were intended to create the appearance of misconduct (trap, and fraud). This fabricated trap occurred within days of Plaintiff's protected grievance filings regarding assault, safety violations, and discrimination further evidence of retaliatory intent.

**VIOLATIONS OF DUE PROCESS & UNFAIR LABOR PRACTICES**

The University's actions also violated constitutional protections under the Fifth and Fourteenth Amendments' Due Process Clauses, which forbid arbitrary, oppressive, and retaliatory deprivation of liberty and property interests. See *Rochin v. California*, 342 U.S. 165 (1952) (government conduct that "shocks the conscience" violates substantive due process). Here, the University's misuse of its disciplinary process, denial of progressive discipline, and reliance on incomplete and manipulated evidence constitute a "sham proceeding" that shocks the conscience.

Further, by failing to secure testimony from Dr. Royce—the Plaintiff's direct supervisor for social network analysis project—the University deprived Plaintiff of exculpatory evidence. Dr. Royce never asserted that Plaintiff worked fewer hours than reported; indeed, much of the project work was based on oral discussions between Plaintiff and Dr. Royce, which Mansueto staff were not privy to. Despite this, the University proceeded with discipline that relied on accusations never substantiated by evidence. Illinois courts have long recognized that disciplinary actions taken in bad faith, with incomplete evidence, and without adherence to progressive discipline, may be vacated as unconscionable. See *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1 (2006); *Razor v. Hyundai Motor America*, 222 Ill. 2d 75 (2006).

**TORTIOUS CONDUCT**

The University's conduct also constitutes independent torts under Illinois common law, including:

- **Intentional Infliction of Emotional Distress (IIED):** By threatening Plaintiff's academic standing, removing hours and job roles from Workday, and coercing Plaintiff

into meetings under threat of escalation to the Dean, Defendants engaged in conduct that was extreme, outrageous, and calculated to cause severe distress. See *McGrath v. Fahey*, 126 Ill. 2d 78 (1988).

- **Fraud and Misrepresentation:** By manipulating records of hours, fabricating allegations of "extra work," and suppressing Dr. Royce's exculpatory testimony, Defendants acted with intent to deceive, fraud and mislead.

- **Breach of Duty of Fair Dealing:** Universities, as quasi-public institutions receiving federal funding (alleged full state actor as a federal question in main complaint), owe students and employees a duty to act in good faith. Plaintiff alleges Defendants breached this duty by engaging in bad-faith disciplinary actions designed to retaliate and suppress lawful grievances.

**Plaintiff's Points in Support of Claims**

1. **Protected Activity (January 7 Communication):**
    - Plaintiff was actively communicating with Mansueto staff on January 7 in good faith.
    - This communication directly implicated the Union's role.
    - Even though informal, it functioned as a *grievance* under labor law principles.
    - Plaintiff clearly mentioned hours and job roles are missing. Also alleged that this happened because of issue with this role.
    - Further plaintiff Academic Technology Assistant, SSCS role got terminated within 2 days, on January 9, and got interview cancelled on January 10 for HPC Admin full time role interview. Attached with documents submitted today. Then further this all was used in discipline as well despite of Brian threatening else we will contact dean and academic advisor.
    - Therefore, Plaintiff became engaged in a *protected activity* under the NLRA (29 U.S.C. §§ 157–158) and Illinois Public Labor Relations Act (5 ILCS 315/10).

2. **Prior Protected Activities (Pattern of Conduct):**
    - In November and December, Plaintiff engaged in multiple whistleblowing and grievance activities, including:
        - Filing a formal assault complaint with law enforcement (known to the University).
        - Complaints about unsafe food practices.
        - Reports of gas leaks and cylinder safety issues.

- University had *actual and constructive knowledge* of these protected activities. Also, it is evident university share the data without any ethical and moral considerations for data sharing mostly.

3. **Protected Class**

   Plaintiff was a member of multiple protected classes, including being a micro-minority of Hindu, Baniya caste, South Asian, and Punjabi origin and blood, Indian nationality, disability, and was further protected based on gender and it's sexuality, which is pertinent to the underlying assault complaint and the retaliatory and discriminatory actions taken against him. University had *actual and constructive knowledge* of these protected classes.

4. **Threats and Retaliation by Staff:**

   - Plaintiff asked that hours be corrected "according to their rules."
   - Further in another email plaintiff also mentioned something like if they don't have money don't pay may in good faith, since plaintiff was already working with them when they were not paying to plaintiff like a volunteer attending meeting suggesting ideas in it, and also giving suggestions afterwards to Heidi etc over email.
   - Instead, staff member Brian threatened to escalate the issue to the Dean and academic advisors.
   - Plaintiff alleges this was retaliatory and threatening since:
     - The Dean and advisors had no role in supervising the disputed job.
     - The disputed hours were not even in the academic year.
     - The intent was to intimidate Plaintiff, threaten, and jeopardize his educational career.

5. **Forced Meeting & Pretextual Trap:**

   - Plaintiff was pushed into a meeting that served the University's agenda.
   - Three Mansueto staff members confronted Plaintiff and pressured and trained plaintiff about it's "extra work" that Dr. Royce never agreed till date (That plaintiff did extra work other than what he told to plaintiff).
   - Plaintiff was repeatedly asked about 11.1 hours, which were later discovered to have been unilaterally added by Heidi to trap plaintiff.
   - Plaintiff alleges strongly this was a deliberate trap designed to fabricate misconduct.

6. **Dr. Royce's Testimony Withheld:**

   - Dr. Royce was Plaintiff's direct supervisor.

- o Plaintiff asserts Dr. Royce never alleged Plaintiff worked fewer hours than reported.

- o Much of Plaintiff's project work was based on private calls with Dr. Royce, unknown to Mansueto staff.

- o University never obtained or presented testimony from Dr. Royce, even though it would have been decisive.

- o Plaintiff alleges this omission was intentional because testimony would have undermined the University's claims.

- o Further as no questions were raised about this role being union role, that also excluded them asking questions about what professor actually said, since Brian, Aimee, Heidi, was not directly involved in the project working. Further none of the highly competent research staff allegedly, in discipline meeting asked any questions about what Dr. Royce asked to do, or what was plaintiff intended to do, where does that was copied from, which proof university generated about those allegations.

- o Union also seemed to get trained on the fact as they didn't contest the university saying union person only for union role related issues in discipline, since it was clear and evident escalation and adverse action started and worked from raising questions from Mansueto role that was a union role in 2 days, also because of that only union had to step into it and file grievance for other roles also since that happened frivolously after Mansueto role issue also as a protected activity. Plaintiff on very beginning asked union to give a person who haves legal knowledge or an attorney that would have protected union and plaintiff to fall in their traps and make them take no further action however union didn't do that. Union didn't have any person that knows laws and the people and representatives that are representing employees are also student studying various subject mostly non law. So that make them effectively in same condition of legal knowledge as plaintiff and as any general layman. Plaintiff was asking them questions as it believed that they would have more experience and legal knowledge, which plaintiff don't, however plaintiff believes it was proved wrong many many times but there was no one to hear that.

- o If that would have done the condition would have been far less bad for plaintiff. Who knows if at that time or after step 3 grievance for this matter union and university might have Shaked hands for maybe good bargaining/talk etc that was probably supposed to be scheduled on or about March 10 or so, however as this can't be eventually proved so not much relevance of this line here.

7. **Retaliatory Escalation Beyond Work Role:**

    - o Despite Plaintiff's timely reply to Brian's email (before the 3 p.m. Chicago time deadline), Brian still escalated the matter to the Dean and advisors which he

- initially said if plaintiff will not reply then, however at each instance plaintiff was replying promptly as plaintiff have time to see emails.

- Around January 15, the Dean contacted Plaintiff regarding payroll/tax issues from six months prior.

- Plaintiff did not resist paying taxes, but this showed surveillance and lack of confidentiality shortly after this protected activity, removal of 3 job roles, termination of interview for full time job role after applying to 1000's of university roles.

- Plaintiff alleges this escalation was retaliatory and intended to discredit.

8. **Removal of Hours, Jobs and Digital Retaliation:**

    - Plaintiff's hours and job roles were removed from Workday following grievance activity.

    - Plaintiff alleges this was retaliatory and also functioned as a form of **"digital arrest"**—forcing Plaintiff to attend meetings under threat of removal of jobs, hours, defamation and academic harm.

    - U.S. Labor Law: National Labor Relations Act (NLRA), 29 U.S.C. § 158(a)(1) & (3). Prohibits retaliating against an employee for engaging in protected concerted activity, like filing a grievance. (NLRB v. J. Weingarten, Inc.: Established that an employee has a right to union representation during an investigatory interview they believe might lead to discipline. This is analogous to the "meetings under threat" part of your allegation. And plaintiff clearly told the union people that if university will expel plaintiff that will kill the grievance, however union people said it will not, however it got killed eventually and never took to even step 1 or 2).

    - Title VII of the Civil Rights Act of 1964: Retaliation - It is illegal for an employer to retaliate against an employee because they opposed an unlawful employment practice (e.g., discrimination or harassment) or participated in an investigation.

    - FLSA (Constructive Discharge): Treats an employee's resignation as a firing if working conditions were made intolerably hostile.

    - Illinois Human Rights Act: Prohibits retaliation for complaining about discrimination, covering actions like reducing hours or changing job duties.

    - Right to Privacy in Workplace Act: Shields employees from retaliation for their lawful off-duty activities.

    - BIPA: Could be argued if biometric data was coerced during the incident, though this is a novel legal theory.

    - Illinois Labor Law: Illinois Public Labor Relations Act (IPLRA), 5 ILCS 315/10. Mirrors the NLRA, making it an unfair labor practice for a public employer to interfere with an employee's protected rights.

- U.S. Anti-Discrimination Law: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–3(a). Prohibits retaliation against an employee for opposing a discriminatory practice.

- Illinois Anti-Discrimination Law: Illinois Human Rights Act (IHRA), 775 ILCS 5/6-101. Prohibits retaliation for opposing unlawful discrimination or participating in an investigation under the Act.

- U.S. Constitution: Fourteenth Amendment, Due Process Clause. Protects against state actors depriving an individual of property (employment) or liberty (reputation) without fair process.

- Illinois Constitution: Article I, Section 2, Due Process Clause. Provides similar due process guarantees as the U.S. Constitution against state action.

- Tort Doctrine (Intentional Torts): Intentional Infliction of Emotional Distress (IIED). Recognizes liability for extreme and outrageous conduct that causes severe emotional distress.

- Tort Doctrine (Economic Torts): Tortious Interference with Prospective Economic Advantage. Protects against unjustified interference with a person's potential business relationships (e.g., future employment).

- Tort Doctrine (Defamation): Defamation Per Se (Libel/Slander). Applies if false statements were made in writing (libel) or orally (slander) that impute an inability to perform one's job, harming their reputation.

9. **Violation of Weingarten Rights:**

    - During disciplinary proceedings, University staff asked detailed questions on unrelated matters.

    - They avoided questioning Plaintiff on Mansueto matters, despite such issues being in the disciplinary documents.

    - Plaintiff strongly alleges this violated his *Weingarten* rights (420 U.S. 251, 1975). Effective representation is required. No representation was allowed in sham meeting since hide those questions.

    - Plaintiff predicted this and talked about it with union staff before the meeting.

    - After meeting steward also confirmed that they didn't asked any question about Mansueto role and hence then union filed step 3 grievience.

10. **Sham Discipline & Lack of Progressive Discipline:**

    - Discipline included allegations regarding Mansueto, but no evidence was produced.

- University mentioned "copied work" but never produced proof.
- No progressive discipline was followed.
- Plaintiff alleges the process was frivolous, unfair, retaliatory, and a sham designed to justify predetermined punishment.

**11. Union Role and Hours:**

- Defendants told Plaintiff not to clock hours in the Union role.
- Plaintiff confirms he was already not clocking hours for union activities.
- This strengthens Plaintiff's claim that adverse actions were retaliation for protected union activity, not for timekeeping issues.
- Formally never cancelled the union roles and gave terminations of non-union roles over email. Plaintiff had another union role that got cancelled due to this that was also never formally terminated by any means.

**12. Constitutional and Tort Claims:**

- University's conduct amounted to:
    - **Due Process Violations:** Arbitrary and oppressive retaliation violating Fifth and Fourteenth Amendments. (*Rochin v. California*, 342 U.S. 165).
    - **First Amendment Retaliation:** Punishment for grievances and association (*Mt. Healthy*, 429 U.S. 274).
    - **Intentional Infliction of Emotional Distress:** Extreme and outrageous conduct intended to intimidate (*McGrath v. Fahey*, 126 Ill. 2d 78).
    - **Fraud and Misrepresentation:** Manipulated hours and withheld testimony to mislead disciplinary panels.
    - **Abuse of Authority & Oppression:** Threats of escalation to academic authorities unrelated to the dispute.

**13. Key Email Evidence (Good Faith):**

- Plaintiff's email to Mansueto staff shows:
    - Work methodology, toolkit, and progress over holiday break.
    - Willingness to correct hours "according to rules."
    - Acknowledgement of 40-hour rule and willingness to accept fewer hours.
    - Continued effort and interest in project, even when unpaid.
    - Professional communication, contrary to claims of misconduct.

- - o   Plaintiff argues this email demonstrates good faith and undermines the University's allegations.

14. **Overall Allegation:**

    - o   Plaintiff alleges the University acted in **bad faith, with malice, fraud, oppression, and abuse of authority.**

    - o   The entire disciplinary process was retaliatory, procedurally deficient, and substantively a sham.

    - o   Under tort principles, constitutional protections, and labor law, Plaintiff seeks relief, asserting that even if one disciplinary ground is unfounded, the entire discipline must be vacated.

**RETALIATION AND PROTECTED CLASS STATUS**

Plaintiff further asserts that repeated grievances and whistleblowing activities—including union-related communications, assault reports, food and gas safety complaints—established Plaintiff's status as a protected actor under labor and anti-retaliation laws. Retaliatory adverse actions taken thereafter—including removal of hours, job elimination, escalation to the Dean, surveillance of payroll/tax issues, and eventual discipline—are unlawful under:

- **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. § 2000e-3(a);

- **Americans with Disabilities Act (ADA),** 42 U.S.C. § 12203;

- **Section 504 of the Rehabilitation Act**, 29 U.S.C. § 794(d); and

- **Illinois Whistleblower Act**, 740 ILCS 174/15, which prohibits retaliation against employees who disclose information about unlawful practices or refuse to participate in unlawful conduct.

In totality, the University's actions reflect a pattern of **malice, oppression, fraud, and abuse of authority**, designed to silence Plaintiff's protected grievances, intimidate Plaintiff through threats of academic retaliation, and manipulate evidence to justify predetermined discipline. Plaintiff asserts that the entire disciplinary process was a sham, unconscionable under Illinois contract law, retaliatory under federal labor law, and violative of substantive due process under the U.S. Constitution.

**U.S. laws that apply to such "digital arrest" allegations:**

**1. Criminal Laws (Federal and State)**

These laws are enforced by the government (police, FBI) and can lead to arrest and imprisonment.

- **Extortion and Coercion Statutes:** This is the most direct fit. Laws at both the federal level (e.g., the Hobbs Act) and state level (e.g., Illinois' criminal code) make it a crime to obtain property, money, or services from someone through force or threat. Threatening someone with professional ruin, defamation, or academic harm to force them into meetings is a classic example of criminal coercion.

- **Cyberstalking and Harassment Laws:** Federal law (18 U.S.C. § 2261A) and state laws prohibit using electronic communication to harass a person and cause substantial emotional distress. A sustained campaign of digital threats and intimidation can qualify as cyberstalking.

- **Computer Fraud and Abuse Act (CFAA):** While often used against hackers, this federal law can apply if the perpetrator "intentionally accesses a computer without authorization" to threaten or coerce someone. If a manager misused their access to Workday to facilitate the coercion, it could trigger this law.

**2. Civil Laws (Torts)**

These laws allow the victim (the plaintiff) to sue the perpetrator for monetary damages.

- **Intentional Infliction of Emotional Distress (IIED):** This tort applies when conduct is so "extreme and outrageous" that it causes severe emotional suffering. The "digital arrest" concept of constant intimidation and threats is a textbook example of behavior that could support an IIED claim.

- **False Imprisonment:** Traditionally for physical restraint, some courts have begun to recognize a claim for **"digital imprisonment"** or false imprisonment by threat when a person's will is overborne by threats, making them feel they have no choice but to comply, even in a digital space.

- **Defamation:** If the threats involve spreading false and damaging information about the victim to others (e.g., to their school or other employers), this grounds a separate defamation lawsuit.

**3. Workplace-Specific Laws**

- **Constructive Discharge:** This is a legal doctrine where an employer makes working conditions so intolerable (through harassment, threats, or drastic cuts in pay/hours) that a reasonable employee is forced to resign. This is treated as an unlawful termination.

Note: Use online tools for this page,

 Gmail                                                                                          **Dipesh Singla <dipeshsingla668@gmail.com>**

---

## URGENT REPLAY TODAY: Social Network Analysis Project Submitted Hours for the Last 2 weeks
12 messages

---

**Heidi Lee** <ehlee@uchicago.edu>                                                                             7 January 2025 at 02:15
To: Dipesh Singla <dipeshsingla668@gmail.com>
Cc: Aimee Giles <aimeeg@uchicago.edu>, Brian Wilson <bcwilson@uchicago.edu>

Hi Dipesh,

We just received the approval request for the last two weeks and we need to meet with you immediately to go over these hours and the cap hours stated in your offer letter as well the hourly letter.

Please let me know when you are available today from 3:30-4:30pm and tomorrow 9-9:30am, 10:30-12:30pm.

Thank you,

Heidi

**Heidi Lee**

*Operations Manager*



1155 E. 60th St., Chicago, IL 60637

Office: 773-702-7894

Email: ehlee@uchicago.edu

Subscribe to our newsletter

---

**From:** Dipesh Singla <dipeshsingla668@gmail.com>
**Date:** Friday, November 15, 2024 at 1:17 PM
**To:** Heidi Lee <ehlee@uchicago.edu>
**Cc:** Aimee Giles <aimeeg@uchicago.edu>
**Subject:** Re: FW: TIWG RA Hire for the Social Network Analysis Project

Thank you so much. I look forward to hearing from you soon. Since I think I need to reply to them I guess.

Also just to ask if it's possible to hire for the same role but not as a union role?

BR

On Fri, 15 Nov 2024 at 12:32, Heidi Lee <ehlee@uchicago.edu> wrote:

> Hi Dipesh,
>
> Thanks for letting us know about this. We haven't had this come up with any of our other graduate student hires in union positions, but let me know check with our hr contact. I'll be in touch with an update.
>
> Best,
>
> Heidi

**Heidi Lee**

*Operations Manager*



[1155 E. 60](#)th St., Chicago, IL 60637

Office: 773-702-7894

Email: [ehlee@uchicago.edu](mailto:ehlee@uchicago.edu)

Subscribe to our newsletter

---

**From:** Dipesh Singla <[dipeshsingla668@gmail.com](mailto:dipeshsingla668@gmail.com)>
**Date:** Friday, November 15, 2024 at 11:45 AM
**To:** Heidi Lee <[ehlee@uchicago.edu](mailto:ehlee@uchicago.edu)>, Aimee Giles <[aimeeg@uchicago.edu](mailto:aimeeg@uchicago.edu)>, Dipesh Singla <[dipeshsingla668@gmail.com](mailto:dipeshsingla668@gmail.com)>
**Subject:** Re: FW: TIWG RA Hire for the Social Network Analysis Project

Hello Heidi and Aimee,

I hope this email finds you well,

I wanted to say, I just got a mail from GSU that I need to pay $62+ for I think it's for this role but the thing is I haven't been able to work even for 1 hr in this role as of now.

Can you please guide me what I should do in this case?

Best Regards,

Dipesh

On Fri, 27 Sept 2024 at 12:11, Heidi Lee <[ehlee@uchicago.edu](mailto:ehlee@uchicago.edu)> wrote:

> Hi Dipesh,
>
> The hours are definitely flexible. You can work with Royce on a timeline that is ideal for both your schedules. I'd reach out to him to schedule a time to meet once your hire is processed.
>
> Attached is the offer and hourly letter for you to complete. Once I have the signed letters, I'll start the hiring process with our HR partner.
>
> Best,
>
> Heidi
>
> ---
>
> **From:** Dipesh Singla <[dipeshsingla668@gmail.com](mailto:dipeshsingla668@gmail.com)>
> **Date:** Wednesday, September 25, 2024 at 4:03 PM
> **To:** Dipesh Singla <[dipeshsingla@uchicago.edu](mailto:dipeshsingla@uchicago.edu)>, Heidi Lee <[ehlee@uchicago.edu](mailto:ehlee@uchicago.edu)>, Dipesh Singla <[dipeshsingla668@gmail.com](mailto:dipeshsingla668@gmail.com)>
> **Subject:** Re: FW: TIWG RA Hire for the Social Network Analysis Project
>
> Hello Heidi,
>
> I hope this email finds you well,
>
> Sure, I would be interested. Hopefully, this will be with flexible hours.
>
> Best regards.
>
> On Tue, 24 Sept 2024 at 14:04, Dipesh Singla <[dipeshsingla@uchicago.edu](mailto:dipeshsingla@uchicago.edu)> wrote:
>
>> **From:** Heidi Lee <[ehlee@uchicago.edu](mailto:ehlee@uchicago.edu)>
>> **Sent:** Tuesday, September 24, 2024 2:04:15 PM (UTC-06:00) Central Time (US & Canada)
>> **To:** Dipesh Singla <[dipeshsingla@uchicago.edu](mailto:dipeshsingla@uchicago.edu)>
>> **Cc:** Royce Lee <[royce@uchicago.edu](mailto:royce@uchicago.edu)>
>> **Subject:** TIWG RA Hire for the Social Network Analysis Project
>>
>> Hi Dipesh,

8/28/25, 1:12 AM
Gmail - URGENT REPLY TODAY: Social Network Analysis Project submitted hours for the last 2 weeks
Case: 1:25-cv-08098 Document #: 49 Filed: 08/27/25 Page 13 of 19 PageID #:857

I hope this email finds you well as the academic year is about to start! We missed you at our last General Body Meeting!

I'm reaching to see if you're still onboard to work with Royce on the social network analysis project this fall quarter. I believe the two of you discussed previously what would need to be done and he let us know the time commitment he'll need from you is about 20 hours for the first phase of the project (setting the project up and launching) and another possible 20 hours to assist with collecting and analyzing the data.

Please let me know if this is an opportunity you're still interested in. Once I receive confirmation, I'll send an offer letter as well as an RA hourly letter for you complete and return.

Thanks and let me know if you have any questions!

Best,

Heidi

**Heidi Lee**

*Operations Manager*



**Mansueto Institute for Urban Innovation**
The University of Chicago

1155 E. 60th Street,  Chicago, IL 60637
United States of America

T 773.702.7894 C 847.454.4762

ehlee@uchicago.edu

Pronouns: she/her

miurban.uchicago.edu | @miurbanchicago

    

Subscribe to our newsletter.

---

**5 attachments**

- **A Task Awaits You- Approval by Time Approver - Dipesh Singla[64].eml**
  18K
- **A Task Awaits You- Approval by Time Approver - Dipesh Singla[49].eml**
  18K
- **A Task Awaits You- Approval by Time Approver - Dipesh Singla[1].eml**
  18K
- **RA Hourly Letter June 2024_signed.pdf**
  319K
- **Dipesh Singla Offer Letter Fall 2024_singed[13].pdf**
  187K

**Heidi Lee** <ehlee@uchicago.edu>	7 January 2025 at 20:39
To: Dipesh Singla <dipeshsingla668@gmail.com>
Cc: Aimee Giles <aimeeg@uchicago.edu>, Brian Wilson <bcwilson@uchicago.edu>

Hi Dipesh,

Following up on yesterday email, could you please let us know when you can meet with us as soon as possible via Zoom?

[Quoted text hidden]

---

**Brian Wilson** <bcwilson@uchicago.edu>	7 January 2025 at 23:39
To: Heidi Lee <ehlee@uchicago.edu>, Dipesh Singla <dipeshsingla668@gmail.com>
Cc: Aimee Giles <aimeeg@uchicago.edu>

Hello Dipesh,

It is imperative that you get back to us immediately. Please respond and make yourself available no later than 3:00 PM today, or we will need to contact your dean and academic advisors at Harris to rectify a serious issue with the hours you logged over the holiday break and payment.

Thank you,

Brian

**Brian Wilson, PhD**

*Executive Director*



1155 E. 60th St., Chicago, IL 60637

Office: 773-834-5832

Email: bcwilson@uchicago.edu

Subscribe to our newsletter

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>	8 January 2025 at 00:41
To: Heidi Lee <ehlee@uchicago.edu>, Aimee Giles <aimeeg@uchicago.edu>, Dipesh Singla <dipeshsingla668@gmail.com>

Hello,
Thanks for the email,
I've already sent the updates to prof lee and ofc we've started after the end date I think or a date nearby to that range, because of the delay in the start.
I made the methodology and toolkit on how to potentially do research and data collection and spent a significant amount of time over the holidays on my own.
**Feel free to correct as per your rules.**
Today, and these first 2 weeks are fully packed because I may have to attend more classes before it my schedule get finalized like which classes I'll finally do(I've to attend all class options) so I may not be able to meet, Having said that feel free to **email me** anytime as always for any corrections.
Also, I see some of the hours from other jobs have also been removed, I'm asking other role people and confirming, I think I worked on the 24th. rest I would have to manually check other dates since **I don't have track of hrs outside of the WD for any job**, I've to go through the mail, chat, and some scheduling docs. Would it be possible to send me a snapshot of the last few weeks for all the hrs I worked (which was there on wd couple of days back?) since I don't have any details for this role outside of WD?
It's nice working on this project with you and prof lee, looking forward to doing further when the professor's family gets well.
Best Regards,
Dipesh SIngla

📎 **image001.png**
64K

---

**Dipesh Singla** <dipeshsingla@uchicago.edu>	8 January 2025 at 04:41
To: "dipeshsingla668@gmail.com" <dipeshsingla668@gmail.com>

---

**From:** Brian Wilson <bcwilson@uchicago.edu>
**Sent:** Tuesday, January 7, 2025 5:11:04 PM (UTC-06:00) Central Time (US & Canada)
**To:** Dipesh Singla <dipeshsingla@uchicago.edu>
**Cc:** Heidi Lee <ehlee@uchicago.edu>; Aimee Giles <aimeeg@uchicago.edu>
**Subject:** Re: URGENT REPLAY TODAY: Social Network Analysis Project Submitted Hours for the Last 2 weeks

Hi Dipesh,

Thank you for the response. Please make sure to include me in your communications moving forward. I have included some screen shots below for the hours you logged for this project per your request. The primary issue is that you greatly exceeded the expected hours for this project without informing either of your supervisors or seeking guidance of any kind. The terms of your employment were clearly indicated on both letters we sent to you and that you signed (see

attached).   The project in its entirety was not to exceed 20 hours per week and 40 hours TOTAL.  Our assumption was that you made a mistake in the hours you allocated to the Mansueto Institute in its capacity managing your work for TIWG.

However, we cannot arbitrarily assume what hours you spent working.  As such, we MUST meet with you either via Zoom or in person before the issue can be corrected and payment issued, and we need to discuss the impact on the project moving forward.  I understand that this is a busy week for you, but please let us know when you will have 30 minutes to meet with us as soon as possible.  We will do our best to accommodate your schedule but cannot proceed without discussing this situation in detail—email will not suffice.  Thanks in advance for your attention to this matter.

My best,

Brian

Total of 14.816667 hours for Mansueto position only from 12/15/2024 to 12/21/2024



8/28/25, 1:12 AM — Gmail - URGENT RE-RE-RELAY #OD49: Social Network Analysis Project Submitted Hours for the Last 2 Weeks

Case: 1:25-cv-08098 Document #: 49 Filed: 08/27/25 Page 16 of 19 PageID #:860

Total of 61.35 hours for Mansueto position from 12/22/2024 to 12/28/2024



Total of 67.616669 hours for Mansueto position only from 12/29/2024 to 01/04/2025





---

**From:** Dipesh Singla <dipeshsingla668@gmail.com>
**Date:** Tuesday, January 7, 2025 at 1:11 PM
**To:** Heidi Lee <ehlee@uchicago.edu>, Aimee Giles <aimeeg@uchicago.edu>, Dipesh Singla <dipeshsingla668@gmail.com>
**Subject:** Re: URGENT REPLAY TODAY: Social Network Analysis Project Submitted Hours for the Last 2 weeks

[Quoted text hidden]

---

**2 attachments**

📎 **RA Hourly Letter June 2024_signed[56][63].pdf**
319K

📎 **Dipesh Singla Offer Letter Fall 2024_singed[60][54].pdf**
187K

---

**Dipesh Singla** <dipeshsingla668@gmail.com>  8 January 2025 at 14:19
To: Dipesh Singla <dipeshsingla@uchicago.edu>, "From: Brian Wilson" <bcwilson@uchicago.edu>, "Cc: Heidi Lee" <ehlee@uchicago.edu>, Aimee Giles <aimeeg@uchicago.edu>

Good Morning,
hello,
Thanks for your email and detailed reply,

I was trying to push work since last quarter I didn't work at all In this because was unable to connect with the professor about the project, and I was free in vacation for work so I tried to push work as much as I could, I think I made good progress, it would have been even better with professor more guidance.
Being said that I forgot about 40 hrs limit mentioned in offer letter. When I discussed with Dr. Royce individual in initial meeting I think he asked me for idea of hours for this project and I think I roughly gave him up to 120 hrs number, so I remembered that only (I believe that's bad from my side)
Being said that **rule is rule** it's up to 40hrs as mentioned in the letter should be considered based on our funding constraints even if I get fewer hours now as per our rules prepurposed, I will keep on working on this slowly religiously with prof, Aimee, and Heifid's guidance, and even when I didn't have the job I was trying to do work on the project, propose ideas on this especially wanted to work with Aimee and Heidi, as I've attended most of Mansueto event last year and during summer vacations (**Fun fact:** Some people asked are you a staff at Mansueto, as I'm always there in our events). At that time I didn't have much idea that I'll get to work with all these amazing people and opportunities to share ideas for a good we all believe in. One thing was clear that even if it's volunteer(unpaid) work I am definitely going to do it.
**So kindly according to rules change hours as you feel ok, I don't have any resistance or second thoughts about getting less/more hours. I also want this to sort out asap, so please do that.**
**Lastly,**
As I said my schedule is packed this month, I may have time to chat next Friday, but I can't confirm the timing until Thursday next week since I'm working on a conference as of now, apart from my classes, job, and community activities etc.
We may be able to chat next Friday on a short phone call. I am always open to having discussions over email or call (I guess Aimee/Heidi can probably acknowledge that).

Please ignore any typos' (typing from phone)
-
br
ds

[Quoted text hidden]

---

**Brian Wilson** <bcwilson@uchicago.edu>  8 January 2025 at 21:50
To: Dipesh Singla <dipeshsingla668@gmail.com>, Dipesh Singla <dipeshsingla@uchicago.edu>, Heidi Lee <ehlee@uchicago.edu>, Aimee Giles <aimeeg@uchicago.edu>

Hi Dipesh,

First and foremost, DO NOT log any additional hours to Mansueto. You are NOT authorized to work further on this project.

I am not sure that I have properly conveyed the seriousness of this situation. We are required to pay you for the hours you worked and therein lies the problem for us and the Mansueto budget. As I stated, we cannot arbitrarily decide what those hours were simply because you exceeded the parameters of your offer letter. Furthermore, there is a discrepancy about what was agreed upon between you and Dr Lee regarding the scope of this work.

As I stated, we do not have the time nor is email the appropriate way to continue to discuss this issue. I need you to find 30 minutes this week to meet with us as soon as possible. A week from Friday is not acceptable. The meeting can occur via zoom and does not have to be in person. Once you identify a time for this week, I will send you a zoom link.

Thank you,

Brian

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla@uchicago.edu>  8 January 2025 at 21:50
To: "dipeshsingla668@gmail.com" <dipeshsingla668@gmail.com>

**From:** Brian Wilson <bcwilson@uchicago.edu>
**Sent:** Wednesday, January 8, 2025 10:20:21 AM (UTC-06:00) Central Time (US & Canada)
**To:** Dipesh Singla <dipeshsingla668@gmail.com>; Dipesh Singla <dipeshsingla@uchicago.edu>; Heidi Lee <ehlee@uchicago.edu>; Aimee Giles <aimeeg@uchicago.edu>
[Quoted text hidden]
[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>  8 January 2025 at 22:20
To: Brian Wilson <bcwilson@uchicago.edu>
Cc: Dipesh Singla <dipeshsingla@uchicago.edu>, Heidi Lee <ehlee@uchicago.edu>, Aimee Giles <aimeeg@uchicago.edu>

Hi
**I haven't logged in and I am not logging any hours in this role**
Also as it seems meeting is mandatory, even after I give open opportunity to correct the hrs according to the rule, I'll cancel 1 of my meeting today now to hopin to zoom today, at 5 pm.
-
[Quoted text hidden]

---

**Brian Wilson** <bcwilson@uchicago.edu>  9 January 2025 at 03:48
To: Dipesh Singla <dipeshsingla668@gmail.com>
Cc: Dipesh Singla <dipeshsingla@uchicago.edu>, Heidi Lee <ehlee@uchicago.edu>, Aimee Giles <aimeeg@uchicago.edu>

Hi Dipesh,

Thank you for your response. I will send an invite for 5:00 PM today for a zoom call.

In preparation for the meeting, please send the report you sent to Royce Lee regarding the work completed over the break. Here is the zoom link if you do not receive the calendar invite:

https://uchicago.zoom.us/j/99689756143?pwd=a0EUzw0V5MjTnNgWuxUCyzaKXAbJw2.1&from=addon

My best,

[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla@uchicago.edu>　　　　　　　　　　　　　　　　　　　　　9 January 2025 at 03:48
To: "dipeshsingla668@gmail.com" <dipeshsingla668@gmail.com>

---

**From:** Brian Wilson <bcwilson@uchicago.edu>
**Sent:** Wednesday, January 8, 2025 4:18:35 PM (UTC-06:00) Central Time (US & Canada)
**To:** Dipesh Singla <dipeshsingla668@gmail.com>
**Cc:** Dipesh Singla <dipeshsingla@uchicago.edu>; Heidi Lee <ehlee@uchicago.edu>; Aimee Giles <aimeeg@uchicago.edu>
[Quoted text hidden]
[Quoted text hidden]

---

**Dipesh Singla** <dipeshsingla668@gmail.com>　　　　　　　　　　　　　　　　　　　　　28 August 2025 at 00:27
To: Dipesh Singla <dipeshsingla668@gmail.com>

---------- Forwarded message ---------
From: **Dipesh Singla** <dipeshsingla668@gmail.com>
Date: Sun, 12 Jan 2025 at 05:15
Subject: Fwd: FW: FW: URGENT REPLAY TODAY: Social Network Analysis Project Submitted Hours for the Last 2 weeks
To: Dipesh Singla <dipeshsingla668@gmail.com>

[Quoted text hidden]