**IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

Dipesh Singla, individually and on behalf of  all others similarly situated    )

    **Plaintiff,**                                                                                                )

                                           )

v.                     BC                                                           **Case No**. 1:25-cv-08098

                                  **Hon'ble Judge**. Judge Sara L. Eliis

                  **Hon'ble Magistrate Judge.** Jeffrey T. Gilbert

UNIVERSITY OF CHICAGO;                                                 )

BOARD OF TRUSTEES AT THE UNIVERSITY OF CHICAGO;        )

UNIVERSITY OF CHICAGO SENATE;                                      )

PROVOST UCHICAGO (AND OFFICE);

PRESIDENT OFFICE UCHICAGO (AND OFFICE);                    )

DEPARTMENT OF PHYSICS;                                                 )

CAMPUS AND STUDENT LIFE;                                             )

HARRIS SCHOOL OF PUBLIC POLICY;                                   )

UCHICAGO HUMAN RESOURCES;                                         )

SOCIAL SCIENCES COMPUTING SERVICES;                           )

UNIVERSITY OF CHICAGO BURSAR OFFICE;                          )

MANSUETO INSTITUTE FOR URBAN INNOVATION;               )

OFFICE OF INTERNATIONAL AFFAIRS;                                 )

STUDENT DISABILITY SERVICE;                                          )

UNIVERSITY OF CHICAGO MEDICINE;                                  )

UNIVERSITY OF CHICAGO HOSPITALS;                                )

CHARTWELLS HIGHER EDUCATION UNIVERSITY OF CHICAGO;  )

RECEIVED GMM
9/2/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1

UCHICAGO DINING;                                                          )

CAMPUS DINING ADVISORY BOARD;                                            )

TEAMSTERS LOCAL 743;                                                      )

UNIVERSITY OF CHICAGO ARTS;                                              )

GRADUATE STUDENT UNITED (UCHICAGO);                                     )

EQUAL OPPORTUNITY PROGRAMS;                                              )

DEAN KATE S. BIDDLE (HARRIS SCHOOL OF PUBLIC POLICY);   )

DEAN ETHAN BUENO DE MESQUITA;                                           )

DEAN BAHAREH LAMPERT;                                                    )

DR. DON COURSEY;                                                         )

DR. BRUCE MEYER;                                                         )

DR. MARIN BAUTISTA;                                                      )

DEAN MICHAEL HAYES;                                                      )

PRESIDENT PAUL ALIVISATOS;                                              )

PROVOST KATHERINE BAICKER;                                              )

MELISSA B. M. VERGARA;                                                   )

JEREMY W. INABINET;                                                      )

DANIELLE NEMSCHOFF;                                                      )

ANGIE GLEGHORN (HR);                                                     )

CHRISTINA KLESPIES;                                                      )

TRACI VERLEYEN HOPE;                                                     )

CAROL BRIDGEMAN (CSI);                                                   )

ANNIE DIAMOND (DIVISIONAL COORDINATOR, SSCD);          )

DR. ADA PALMER;                                                          )

2

AYRELLE GILES (QAD, CHARTWELLS HIGHER EDUCATION); )

ARUN BANOTRA (SSCS); )

BART LONGACRE (ASSISTANT DEAN FOR INFORMATION - )

TECHNOLOGY, SSCS); )

DIANA GONZÁLEZ (SSD DEAN OFFICE); )

DEAN AND OFFICE OF SOCIAL SCIENCES DIVISION; )

KERRY SHARKEY (SSCS); )

SCOTT BRADWELL (SSCS); )

SHOMARI TATE (SSCS); )

NELSON BALBARIN (SSCS); )

CORY MARTIN (SSCS); )

ARKUS ROSE (RUSTANDY); )

CARA PARRISH (UCHICAGO ARTS); )

LOGAN CENTER; )

ERIN BRENNER (LOGAN CENTER); )

FRANK GILBERT (LOGAN CENTER); )

BRIAN WILSON (MANSUETO INSTITUTE FOR URBAN INNO); )

AIMEE GILES-SCOTT; (MANSUETO INSTITUTE FOR URBAN Inn); )

HEIDI LEE(MANSUETO INSTITUTE FOR URBAN INNO); )

PROFESSOR DR. JOHN BURROWS (Harris School of PP); )

JASMIN JOHNSON;   (HR) )

CHRISTINA KLESPIES (SSD HR); )

MARY MCCLELLAND;   (HR) )

OFFICE FOR SEXUAL MISCONDUCT PREVENTION; )

MEGAN HECKEL (OFFICE FOR SEXUAL - )

MISCONDUCT PREVENTION); )

VICKIE SIDES; )

VOGEL LABS; )

UCHICAGO FACILITIES; )

TITLE IX AND ADA/SECTION 504 COORDINATOR )

OFFICES/GROUP AT UCHICAGO; )

UCHICAGO CARES; )

DEPARTMENT OF SAFETY AND SECURITY; )

SEXUAL ASSAULT DEAN ON CALL; )

CAMPUS SECURITY AUTHORITY UCHICAGO, )

UNITED ELECTRICAL )

SHEENA FINNIGAN )

THE CENTER FOR AWARENESS RESOLUTION EDUCATION & SUPPORT )

UNIVERSITY OF CHICAGO HELP )

UNIVERSITY OF CHICAGO LIBRARY )

JIM (UCHICAGO REGENSTEIN LIBRARY DOCUMENT DELIVERY DEPATMENT))

TIM(UCHICAGO REGENSTEIN LIBRARY DOCUMENT DELIVERY DEPATMENT) )

UNIVERSITY OF CHICAGO REGENSTEIN LIBRARY HR )

UNIVERSITY OF CHICAGO REGENSTEIN LIBRARY )

DOCUMENT DELIVERY DEPARTMENT, UNIVERSITY OF CHICAGO REGENSTEIN LIBRARY )

RAVEN JONES (HR GENERALIST, PHYSICAL SCIENCES DIVISION) )

SHADLA CYCHOLL (DEPARTMENT ADMINISTRATOR AND ASSISTANT TO THE CHAIR) )

4

MICHELLE AYALA (BUSINESS COORDINATOR, DEPARTMENT OF PHYSICS)   )

LUISANA ROMERO (HUMAN RESOURCES GENERALIST)                                    )

MARK CHANTELL (DIRECTOR OF INSTRUCTIONAL LABORATORIES AND

LECTURE DEMONSTRATIONS, DEPARTMENT OF PHYSICS)                         )

**AND DEFENDANTS DOES 1–100, INCLUSIVE,**                                            )

[and other individuals and entities to be named with attorney guidance, and full complaint], Plaintiff reserves the right to amend this Complaint to name additional defendants as identified through discovery or based on counsel's investigation

**Defendants.**                                                                                      )

**JURY TRIAL DEMANDED**

**CLASS ACTION LAWSUIT**

## COMPLAINT FOR DAMAGES, DECLARATORY, PUNITIVE, PROTECTIVE, INJUNCTIVE, RESPECTED JURY AND HON'BLE COURT DEEMED RELIEF

**(All statements below requested to be considered allegations as per Hon'ble court rules/procedures/protocols) (Plaintiff request further protection of any action against, as this complaint is filed in good faith, and as whistleblower also)**

## I. PRELIMINARY STATEMENT

1. This is a civil right, whistleblower, retaliation, discrimination, medical and chemical malpractices, denial of disability accommodations, abuse of authority, oppression, malice, fraud, and breach of contract action brought by John Doe ("Plaintiff with Pseudo Name"), a former graduate student and employee of the University of Chicago. This complaint seeks redress for a systematic pattern of retaliation multiple times to finish plaintiff using abusive and harrasive authority, discrimination, harassment, denial of due process, Breach of contract and other unlawful conduct perpetrated by the University of Chicago and its various officers, departments, and agents. These actions led to his wrongful expulsion,

wrongful termination, jobs losses, and harm to his education, career, research, health, and wellbeing.

2. Plaintiff is a member of protected class, and after Plaintiff engaged in legally protected activities including reporting and whistleblowing safety violations, assault (crime), food safety and quality issues, gases mishandling, filing union and internal grievances in good faith, for retaliation, wrongful termination, discrimination, and reporting a physical and sexual assault by person identified as "Shrivatsa Thulasiram", Defendants orchestrated a coordinated **campaign of reprisal that was Wilful and Wanton Conduct with reckless disregard of plaintiff's rights and nearby American Communities safety.** This conspiracy and oppression campaign included but not limited to the termination of multiple employment positions, discrimination, retaliation, the initiation of a biased, prejudged, predetermined, and pretextual disciplinary process based on falsified evidence, omission of evidence, misrepresentation and misinterpretation of evidence, the denial of disability accommodations, and ultimately, Plaintiff's wrongful expulsion. Plaintiff, acting as a whistleblower, reported misconduct including discrimination, misuse of federal funds and non-profit status for personal purchases etc, unsafe campus conditions, unclean (dirty) dinning and facilities, and assault cover-ups and inaction on such serious offences. Defendants retaliated by expelling him, firing him, denying disability accommodations, and intimidating him, violating federal and state constitution, laws, and rules. Plaintiff had filed the criminal version of this with CPD (Chicago Police Department), since it came to plaintiff knowledge that individuals in country of United States of America can't bring criminal lawsuit on their own. Plaintiff is still waiting for months for actions against the criminal, individuals at university, and university of Chicago that conspired the event, and protected the assaulter (who is a university staff and student) from accountability of his crime. University of Chicago having power like state actor to give NCD (No Contact Directive), didn't gave NCD in this case that made things far worse for Plaintiff going forward. Further Plaintiff getting anonymous calls to threaten to not sue/ file official police charges are also believed to be conspired by the University and it's paid agents, that are unknown.

3. Plaintiff respectfully asks the Court to grant the following relief: monetary damages as determined by a jury, including compensation for lost educational, employment, research,

6

mental and emotional harm; a formal ruling that the University violated Plaintiff's rights; an order requiring changes to the University's policies and practices; public apologies approved by the Plaintiff; refund of tuition and fees; other damages jury seems important for plaintiff and future; lost opportunities damages; recognition of Plaintiff's disadvantaged background; and investigation into the misuse of federal funds and nonprofit status. Plaintiff also requests appointment of counsel under 28 U.S.C. § 1915(e)(1) and Local Rule 83.35 and asks that the Court protect Plaintiff's identity and personal information by allowing sealed or anonymous filings to avoid further harm.

4. Defendants' actions have caused Plaintiff severe emotional, professional, and financial harm. Plaintiff brings this action to hold Defendants accountable for their unlawful conduct, to seek compensatory and punitive damages, and to obtain injunctive and declaratory relief to prevent such abuses from happening to others. Plaintiff brings this action in the capacity of a whistleblower, seeking to expose and obtain redress for misconduct that threatens the public interest, public safety, involves employer wrongdoing, a demonstrated pattern of retaliation, discrimination, falsification of records, fabricated disciplinary measures, Breach of contract, and violations impacting whistleblowers, grievance filers, children's rights, taxpayer funds, non-profit status, patient and research subject rights, individual civil rights, human rights, as well as rights guaranteed under state and federal constitutions. Plaintiff further seeks to protect the rights of grievance filers and whistleblowers, and to address concerns relating to food safety, sanitary conditions, and the fundamental rights implicated thereby. Plaintiff believes that university spoiled many evidence including emails and hence obstructed the justice of, further making a **Callous Indifference** as well for plaintiff and also this also disregarded safety of Hyde Park, Chicago's American Community.

5. Plaintiff strongly believes it got **mentally, physically, and sexually harassed and assaulted** by the university, its staff, and agents. That constitutes to what plaintiff alleges called a **mental rape.** Plaintiff further believes it had been a victim of **educational terrorism.**

6. This Complaint is filed pursuant to Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff has endeavoured to present the facts in a short, plain, and organized manner, with each paragraph limited to a distinct occurrence or legal contention, in compliance with

Rule 10(b). Plaintiff attached redacted version of full complaint in first information packet for more details and after seal plaintiff request that plaintiff can upload the full version of updated complaint, redacted version of that updated full version can be docketed for public in good faith.

7. Plaintiff respectfully requests that the updated full version of complaint document be submitted to the Court under seal pursuant to Local Rule 26.2 and relevant case law allowing for restricted public access to sensitive personal information. Plaintiff further requests that a redacted version be made available on the public docket, wherein identifying information, including the Plaintiff's name, photographs (like screenshots of emails, video recordings or other personal details capable of linking the individual to the allegations (including religion, nationality, caste, sex, disability, medical records, but not limited to these), Medical or mental health information, Employment records, Harassment or assault grievances, Student or minor data in child labour part, Plaintiff requests that these proceedings and filings be sealed at this time to protect sensitive interests as set forth herein, but expressly reserves the right to seek an order from this Court to lift the seal and make the non-personal records publicly accessible upon prevailing/winning in this matter or upon a subsequent showing of good cause.

8. Plaintiff respectfully requests that any remote video or audio proceedings in this matter not be recorded and not to be entered into the public record, and, if recorded by the Court for internal purposes, that the recording remain sealed and inaccessible to the public or Defendants, in light of Plaintiff's mental torture, trauma. and physical condition of the circumstances. If recorded plaintiff request the full recording of proceedings including Holy Jury Trial should be provided to plaintiff at no cost.

9. Plaintiff makes this request in recognition of the fact that courts are public forums. This request is made to avoid further reputational harm, including but not limited to defamation, academic or professional retaliation and black listings, interference with future employment, damage to career trajectory, educational and research barriers, immigration consequences, and social stigmatization especially in the event of an unfavourable disposition of this matter.

10. The Plaintiff further submits that this case raises issues of systemic importance, core interpretations, and **should serve as a reference for** future lawsuits, litigations, litigants

and courts for a long time. Accordingly, Plaintiff is amenable to a redacted or abstract version of this matter being cited in public legal resources, so long as the Plaintiff remains unidentifiable therein.

11. This request is to serve the interests of justice while respecting the public's right of access to court proceedings and is supported by precedents including *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981), and Local Rules of the U.S. District Court for the Northern District of Illinois governing sealed filings and redactions.

## **I.A REQUEST TO PROCEED UNDER PSEUDONYM**

12. Plaintiff respectfully moves this Court to allow this action to proceed under the pseudonym "John Doe," and to permit the filing of a redacted complaint on the public docket. This request is necessary to protect Plaintiff's personal privacy and safety, and to avoid additional harm that could result from public disclosure of sensitive information.

13. This matter involves allegations and strong assertations of discrimination, retaliation, whistleblower, assault, disability rights violations, and whistleblower claims (but not limited to) against **a super powerful and resource-rich non-profit, tax benefitted, ferally funded from taxpayer hard earned income, academic institution**. Plaintiff, a former student and employee of the defendant university, has already suffered significant reputational harm, professional exclusion, defamation, and educational setbacks. Disclosure of his identity in the public record particularly in the event of an unfavourable outcome would risk further defamation, blacklisting, further academic retaliation, and interference with future career and immigration prospects.

14. Plaintiff acknowledges the public nature of judicial proceedings but asserts that the public interest can be preserved through access to anonymized filings. Courts have recognized the permissibility of pseudonymous litigation where the issues are sensitive and where plaintiffs face potential harm, including social stigma, reputational injury, and institutional retaliation. See *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981); *Doe v. Elmbrook Sch. Dist.*, 658 F.3d 710 (7th Cir. 2011). The use of a pseudonym is consistent with Local Rule 26.2 and the Court's inherent discretion to protect litigants from unnecessary exposure. Accordingly, Plaintiff requests that all future public filings reference Plaintiff by pseudonym, and that the Court grant leave to file a sealed, unredacted version of the Complaint and related pleadings with the Clerk of Court.

9

## II. JURISDICTION AND VENUE

**15.** This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (Federal Question) as Plaintiff's claims arise under the Constitution and laws of the United States, including but not limited to Title VI and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000d & § 2000e; Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681; the Americans with Disabilities Act (ADA); the Rehabilitation Act; the False Claims Act, 31 U.S.C. § 3729; and 42 U.S.C. § 1983.

**16.** Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391, as Defendants are located in Chicago, Illinois, and the events occurred here.

**17.** "6. This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Defendant University of Chicago's challenged actions constitute **state actor** (plausibly alleged) under 42 U.S.C. § 1983. Though organized as a private institution, Defendant meets all three tests for state action established by the Hon'ble Supreme Court:

First, Defendant performs the traditional public function of immigration control through its mandatory administration of the SEVIS program on behalf of the Department of Homeland Security, 8 C.F.R. § 214.3 (United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292 (2d Cir. 1991)).

Second, Defendant is pervasively entwined with government through its acceptance of multi million (if not billion) in annual Title IV funding and federal research grants (Brentwood Acad. v. TSSAA, 531 U.S. 288, 296 (2001)). Even absent traditional state action, Defendant's acceptance of Title IV funds (34 C.F.R. § 668.1) imposes constitutional duties under Doe v. Washington Univ., 780 F.3d 479, 485 (8th Cir. 2015) (holding private universities "voluntarily submit to First Amendment constraints" by accepting federal aid).

Third, Defendant's University of Chicago Police Department - a state-commissioned law enforcement agency with full arrest powers/detention powers – allegedly engaged in retaliatory surveillance, intimidation, obstruction of grievances, of Plaintiff (Flagg v. City of Detroit, 252 F. App'x 30 (6th Cir. 2007)). Notwithstanding Rendell-Baker v. Kohn, 457 U.S. 830 (1982), Defendant's unique hybrid of federal immigration authority and police powers distinguishes this case from ordinary private university matters. Such activity is analogous to the circumstances recognized in Flagg v. City of Detroit, 715 F.3d 165 (6th

Cir. 2013), where private police officers were deemed state actors when exercising state-conferred powers in a discriminatory or retaliatory manner.

Fourth, Private entity allegedly performing municipal functions like defendant was deemed a state actor. Notre Dame provided housing, utilities, police, and other services typically reserved to municipalities, suggesting it performed a "public function (3:13 CV 1239, 2016 WL 5394493 (N.D. Ind. Sept. 27, 2016)). The court allowed the § 1983 claim to proceed, distinguishing this case from Rendell-Baker v. Kohn (457 U.S. 830, 1982), where a private school was not a state actor despite public funding, by focusing on Notre Dame's role as a quasi-municipal entity rather than solely an educational institution. The court held that Notre Dame could be a state actor because its self-contained campus operated like a "company town" under Marsh v. Alabama, 326 U.S. 501 (1946). The plaintiff successfully alleged that Notre Dame controlled public-like services and infrastructure such as roads, utilities, and housing, and exercised delegated state policing powers through its security force. These factors mirrored municipal functions, making the state actor claim plausible. Likewise, the Defendant, University of Chicago's expansive campus, with its own police force wielding state authority, public infrastructure, and comprehensive governance, exhibits the same characteristics. Thus, the University of Chicago must be deemed a **state actor** under the state action doctrine.

Fairly together, the University's role in enforcing federal immigration laws, operating a deputized police force, and reliance on public funds supports, non-profit status, a finding that its actions in the context of Plaintiff's discipline, surveillance, and retaliation are "fairly attributable to the state." Accordingly, Defendant is subject to liability under the Fourteenth Amendment and 42 U.S.C. § 1983 for constitutional violations arising from its conduct. In the alternative, even if Defendant is not deemed a state actor under prevailing constitutional doctrine, its conduct nonetheless violates Title IX, Title VI, and the ADA, which independently prohibit discrimination and retaliation by recipients of federal financial assistance."

18. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as they arise from the same nucleus of operative facts as the federal claims.

19. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and the Defendants conduct business and are located in this district.

### III. THE PARTIES

20. Plaintiff is an individual and a former graduate student and employee at the University of Chicago. Plaintiff belongs to various **protected classes including but not limited to nationality, gender, sex, race, caste, gender, sex, sexuality,** as a micro minority in U.S.A. Plaintiff once was a part of roughly about **15000 communities** worldwide and had attended, contributed, interned, and **volunteered** to many social communities for giving back to society in **good faith and for good causes**. Further plaintiff had published research papers in the past and wanted to continue research in allegedly a research heavy institute, that turned out to be not true for plaintiff. Plaintiff further did many volunteers ship in the defendant university and also helped the defendant university student, staff, and affiliates as much as possible, without seeking for any benefits including monetary (Help first and fast approach). Plaintiff who often speaks very less, in good faith **spoke up** and whistle-blowen multiple wrong things, and systematic deficiencies happening in the defendant university so that community should feel and be safe only in good faith, without knowing any USA laws (and how some employers deal with whistleblowers), and faced severe actions and poaching by the university to finish plaintiff. Apart from trying to improve education systems, plaintiff wanted to do more research as able in personal and/or professional capacity, even in parallel to job (if any). And also wanted to do PhD now or in near future. Plaintiff published many articles including technical and non-technical on various social media channels. Plaintiff also applied to **all** jobs on all the defendant university portals. Plaintiffs bring this lawsuit so that justice should be done with plaintiff as per laws, rules, liberties, that are granted to plaintiff by US Constitution, Illinois Constitution, US and Illinois Laws, other USA rules, doctrines and past case examples. **Plaintiffs reserve the right to sue** defendant university and its affiliates for **criminal matters (or file civil matter so that criminal matter can be filed using court order or relevant document if granted if agencies still don't do anything despite of many good faith trials) and challenging the complete sham discipline itself** after or during this complex multilayered retaliation claim lawsuit, and other lawsuits. Plaintiff mentions that

plaintiff have **all** the **complaints** prepared almost immediately when plaintiff can invoke these rights at its will and strategy. This had been done to simplify this already strong and complex multilayered case, and to avoid wasting time of Hon'ble court in good faith. This complaint further should also act as a whistleblower apart from being a lawsuit only. Plaintiff states that it had been subjected and trained to do **hard work** in all its life and it does not let anything to come in the way of it's work and education. Further plaintiff mentions that especially in the defendant university plaintiff became far better **absorber,** plaintiff absorbed sexual, physical, mental harassments, discrimination, retaliation, abuse of authority, including medical malpractices, blood vomits, food issues, and many-many other things. Plaintiff unfortunately not knowing **any rights** granted by USA and IL laws and constitution**, focusing more on it's work, and** under the fear of retaliation, adverse actions, and abuse to authority, didn't report or made many of the issues in legal sense or in written at the right time, the ones issues plaintiff made it was further retaliated and adverse actions taken many many times weather it was done in **written or verbally,** further timeline of November 2024 to Feb/March 2025 was very cluttered that plaintiff absorbed everything that eventually now became something like tumour by coagulating all bad done by the defendant university and it's agents.

21. Defendant **THE UNIVERSITY OF CHICAGO,** is a private, federally funded, and non-profit university located in Chicago, Illinois (5801 S. Ellis Ave., Chicago, IL 60637). It receives **heavy federal funding** from taxpayer's dollars and is subject to federal and states laws governing education, employment, and civil rights. The other named Defendants are agents, departments, students, staff, affiliates, unions, or governing bodies of the University of Chicago who were directly or indirectly (mostly directly) involved in the events, and conspiracy described herein. Notwithstanding its receipt of billions of dollars **in federal taxpayer funding**, the Defendant engaged in a **fraudulent and bad-faith disciplinary plot,** which was pretextual in nature and constituted **unlawful retaliation** multiple times in frivolous manner and scam against the Plaintiff for engaging in activities protected by federal law, state law, and the the U.S. and Illinois Constitution, including but not limited to the filing of **internal and union grievances.** The temporal proximity between the Plaintiff's protected activity and the Defendant's adverse actions gives rise to an but-for inference of retaliatory intent that belies the **Defendant's assertion of mere coincidence**

**short** after the protected activity and also after receiving billions of dollars of taxpayer's money to retaliation, abuse, malice, fraud, and oppress after getting exposed for their own wrongdoings. The Defendant further abused its power by engaging as plaintiff believes in profiling based on, Plaintiff's medical, mental situation and health situation, protected characteristics, protected classes, research participation data in university affiliated labs, previous grievance history, assault reports, and confidential medical records information to which the Defendant had access by virtue of the Plaintiff's participation in the University's research programs and doing psychological research participations, questionnaires and EEG research participation for decision making and other psychological tests. This conduct was part of a concerted effort to chill the Plaintiff's exercise of protected rights and to suppress internal and external grievances, including potential union litigation, thereby shielding the Defendant from accountability for its own misconduct.

22. Defendant Board of Trustees oversees the University's policies, at the same address.

23. Defendants Office of the Provost, Office of the President, Harris School of Public,   Policy, Social Sciences Computing Services (SSCS), Student Disability Services, Office of International Affairs, University of Chicago Police Department, and Mansueto Institute but not limited to these institutions and individuals,  are University units responsible for actions against Plaintiff, some at the same address and some in nearby Hyde Park community.

24. Defendants' union**s** refused to take the matter fully and also refused to take the matter at all and further sue the university defendant for retaliation, violating weingarten rights, and scam discipline, further they discouraged to get a report of employee performance, and to file matter in OCR of Dept. of Education This also violated Weingarten rights from union end that plaintiff perceived as illegal as breaches of their own duties of fair representations. Union acted like an insurance company that steps in only happy when taking money, not when the service for that money and protection is required. Defendant union refused to participate actively and participate at all in protecting plaintiff form institutional heat stating, "not currently paying dues", and "not have resources currently". Union also ignored the plaintiff emails and requests that were done in good faith. Plaintiff further kindly requested that legal person or counsel should be provided to plaintiff in very initial phase also along with in all the process in between however union refused to provide that.

14

That became a win-win strategy for each defendant university, unions and hence signalled the backend handshaking of these entities.

25. The Board of Trustees of the University of Chicago, located and officed at 5801 South Ellis Avenue in Hyde Park, Illinois, is named as a Defendant in its official capacity as the ultimate fiduciary and governing body vested with final responsibility for the oversight, control, and administration of the University, including the promulgation, ratification, and enforcement of all policies and the conduct of its agents, and is therefore directly liable for the systemic failures, retaliatory practices, and unconstitutional policies that proximately caused the injuries to the Plaintiff. Further, the University Senate, also operating from the University's Hyde Park campus, is included as a Defendant in its official capacity as the principal legislative and advisory body responsible for establishing academic and institutional policy; by enacting, endorsing, or permitting the application of the policies and procedures under which the Plaintiff was wrongfully targeted, disciplined, and denied recourse, the Senate acted under color of state authority and became a willing participant in the deprivation of the Plaintiff's federally protected rights, thereby warranting its inclusion as a necessary party to fully adjudicate this matter and provide complete relief.

## IV. FACTUAL ALLEGATIONS

### A. Plaintiff's Status and Protected Activities

26. Plaintiff was an international graduate student at the University of Chicago Started September 2023 and held multiple student-employee positions across various university departments, including both union and non-union eligible roles.

27. Plaintiff has a documented disability with University of Chicago and had requested reasonable accommodations at least twice from the University of Chicago, that were denied.

28. Throughout his time at the University, Plaintiff alleges that plaintiff acted in good faith as a whistleblower by reporting multiple instances of misconduct, including A. Unsafe handling of hazardous materials (gas cylinders) in the Physics Department basement. B. A sexual and physical assault perpetrated by a person who was or is a student and staff affiliated with the University of Chicago. C. Systematic food safety violations in campus dining facilities and cafés. D. Financial misconduct, including misuse of non-profit status

15

and improper tax practices. E. Wrongful termination**s** of job role F. Misuse of federal funds and/or nonprofit status, G. Discrimination and unequal treatment H. Child labour in university even I. Good staff including faculty and offices staffs leaving university (Inability to retain talent and good natured staff) J. Wrongful termination of plaintiff boss at the SSCS(and/or as lecturer as well), University of Chicago, K Discrimination L. Autocratic wrongful terminations by university and HR Managers/Executives. M. Quality of education (low quality education, new and un-interested professors as opposed to world-class faculty). N. No recognition of ideas, free speech and expression, Unequal treatment and discrimination based on protected classed and characteristics like nationality, race, caste, sexuality, and etcetera, O. Wrongful cancelations of Job Interviews, and unfair and discriminatory hiring practices based on not limited to protected classes. P. Pattern of staff removal after someone leaves office or get terminated Q. Mental health conditions R. Denial of disability accommodations S. Protection of assaulter (or assailant or assailants) T. Data privacy violations U. Abusive use of authority and it's powers V. Denial of due process W. Student protective policies like title IX being on papers only. X. No issuance of No Contact directives to plaintiff. Y. Student government election misconduct unequal treatment, and discrimination. Z. Retaliation and Breach of contract.

29. On or about January 2025 end, Plaintiff requested to initiate a formal grievance through the Graduate Student United (GSU) at University of Chicago for the wrongful termination of his employment. The union submitted a formal grievance notice on his behalf on or about February 1, 2025. This constitutes **protected activity** under the National Labor Relations Act (NLRA). Plaintiff was subjected to retaliation shortly, thereafter, including **jobs termination, disciplinary action, and ultimately expulsion.**

30. University officials acted frivolously with malice, oppression and fraud, and failed to follow due process, did not provide progressive discipline, and retaliated multiple times for Plaintiff's protected activities. Plaintiff didn't have any bad review for work and also any prior discipline history.

31. Plaintiff asserts was subject to discriminatory treatment based on race, gender, caste, nationality, religion, and disability and protected activities participation.

32. Plaintiff asserts that plaintiff was also subjected to surveillance and breach of privacy, in violation of FERPA and other applicable laws.

16

33. **Plaintiff is reporting and alleging misconduct(s), including:**

a. Discrimination based on plaintiff protected class and categories not limited to disability, Indian origin, Hindu religion, sexuality and caste.

b. Retaliation against students reporting sexual assault and Title IX violations.

c. Misuse of federal funds, tax-exempt status, and student aid, including falsified financial records and donor fund misuse.

d. Unauthorized surveillance of student activists by university police.

e. Unsafe conditions, including Gas/chemical mishandling, food safety violations, and environmental negligence.

f. Deceptive tuition pricing, false job outcome claims, and coercive loan practices.

g. Research misconduct, Medical Malpractice including informed consent violations in NIH studies.

h. Wrongful termination**s**

i. Bad quality of university courses and ineffective education

j. No freedom of free speech and expression.

**B. The University's Retaliatory Campaign**

34. Immediately following Plaintiff's protected activities, Defendants began a series of adverse and retaliatory actions. That included whistleblowing, child labour(potentially in SSCS office), gas leak and noises coming out of cylinders, sexual and physical assault, discrimination, wrongful termination, grievances, and many other things as alleged in main full document.

35. **Wrongful Terminations:** Plaintiff was terminated from **at least and more seven different student employment positions** in short succession, including his role at the Social Sciences Computing Services (SSCS) and a union-protected role at the Mansueto Institute. These terminations were often without notice or legitimate cause.

36. **Pretextual Disciplinary Action:** On or about February 12, 2025, just days after Plaintiff filed a union grievance, the University issued a disciplinary summons against Plaintiff. The

17

charges were based on pretextual grounds, relying on alleged incidents that either occurred well before the issuance of the summons and union grievances, had already been resolved, or in fact never existed. Plaintiff had no history of academic misconduct. Plaintiff was 3 months far from completing the degree. The University abruptly initiated these charges only after Plaintiff filed the grievance, denied Plaintiff any meaningful due process, and imposed discipline based on matters over a year old, in direct violation of the University's own 60-day limitations rule.

37. **Use of Fabricated Evidence:** Plaintiff alleges and asserts that the "Travel Notification Form" used as the basis for his expulsion was forged or fraudulently created by university officials. Plaintiff never submitted the form, nor did he receive the standard automated email confirmation that accompanies all such submissions. The University failed to provide any technical validation (IP logs, metadata) to prove the form's authenticity, despite requests.

38. **Denial of Due Process:** The disciplinary hearing was fundamentally biased plot made by university and staff and taken forward practically by Dean Kare Biddle right after plaintiff being in protected activity. The panel selectively ignored exculpatory evidence, prevented discussion of Plaintiff's union-protected employment, and was improperly influenced by non-voting administrators like Dean Kate Biddle, who misrepresented and misinterpreted facts during the proceeding and hence was the main working staff and agent of university to build the plot against plaintiff. The entire process appeared to be pre-determined, prejudged, and fabricated to result in expulsion, and its appeal's process. Where university acted with fraud, malice, and oppression by abusing its authority.

39. **Wrongful Expulsion:** On February 25, 2025, before the union grievance of February 1, 2025, process could proceed and before Plaintiff's appeal period on the disciplinary matter had concluded, the University formally expelled him. This action effectively silenced his grievances and denied him any meaningful redress.

40. **Discrimination and Hostile Environment:** Throughout this period, Plaintiff was subjected to a hostile environment based on his disability, religion (Hindu), ethnic (South Asian, Indian, Punjabi), and national origin (Indian). This included mocking comments

from staff about his disability, discriminatory application of work-hour rules that were not applied to other students, and a general environment of exclusion.

41. **Retaliatory Surveillance:** After filing complaints, Plaintiff alleges that plaintiff observed the conspicuous and intimidating presence of University of Chicago Police Department (UCPD) vehicles near his residence, a tactic reasonably perceived as surveillance and harassment.

42. **Defendants retaliated by (Not limited to):**

   a. Expelling Plaintiff in with alleged unfair, bias, predetermined, prejudged, hearing and using forged evidence.

   b. Discriminatively terminating his jobs at SSCS and Mansueto Institute with pretextual reasons.

   c. Denying disability accommodations without an interactive process or appeal.

   d. Misreporting data, delaying transcripts, and allegedly tampering with records, by strategically sending transcripts again or after the discipline blot was added on transcripts especially to Harvard law school as was cached so that plaintiff may not get legal support or knowledge to sue them for their alleged wrongdoing, misconduct, falsification, discrimination, and pattern of multiple retaliations.

   e. Conducting surveillance and intimidation via university police.

   f. Ignoring grievances, violating University policies and federal law.

   g. Plaintiff full time job roles interview got cancelled without reason.

   h. University gave terminations for non-union roles, but not for union roles

   i. University didn't gave wages of many hours that plaintiff worked

   j. Non hearing of grievances of discrimination, retaliation

43. Defendants' actions caused Plaintiff severe emotional distress, trauma, depression, anxiety, financial loss (tuition, wages, opportunities), and career disruption. Plaintiff was and is tortured and traumatized by the university campaigns from alleged bad quality education, non-supportive professors and staff, grievance fillings, assault, protection of assaulters, wrongful terminations, discrimination, retaliation, unsafe environment of university, and

19

plaintiff in internal grievances, that all made "breathing in open air" difficult in that environment for plaintiff.

44. Plaintiff's grievances were dismissed or mishandled, reflecting systemic retaliation against whistleblowers, abuse of authority, malice, oppression, fraud, and discrimination.

45. Defendants' misconduct implies misuses public funds, harms students, and violates civil rights, necessitating judicial intervention.

46. The expulsion process lacked impartiality, due process, breached University rules, causing educational, professional, mental and health harm.

**C. Further whistleblowing**

46. Plaintiff further alleges and brings to the Court's attention, as a whistleblower, that UChicago Medicine and its affiliated hospitals are engaged in research misconduct and fraudulent research practices. Plaintiff also alleges that Vogel Lab is conducting research studies in bad faith. Additional details regarding these allegations are set forth in the full complaint. Multiple other whistleblowers are in full document of complaint.

## V. CLAIMS FOR RELIEF

**COUNT I: RETALIATION IN VIOLATION OF FEDERAL AND STATE LAW (Title VII, Title IX, ADA, Illinois Whistleblower Act, and Public Policy)**

47. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

48. Defendants took severe, adverse educational and employment actions against Plaintiff, including termination and expulsion, as a direct result of his engagement in legally protected activities. These activities include filing a union grievance, reporting safety violations, reporting a sexual and physical assault, food matter, and reporting financial and academic misconduct.

49. The adverse actions would not have occurred "**but-for**" Plaintiff's protected activities. The close temporal proximity between Plaintiff's complaints and the University's adverse actions establishes a causal link.

20

50. Defendants' actions violate the anti-retaliation provisions of Title VII, Title IX, the ADA, the Illinois Whistleblower Act, Student Manuals, and the common law tort of retaliatory discharge.

51. Plaintiff further alleges that university retaliated and took no action against assaulter since he was working in Gordon Center for Integrative Science, that is Biological/Chemistry Department at the University of Chicago, and comes under the Physical Sciences Division most probably, and plaintiff suspects that he might be working on federally funded program/project(and/or with professor and/or lab, and/or institute, and/or department) who gets such funding) so pressing any charges against him might have reputational harm, federal funding and private funding revocations, harm of assaulter future, harm of university name and fame, for the university, whereas plaintiff was not in similar position, That's why after initially suggesting no contact directive, university and their HR didn't gave the NCD (No Contact Directives), that made things far more **worse, traumatizing, and torturing** for plaintiff. Plaintiff also asked if legal services may be provided by university to plaintiff in good faith however university clearly refused to do so.

52. Plaintiff as an individual and alone strongly believe and assert that it had to fight alone with almost all the defendants and even more people especially at the university.

## COUNT II: <u>DISCRIMINATION IN VIOLATION OF FEDERAL AND STATE LAW (Title VI, Title IX, ADA, Rehabilitation Act, and Illinois Human Rights Act)</u>

53. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

54. Defendants subjected Plaintiff to discrimination and a hostile educational and work environment based on his disability, religion, race, and national origin.

55. This discrimination included failing to provide reasonable disability accommodations multiple times, subjecting him to ridicule, applying policies in a disparate manner compared to non-Hindu and non-Indian students, and failing to provide equal access to institutional resources and protections.

56. Defendant have knowingly let many students violate 20 hours cap of working allowance of time per week. And took discriminatory action against plaintiff on going 0.1 hr above,

however plaintiff clearly asked Kerry to trim it to 20, that is a usual practice the university do, either add it in the next week or not pay at all. Plaintiff clearly verbally and on messages told Kerry to repair it but he didn't do that at all, he ignored plaintiff sayings many times and use to hear properly to other staff strongly suggesting discrimination and biasness. Plaintiff called Kerry before discipline to agree that plaintiff told him to trim down the hours, however he didn't reply back and ignored that as well, which was one of the strongest points in that matter. Other students from other religion, nationalities, sexualities, and caste, openly claimed that they do more than 20 but didn't get any punishment.

57. Defendants' actions violate Title VI, Title IX, the ADA, Section 504 of the Rehabilitation Act, and the Illinois Human Rights Act.

## COUNT III: <u>DENIAL OF DUE PROCES AND BREACH OF CONTRACT</u>

58. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

59. The University of Chicago, by accepting Plaintiff as a student and employee, entered into an express and implied contract to provide a fair educational environment and to abide by its own published policies, including its student manual, disruptive conduct policy, and grievance procedures.

60. Providing safe environment to work, taking grievances and assault seriously was also important and defendants had to abide by its own published policies, including its student manual, disruptive conduct policy, and grievance procedures.

61. Defendants breached this contract and violated Plaintiff's right to procedural and substantive due process by: a. Conducting a sham disciplinary proceeding that constituted a kangaroo court, characterized by fundamental unfairness and a predetermined outcome. b. Failing to provide a neutral and unbiased adjudicators. c. Ignoring and suppressing exculpatory evidence. d. Denying Plaintiff the right to an informal grievance resolution process. e. Prematurely imposing sanctions before the conclusion of all appeal and grievance processes, ensuring the process was a vindictive prosecution. f. Acting in an arbitrary and capricious manner, without reference to or in brazen violation of their own stated rules and procedures. g. Engaging in an abuse of process by weaponizing the disciplinary system for the ulterior purpose of silencing a whistleblower and avoiding

22

addressing his good-faith complaints, a clear violation of public policy h. Poaching to finish plaintiff as a student and employee for lifetime i. Blacklisting plaintiff after grievances filling j. Retaliating and started digging after grievance filling k. timeliness for reporting l. violation of retaliation rules as per student manuals, policies, and other rules, laws and constitutions in IL, USA .

62. This orchestrated and plotted campaign of misconduct has caused Plaintiff irreparable harm that cannot be undone by monetary compensation alone. Defendants' egregious, wilful, and wanton actions, driven by retaliatory animus, justify an award of aggravated damages for the increased injury caused by their offensive conduct and punitive damages to punish this flagrant behaviour and deter it in the future.

63. Furthermore, the University's actions effectively amounted to a constructive discharge, creating an intolerable environment designed to force his exit. The calculated use of fabricated evidence and the public nature of his wrongful expulsion constitute defamation (specifically libel), severely damaging his reputation and constituting tortious interference with its prospective economic advantages, as it disrupts its ability to gain future employment and educational opportunities. The systemic and pervasive nature of this retaliation, along with the cavalier disregard for his rights, reflects a conscious avoidance of their legal duties and amounts to the intentional infliction of emotional distress.

64. These actions deprived Plaintiff of its property and liberty interests in its education, research, and employment without the due process of law guaranteed by the Fourteenth Amendment and Illinois common law.

## COUNT IV: FRAUD, MISREPRESENTATION, AND CONSUMER FRAUD (Illinois Consumer Fraud and Deceptive Business Practices Act)

65. Plaintiff realleges and incorporates by reference the allegations contained in the preceding paragraphs.

66. Defendants engaged in unfair and deceptive practices by making material misrepresentations to Plaintiff and the public regarding the quality of its educational programs, student support services, career outcomes, and financial aid practices.

67. These misrepresentations induced Plaintiff and similarly situated to enrol and pay substantial tuition. The University's practices, including flawed exam procedures, deceptive employment statistics, and coercive financial aid arrangements, constitute violations of the Illinois Consumer Fraud and Deceptive Business Practices Act.

## COUNT V: <u>VIOLATION OF PRIVACY RIGHTS (FERPA, CONSTITUTIONAL LAW)</u>

68. Defendant unlawfully accessed Plaintiff's communications and educational records without consent.

69. Defendant used the FERPA, communications, and other data in bad faith to keep an bad eye on plaintiff.

## COUNT VI: <u>MISUSE OF FEDERAL FUNDS AND FALSE CLAIMS ACT VIOLATIONS (31 U.S.C. § 3729 et seq.)</u>

70. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

71. Plaintiff alleges, upon information and belief, that the University of Chicago permitted student workers including international students working in multiple institutional roles in excess of the federally and/or institutionally mandated hourly limits under F-1 student visa regulations, union contracts, and internal employment policies.

72. These violations raise significant concern where such labour appears tied to federally funded programs, research initiatives, or educational services for which the University claims federal reimbursement, grants, or other nonprofit benefits.

73. Plaintiff further alleges that such conduct may constitute a pattern of misuse of federal funds, potentially violating the False Claims Act (31 U.S.C. § 3729), which prohibits knowingly presenting false claims for payment or approval to the United States Government or knowingly retaining overpayments.  Further, Plaintiff contends that the institution's nonprofit status and access **to federal funding were used in bad faith to** support discriminatory and retaliatory practices including selective enforcement of disciplinary action, denial of procedural fairness, and expedited sanctions following protected grievance activity all in violation of state and federal laws, including the False Claims Act (31 U.S.C. § 3729), Title VI, Title IX, and the Equal Protection and Due Process Clauses of the Constitution.

24

74. Upon information and belief, the University's conduct involve knowingly misclassifying or underreporting work hours, leveraging nonprofit exemptions in bad faith, and concealing or failing to disclose these practices in federally required documentation and grant compliance reports.

75. If substantiated through discovery, such acts constitute fraudulent misrepresentations and/or omissions in connection with the receipt and use of federal education, research, or employment funds, and warrant investigation, restitution, penalties, and equitable relief.

76. Plaintiff seeks injunctive and declaratory relief, including referral to appropriate federal authorities for investigation of potential violations of the False Claims Act and applicable Department of Education and Department of Labor grant compliance standards.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in its favour after jury trial and against all Defendants, jointly and severally, and grant the following relief:

A. A declaration that Defendants' actions violated Plaintiff's rights under federal, constitutional and state law.

B. Declaration of University of Chicago being state actor

C. Revocation of all of Universities Federal Fundings,

D. Revocation of Non-profit and Tax-exempt status.

E. Revocation of privilege of sponsoring international student; Revocation of ability to sponsor F1 Visa, I-20 Forms, SEVIS Records, CPT and OPT Authorizations,

F. Revocation of FERPA Authorizations/Records, etc.

G. Relevant penalties to defendants.

H. Compensatory damages sum in an amount to be determined at trial by jury for **all** economic losses, harassment, mental torture, discrimination, violations of human, constitutional, federal, and state rights, emotional distress, future opportunities, and reputational harm, and other things mentioned in this or full version of complaint.

I. Full Tuition Fee and scholarship refund as compensation

J. Punitive damages against Defendants for their wilful, malicious, and reckless disregard of Plaintiff's rights.

**K.** Attorney's fees and the costs of this litigation.

**L.** Lost opportunities and top universities admit or relevant heavy damages

**M.** Answer to nuanced constitutional questions arise out of this complex matter, considerations of constitutional issues, and recommendations/proposal to amendments as required to the legislative or other relevant bodies, for such cases no to happen again

**N.** Recognition of term "Educational Terrorism" and/or "Educational terrorists" as mentioned in detail in full complaint, and mental rape, especially after poaching plaintiff

**O.** Public Apology by each individual involved and by the defendants not limited to university to be published that is to be approved and updated by plaintiff, with best search engine optimization on university website for outreach of page, and official YouTube, Twitter, Instagram, and LinkedIn channels of the University of Chicago and relevant schools and individuals. Manually handwritten letters of apology by defendants to be sent out to plaintiff (Around 5000 letters), to be sent to all place and university plaintiff have to apply for afterwards.

**P.** Any other and further relief that the Court and Jury deems just, equitable, and proper in favour of plaintiff.

**Q.** Recognition of Socioeconomic Vulnerability: Plaintiff requests the Court consider Plaintiff's low/zero-income and deprived status in assessing equitable relief, procedural accommodations, and judicial understanding of power imbalance between Plaintiff and institutional Defendant.

**R.** Formal Acknowledgment of Persecuted Status: Plaintiff respectfully requests that, where permissible under federal law (including Title VII of the Civil Rights Act, Equal Protection Clause, or public policy), the Court formally recognize Plaintiff's identity as a member of a persecuted or marginalized minority group and/or economically disadvantaged class, as a relevant context in assessing the harm and relief due.

## VII MOTIONS

**70.** Plaintiff moves for appointment of counsel, as he is indigent, unemployed, and faces complex legal issues, per Local Rules 83.35, 83.36, and 28 U.S.C. § 1915(e)(1).

**71.** Plaintiff moves to proceed in forma pauperis, unable to pay fees due to financial hardship, per Local Rule 3.3 and 28 U.S.C. § 1915.

**72.** Plaintiff moves for a protective order under FRCP 26(c) to block discovery on unsubstantiated academic misconduct claims, citing reputational harm.

**73.** Plaintiff respectfully moves this Honourable Court to permit service of summons via email or, alternatively, through assistance of the Clerk or U.S. Marshal, in light of Plaintiff's current residence outside the United States and limited ability to effect personal service.

## VIII.  CONFIDENTIALITY REQUEST

Plaintiff requests redaction of his identity and sensitive allegations from public filings under FRCP 5.2 and Illinois Supreme Court Rule 15, citing retaliation risks, per *Doe v. Stegall*, 653 F.2d 180 (5th Cir. 1981). Nonetheless, Plaintiff respectfully requests that a redacted version of the complaint omitting Plaintiff's name, cultural and religious identifiers, national, details of the assault, caste, race, and medical information remain accessible in the public record, in good faith, for the benefit of law students, scholars, faculty, and members of the legal profession, including attorneys and counsels.

## IX. JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Also consider this case as a Class Action Lawsuit

Dated: September, 2, 2025

Respectfully submitted,

***Signature***

Dipesh Singla

*Pro Se* Plaintiff