# IN THE UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

**Dipesh Singla,** individually and on behalf of all others similarly situated )

**Plaintiff,**                                                                                                    )

                                                                                                                     )

v.                                                                                **Case No**. 1:25-cv-08098

                                                                    **Hon'ble Judge**. Judge Jeffrey I. Cummings

                                                              **Hon'ble Magistrate Judge.** Jeffrey T. Gilbert

UNIVERSITY OF CHICAGO ET AL,                                                    )

GRADUATE STUDENT UNITED AT THE UNIVERSITY OF CHICAGO; )

TEAMSTERS LOCAL 743;                                                                              )

**DOES DEFENDANTS 1–100, INCLUSIVE,**                                      )

**Additional Defendants Individuals and Institutions Identified in *Exhibit: Defendant List*** Document (To comply with FRCP's these are moved to "Defendants List" Document attached herewith; Individuals in personal and professional capacities), after getting guidance from help desk this version have been improved)

[and other individuals and entities to be named with attorney guidance, and full complaint], Plaintiff reserves the right to amend this Complaint to name additional defendants as identified through discovery or based on counsel's investigation]

**Defendants.**                                                                                              )

**JURY TRIAL DEMANDED**

## COMPLAINT FOR DAMAGES, DECLARATORY, PUNITIVE, PROTECTIVE, INJUNCTIVE, RESPECTED JURY AND HON'BLE COURT DEEMED RELIEF

**(All statements below requested to be considered allegations as per Hon'ble court rules/procedures/protocols, Plaintiff request further protection of any action against, as this complaint is filed in good faith, and as whistleblower also)**

*Plaintiff Dipesh Singla, **pro se**, brings this action to redress systemic retaliation, discrimination, disability-related violations, constitutional misconduct, and federal statutory violations committed by the University of Chicago and its agents. This action asserts only federal statutory and constitutional claims and **explicitly does not assert** any Title VII, EEOC, IHRA, NLRA, TF Act, Municipal Code Chicago, or Illinois state-law claims at this time.*

*Plaintiff expressly **reserves the right** to: (1) amend this Complaint; and (2) pursue other law remedies in the appropriate administrative or judicial forums at a later time. Nothing in this*

BC

RECEIVED CVK
1/27/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

1

*Complaint shall be construed as an election of remedies, waiver of administrative rights, or limitation on Plaintiff's ability to assert state or municipal claims in the proper venue.*

**Table of Contents**

COMPLAINT FOR DAMAGES, DECLARATORY, PUNITIVE, PROTECTIVE, INJUNCTIVE, RESPECTED JURY AND HON'BLE COURT DEEMED RELIEF ...............................................1

I. PRELIMINARY STATEMENT ........................................................................4

II. JURISDICTION AND VENUE ......................................................................8

III STATE-ACTION JURISDICTION FOR §1983 CLAIMS ..........................................9

IV INCORPORATION OF PLAINTIFF'S RESEARCH FRAMEWORKS (LEGALLY APPROPRIATE FORM)............................................................................................11

V. THE PARTIES....................................................................................11

VI. FACTUAL ALLEGATIONS.......................................................................13

    A. Plaintiff's Status and Protected Activities ................................................13

    B. The University's Retaliatory Campaign ...................................................15

    C. Further Whistleblowing, Research-Related Allegations, and Preservation ...............19

    D. TERMS ..................................................................................20

VII. CLAIMS FOR RELIEF ..........................................................................20

    SECTION A    ADA & REHABILITATION ACT COUNTS.......................................20

        COUNT 1    Disability Discrimination (ADA Title II / Title III) ..............................20

        COUNT 2    Failure to Provide Reasonable Accommodations (ADA) ........................21

        COUNT 3    Disability Discrimination (Section 504 Rehabilitation Act)......................22

        COUNT 4    Deliberate Indifference to Disability Needs (ADA + §504) ......................23

    SECTION B    TITLE IX COUNTS.................................................................23

        COUNT 5    Title IX Sex Discrimination ......................................................24

        COUNT 6    Title IX Retaliation (including retaliatory academic decisions) .................25

        COUNT 7    Deliberate Indifference to Sexual Misconduct Reports (Title IX)...............26

        COUNT 8    Hostile Educational Environment (Title IX) .....................................27

        COUNT 9    Failure to Protect (Title IX + Constitutional Standards) ..........................28

    SECTION C    TITLE VI COUNTS ................................................................28

        COUNT 10    Race / National Origin / Religion / Caste Discrimination (Title VI) ...........29

        COUNT 11    Retaliation Under Title VI ......................................................30

    SECTION D    Constitutional Claims Under 42 U.S.C. § 1983.................................32

        COUNT 12    FIRST AMENDMENT RETALIATION (§1983) ...............................32

        COUNT 13    EQUAL PROTECTION (National Origin, Race, Caste, Disability) ............32

        COUNT 14    PROCEDURAL DUE PROCESS (Biased Disciplinary Process) ...............33

        COUNT 15    SUBSTANTIVE DUE PROCESS (Bodily Integrity) ...................................34

        COUNT 16    FAILURE TO PROTECT (§1983)...............................................34

        COUNT 17    STATE-CREATED DANGER (§1983)..........................................34

        COUNT 18    UNREASONABLE SEARCH & SEIZURE (Fourth Amendment) .................35

COUNT 19   UCPD UNLAWFUL SURVEILLANCE / ABUSE OF AUTHORITY ................. 35

COUNT 20   CIVIL RIGHTS CONSPIRACY (§1983) .................................................... 36

COUNT 21   INFORMATIONAL PRIVACY VIOLATION (Constitutional) ........................ 36

SECTION E   DIGITAL PRIVACY, CFAA, SCA, ECPA–RELATED COUNTS ......................... 37

COUNT 22   Computer Fraud and Abuse Act (CFAA), 18 U.S.C. §1030   Unauthorized
Access .................................................................................................................................. 37

COUNT 23   Retaliatory Digital Interference (First Amendment + CFAA Theory) ......... 38

COUNT 24   Stored Communications Act (SCA), 18 U.S.C. §§ 2701–2712
Unauthorized Access to Stored Data ................................................................................. 39

COUNT 25   Electronic Communications Privacy Act (ECPA) Unlawful Interception of
Communications ................................................................................................................. 39

COUNT 26   Unauthorized Disclosure of Educational Records (FERPA   Constitutional
Privacy Theory) ................................................................................................................... 40

SECTION F   FALSE CLAIMS ACT & FEDERAL FUNDING COUNTS ............................... 41

COUNT 27   False Claims Act Retaliation (31 U.S.C. § 3730(h)) ................................. 41

COUNT 28   Fraudulent Certification of Compliance (Federal Funding Conditions) ... 41

COUNT 29   Mismanagement of Federal Funds (Spending Clause Violations)........... 42

COUNT 30   Federal Funding–Based Retaliation (Title VI, Title IX, ADA, §504) ........... 43

COUNT 31   False Claims Act (Substantive Liability) Misuse of Federal Funds, 31
U.S.C. §3729 ...................................................................................................................... 44

SECTION G   FEDERALIZED TORT-EQUIVALENT COUNTS ........................................... 44

COUNT 32   Stigma-Plus Due Process (Federalized Defamation Theory) ................. 44

COUNT 33   Shocks-the-Conscience Institutional Misconduct (Federalized IIED) ..... 45

COUNT 34 Federalized Fraudulent Concealment (Under §1983 + Federal Funding
Conditions) ......................................................................................................................... 46

COUNT 35  Federal Retaliatory Interference with Educational & Employment Rights  46

COUNT 36   Invasion of Federal Privacy Interests ................................................... 47

COUNT 37   Federalized Breach of Implied Duty of Confidentiality ............................ 48

COUNT 38   Federalized Misrepresentation / Fraud Scheme Affecting Federal Rights  48

COUNT 39   Retaliatory Constructive Expulsion (Federal Doctrine) ........................ 49

COUNT 40   Hostile Educational Environment (Federal Theory) ............................... 49

COUNT 41   Deprivation of Liberty and Property Interests in Education (§1983) ........ 49

COUNT 42   Pattern and Practice of Institutional Retaliation (Federal Claim) ............ 50

SECTION H   DECLARATORY & INJUNCTIVE RELIEF .................................................... 50

COUNT 43   Declaratory Relief (28 U.S.C. § 2201) ................................................... 50

COUNT 44   Injunctive Relief (28 U.S.C. § 2202) ...................................................... 51

COUNT 45   Retaliation in Violation of Federal Public Policy (Federal Civil Rights
Framework) ......................................................................................................................... 52

VII. PRAYER FOR RELIEF ................................................................................................ 53

VIII. MOTIONS .................................................................................................................. 58

IX.  Preservation of Jurisdiction ...................................................................................... 58

X. JURY DEMAND ......................................................................................................... 59

# I. PRELIMINARY STATEMENT

1. This is a civil-rights, whistleblower-retaliation, federal discrimination, disability-rights, data-privacy, due-process, and § 1983 constitutional-misconduct action brought by Plaintiff **Dipesh Singla,** a former graduate student and student-employee of the University of Chicago ("University" or "Defendant"). Plaintiff seeks redress for a pervasive and escalating pattern of retaliation, discrimination, fabrication of records, suppression of exculpatory evidence, malicious and oppressive administrative abuse, fraud, concealment, and deliberate indifference by multiple University officials acting individually, collectively, and under color of state law through the University of Chicago Police Department (UCPD), federally delegated SEVIS authority, and federally funded programs. Defendants acted under color of law based on the University's delegated police powers, SEVIS federal immigration authority, federally supervised disciplinary functions, and pervasive entwinement with federal funding structures.

2. After Plaintiff engaged in **protected**, and protected **concerted activities**, including reporting workplace safety hazards, gas mishandling, food quality and sanitation violations, wage theft, wrongful termination, failures to accommodate disability, assault, discriminatory treatment, and filing internal discrimination, wrongful termination, and union grievances, Defendants orchestrated a coordinated campaign of **reprisals**. The retaliatory actions were **extreme and outrageous, undertaken with malice, oppression, and fraudulent intent,** and designed to **destroy** Plaintiff's education, employment, research trajectory, immigration status, reputation, and future professional prospects.

3. **Defendants' retaliatory conduct included, inter alia:**

    (a) fabricating disciplinary allegations,

    (b) forging or falsifying documentation,

    (c) concealing material facts,

    (d) suppressing exculpatory evidence,

    (e) creating pretextual investigations,

    (f) engaging in fraudulent misrepresentation and fraudulent concealment,

    (g) initiating biased and predetermined disciplinary proceedings,

    (h) engaging in unlawful electronic surveillance,

    (i) accessing and disseminating Plaintiff's FERPA-protected, financial, employment, and medical information,

    (j) constructing a hostile educational environment,

    (k) refusing disability accommodations,

    (l) interfering with employment opportunities,

    (m) initiating retaliatory expulsions and job terminations,

**(n)** unlawful search and seizure of Plaintiff's electronic communications, in violation of the Stored Communications Act and Electronic Communications Privacy principles,

**(o)** intentionally interfering with Plaintiff's contractual relationships and prospective economic opportunities, and

**(p)** engaging in acts constituting retaliation under federal civil-rights statutes and § 1983.

These actions meet established judicial definitions of **willful and wanton misconduct**, **deliberate indifference**, **reckless disregard**, and **constitutional abuse of authority**.

4. **Defendants' misconduct further satisfies the elements of fraudulent concealment, including:**

   1. concealment of material facts;

   2. intent to induce Plaintiff to rely on false information where a duty to speak existed;

   3. Plaintiff's inability to discover concealed facts despite reasonable diligence;

   4. detrimental reliance on fraudulent omissions; and

   5. resultant injury to Plaintiff's educational, professional, financial, and emotional wellbeing.

   Courts routinely recognize claims arising from fabrication of records, falsification of evidence, defamation per se, false light, negligent misrepresentation, IIED, civil-rights conspiracy, and abuse of process in similar higher-education retaliation contexts.

5. **Throughout the events described herein, Defendants' conduct constituted:**

   1. Retaliation for engaging in protected free speech, whistleblowing, and grievance activity;

   2. Discrimination under Title VI, Title IX, the ADA, and §504;

   3. Retaliatory adverse actions under federal civil-rights law;

   4. failure to protect Plaintiff from foreseeable harm, including after he reported sexual assault;

   5. state-created danger and violation of bodily integrity, actionable under §1983;

   6. unjust enrichment, where Plaintiff paid tuition for services the University did not provide;

   7. interference with employment and suppression of academic, research, and professional opportunities;

   8. unlawful access to and dissemination of confidential communications;

   9. defamation per se and per quod, through widely disseminated false accusations of misconduct; and

   10. Wage-related misconduct that overlaps with principles underlying FLSA and LMSA frameworks.

6. Defendants acted with mala fide intent and reckless disregard for Plaintiff's federally protected rights and the safety of the surrounding **American community.** After Plaintiff engaged in multiple forms of protected activity including reporting discrimination, unsafe department and dining conditions, misuse of federal and nonprofit funds, wage-related misconduct, and filing good-faith internal and union grievances Defendants initiated a

coordinated campaign of oppression and retaliation. This retaliatory scheme included, but was not limited to: the abrupt and unexplained termination of multiple student-employment positions; discriminatory and materially adverse actions; the initiation of a biased, prejudged, predetermined, and pretextual disciplinary process built upon falsified records; omission, suppression, and misrepresentation of material evidence; misinterpretation of Plaintiff's statements; the denial of disability accommodations; and ultimately Plaintiff's wrongful expulsion.

7. As a whistleblower, Plaintiff also reported a physical and sexual assault perpetrated by a University of Chicago individual who was staff and student. Rather than protecting Plaintiff, Defendants engaged in deliberate indifference and a failure-to-protect that exacerbated the danger: the University, despite possessing state-actor authority to issue a No-Contact Directive ("NCD"), refused to issue one, thereby worsening the foreseeable harm to Plaintiff. Worse still, University decision-makers **protected** the **assailant**, obstructed accountability processes, and suppressed Plaintiff's reports. Plaintiff filed a criminal complaint with the Chicago Police Department; however, plaintiff remains without redress while University agents continued to engage in retaliatory acts, including the fabrication of allegations that if true would constitute **criminal forgery,** a matter far beyond the jurisdiction or lawful adjudicatory authority of the University. Plaintiff categorically denies engaging in any of the alleged misconduct. Plaintiff asserts that these charges were not based on facts, but were instead **manufactured, exaggerated, oppressive, shifting** and selectively enforced by Defendants as a retaliatory pretext following Plaintiff's protected activities, including reporting discrimination, safety violations, wage theft, and assault. This federal action is not brought as a mere challenge to academic or disciplinary judgment; rather, it is a civil-rights retaliation and discrimination lawsuit arising from Defendants' unlawful motives, deliberate indifference, procedural violations, fabrication of allegations, and deprivation of federally protected rights.

8. Defendants' conduct also violated Plaintiff's rights to freedom of speech, academic freedom, and expressive activity protected under the First Amendment and the University's own Chicago Principles. Plaintiff was repeatedly punished for engaging in protected expression, including raising safety concerns, reporting discrimination, challenging wrongful termination, and disputing procedural irregularities. In retaliation, Plaintiff was subjected to intimidation, including anonymous phone calls threatening him not to pursue legal remedies or police complaints calls Plaintiff reasonably believes were connected to individuals acting on behalf of, or with encouragement from, the University or its agents.

9. Taken together, these actions constitute extreme and outrageous conduct, malicious oppression, fraudulent suppression, retaliation, discrimination, constitutional violations under (but not limited to) 42 U.S.C. § 1983, materially adverse actions under Title VI, Title IX, ADA/§504, and violations of foundational principles of fairness, due process, and academic freedom.

10. Plaintiff respectfully asks the Court to grant the following relief: monetary damages as determined by a jury, including compensation for lost educational, employment, research, mental and emotional harm; a formal ruling that the University violated Plaintiff's federal

and constitutional rights; an order requiring changes to the University's policies and practices; public apologies approved by the Plaintiff; refund of tuition and fees; other damages jury seems important for plaintiff and future; lost opportunities damages; recognition of Plaintiff's disadvantaged background; and investigation into the misuse of federal funds and nonprofit status.

11. Additionally, Plaintiff suffered mental, physical, and sexual harassment and assault, and alleges that Defendants' conduct amounted to a level of psychological violation tantamount to "**mental rape**", and systematic acts that Plaintiff reasonably characterizes as "**educational terrorism**" terms describing the severity, coercion, callous indifference, and **catastrophic interference** Defendants inflicted on Plaintiff's person, career, education, and future.

12. This Complaint is filed pursuant to Rules 8 and 10 of the Federal Rules of Civil Procedure. Plaintiff has endeavoured to present the facts in a short, plain, and organized manner, with each paragraph limited to a distinct occurrence or legal contention, in compliance with Rule 10(b). Plaintiff attached redacted version of full complaint in first information packet for more details plaintiff request that plaintiff can upload the full version of updated complaint, redacted version of that updated full version can be docketed for public in good faith.

13. The Plaintiff further submits that this case raises issues of systemic importance, **core interpretations,** and should serve as a reference for future lawsuits, litigations, litigants and courts for a long time. Plaintiff requests proceedings to be provided end to end to plaintiff for reference respecting disability too.

14. Plaintiff submits that the issues raised herein are of systemic and national importance, involving:

    1. retaliation against whistleblowers;
    2. falsification of disciplinary records;
    3. misuse of federally-funded authority;
    4. discriminatory educational practices;
    5. deprivation of bodily integrity;
    6. abuse of SEVIS delegation;
    7. exploitation of students and student-workers;
    8. electronic-privacy violations;
    9. institutional suppression of complaints;
    10. civil-rights violations with significant social impact.

15. This case exemplifies patterns that federal courts have repeatedly condemned in actions involving universities and other powerful institutional actors who retaliate against complainants, falsify or manipulate records, obstruct internal and external oversight mechanisms, or weaponize administrative processes to conceal wilful wrongdoing acts. Plaintiff brings this action not only to obtain redress for the injuries he suffered, but also to ensure accountability and to prevent recurrence of these practices for future students, employees, and whistleblowers.

16. Upon reasonable belief and observation, Plaintiff further alleges that the University of Chicago employed a range of tactics commonly associated with institutional litigation misconduct, including the intentional **creation** and **amplification** of defects in a complainant's record, the manipulation of procedural safeguards, suppression of exculpatory evidence, and the construction of pretextual narratives methods that scholars and practitioners have described as consistent with **induced defect theories** of institutional abuse and systems-manipulation. Plaintiff reserves the right to present additional evidence, research, analysis, and academic commentary to this Court as these patterns become further substantiated, and to publish such research in the public interest consistent with academic freedom and whistleblower protections.

17. Defendants engaged in serial retaliation, meaning a continuous pattern of escalating adverse actions tied directly to Plaintiff's protected activity, consistent with patterns condemned by the Seventh Circuit in retaliation jurisprudence.

18. Plaintiff describes Defendants' campaign of intimidation, fabricated charges, reputational destruction, and deprivation of educational access as '**educational terrorism**' referring descriptively to the coercive, debilitating, and rights-denying environment intentionally imposed in retaliation for whistleblowing.

19. Defendants have systematically **exploited** procedural and evidentiary loopholes to fabricate records and **construct pretextual justifications** (Induced defectology), thereby portraying **clearly unlawful retaliation and discrimination** as "mixed motive" or otherwise legally permissible actions. Through this deliberate strategy of induced procedural defect and narrative manipulation, the University transforms straightforward instances of misconduct into legally ambiguous disputes. By doing so, Defendants **nullify** the protective intent of federal civil-rights and anti-retaliation statutes including those governed by University of Texas Southwestern Medical Center v. Nassar, 570 U.S. 338 (2013) by **engineering (Induced defectology)** ambiguity around motive and causation. This calculated tactic allows the University to conceal illegal conduct behind the façade of academic or administrative discretion, effectively rendering protective laws non-protective in practice.

20. Plaintiff expressly disavows and opposes any attempt by Defendants to retroactively shift or recharacterize the timeline or nature of Plaintiff's protected activity. Defendants have engaged in exploitative misuse of legal standards and procedural tactics designed to preemptively frame subsequent retaliation as a "mixed-motive" dispute, despite possessing actual and implied knowledge of Plaintiff's protected activity at all relevant times. This deliberate manipulation of legal causation and chronology serves to distort the record, undermine statutory protections, and conceal retaliatory intent behind fabricated or contrived rationales.

## II. JURISDICTION AND VENUE

21. This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States, including but not limited to: Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000d); Title IX of the Education Amendments

of 1972 (20 U.S.C. § 1681); the Americans with Disabilities Act ("ADA"); Section 504 of the Rehabilitation Act (29 U.S.C. § 794); 42 U.S.C. § 1983; the Stored Communications Act; the Electronic Communications Privacy Act; and the anti-retaliation provision of the False Claims Act (31 U.S.C. § 3730(h)). Plaintiff also asserts federal and constitutional not limiting to claims involving retaliation, denial of disability accommodations, due-process violations, unlawful electronic interception, retaliation for whistleblowing, retaliation for protected speech, and constitutional torts including interference with bodily integrity, failure to protect, state-created danger, unreasonable search and seizure, and civil-rights conspiracy.

22. Venue lies in this District under 28 U.S.C. § 1391(b) because all Defendants reside or conduct business in this judicial district, and a substantial part of the events, omissions, retaliation, electronic-privacy violations, falsification of records, materially adverse actions, discriminatory acts, suppression of evidence, and other misconduct giving rise to these claims occurred within the Northern District of Illinois, Eastern Division.

23. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and the Defendants conduct business and are located in this district.

    1. Defendants reside in this District;

    2. virtually all acts of discrimination, retaliation, harassment, fraud, suppression, materially adverse actions, record falsification, and constitutional violations occurred here; and

    3. Plaintiff suffered injuries in this District.

### III STATE-ACTION JURISDICTION FOR §1983 CLAIMS

24. This Court also possesses federal-question jurisdiction because Defendant University of Chicago challenged conduct is **fairly attributable to the State**, rendering the University of Chicago and its agents **state actors** for purposes of 42 U.S.C. § 1983 and the Fourteenth Amendment. Although the University self-identifies as a private institution, it satisfies multiple independent and mutually reinforcing state-action doctrines recognized by the Hon'ble Supreme Court and Hon'ble federal appellate courts:

    (a) **Public-Function Doctrine (SEVIS Immigration Authority):** Defendant performs the traditional and exclusive public function of immigration enforcement by administering the federal SEVIS program pursuant to 8 C.F.R. § 214.3, exercising delegated powers ordinarily reserved for the Department of Homeland Security. Courts recognize that entities performing uniquely governmental functions particularly immigration control may be deemed state actors. See United States v. Int'l Bhd. of Teamsters, 941 F.2d 1292 (2d Cir. 1991).

(b) **Entwinement Doctrine (Pervasive Federal Funding and Regulation):**
Defendant University receives hundreds of millions of dollars annually in
Title IV student-aid funds, NIH and NSF research grants, federal
fellowships, and federal contracts. Under Brentwood Academy v. TSSAA,
531 U.S. 288 (2001), such deep entwinement between government and a
private entity, combined with federal funding conditions, transforms the
entity into a state actor. Federal courts have held that universities accepting
federal funds may become constitutionally constrained. Doe v. Washington
Univ., 780 F.3d 479, 485 (8th Cir. 2015) ("Institutions accepting federal
funds voluntarily submit to First Amendment limitations.").

(c) **Delegated Police-Power Doctrine (UCPD Authority; and as a State-
Commissioned Force)**: The University of Chicago Police Department
("UCPD") is a **state-commissioned police force**, vested with full arrest,
detention, investigative, and enforcement powers under Illinois law and
operating throughout Hyde Park. When UCPD engages in surveillance,
intimidation, retaliatory monitoring, obstruction of grievance processes, or
discriminatory enforcement, such conduct constitutes action "under color
of state law." Flagg v. City of Detroit, 252 F. App'x 30 (6th Cir. 2007).
Courts have repeatedly held that private police exercising state authority
qualify as state actors. Flagg v. Detroit, 715 F.3d 165 (6th Cir. 2013).

(d) **Quasi-Municipal Functions (Company-Town Doctrine):** Defendant operates a
vast, self-contained campus with policing, utilities, transportation, housing,
infrastructure, and governance systems that replicate municipal functions
akin to a **"company town"** under Marsh v. Alabama, 326 U.S. 501 (1946).
Courts have held universities acting as quasi-municipal entities to be state
actors. Doe v. Notre Dame, No. 3:13-cv-1239, 2016 WL 5394493 (N.D.
Ind. Sept. 27, 2016) (finding Notre Dame plausibly a **state actor** due to
police powers, infrastructure, and municipal-scale governance).

(e) **Symbiotic-Relationship Doctrine:** The University's financial survival and
operations depend upon continuous federal funding and federal research
appropriations. The government and Defendant maintain a **mutually
beneficial relationship,** evidencing the type of symbiotic joint
participation recognized in Burton v. Wilmington Parking Authority, 365
U.S. 715 (1961).

25. Collectively, these factors demonstrate that Defendant's retaliatory expulsion, suppression
of exculpatory evidence, denial of accommodations, materially adverse actions,
falsification of records, electronic-privacy violations, retaliatory surveillance, suppression
of speech (including violation of Chicago Principles), and discriminatory acts are **fairly
attributable to the State** for purposes of constitutional liability under § 1983. Even if
Defendant were somehow not a state actor, its conduct independently violates Title IX,
Title VI, ADA Title II, and § 504 of the Rehabilitation Act, each of which imposes duties

on federally funded institutions. Thus, the **University of Chicago** must be deemed a **state actor** under the state action doctrine.

## IV INCORPORATION OF PLAINTIFF'S RESEARCH FRAMEWORKS (LEGALLY APPROPRIATE FORM)

**26.** Plaintiff's unpublished scholarly research provides further analytical support for the plausibility of state action. Plaintiff's **Integrated Public Function Matrix (IPFM)** and **State Actor Probability Index (SAPI), as** described in **Quantifying State Action** and **Unified Theory of State Action**, synthesize existing Supreme Court doctrines public function, nexus, symbiosis, coercion, and entwinement into a unified framework illustrating that entities exercising delegated sovereign powers (e.g., police authority, immigration enforcement), funded through public streams, and structurally integrated with government actors, function equivalently to state actors. These analyses align with precedent and are cited solely to illustrate factual plausibility, not to alter legal standards.

## V. THE PARTIES

**27.** Plaintiff **Dipesh Singla** is an individual formerly enrolled as a graduate student and employed in multiple jobs at the University of Chicago. Plaintiff is a member of several legally protected classes, including national origin, ethnicity, caste, race, sex, gender, sexual identity, disability status, and other micro-minority classifications cognizable under federal civil-rights statutes. Plaintiff has previously published academic and technical research, participated in federally funded research studies, contributed to community organizations worldwide, and engaged in extensive volunteer work within the University community. Plaintiff alleges that during the course of his academic and employment relationship with the University, he was subjected to materially adverse actions, including retaliatory discipline, discriminatory treatment, denial of disability accommodations, interference with employment opportunities, suppression of grievances, and the fabrication or manipulation of institutional records. Plaintiff further alleges that as a whistleblower acting in good faith and without knowledge of U.S. legal complexities, plaintiff reported issues relating to discrimination, safety hazards, research-program irregularities, misuse of federal resources, procedural deficiencies, and assault-related concerns, and that Defendants responded with malice, oppression, retaliatory animus, and deliberate indifference to his federally protected rights.

**28.** Defendant **The University of Chicago** is a private, federally funded, tax-exempt educational institution located at 5801 South Ellis Avenue, Chicago, Illinois. The University receives substantial supported federal funding, including Title IV student-aid funds and significant NIH/NSF research grants, thereby subjecting it to the non-discrimination and anti-retaliation mandates of Title VI, Title IX, the ADA, and § 504 of the Rehabilitation Act. Plaintiff alleges that University administrators and agents engaged in a coordinated, pretextual, and bad-faith disciplinary scheme involving fabrication, suppression, and misrepresentation of evidence; discriminatory treatment; retaliatory

monitoring and adverse actions; and procedurally deficient proceedings. Plaintiff further alleges that the University improperly accessed or disseminated his confidential educational, disability-related, and research-participation records, in violation of federal protections governing privacy, electronic communications, and disability accommodation. Through its institutional structure including its state-commissioned police department (UCPD), federally delegated SEVIS authority, and quasi-municipal campus operations the University acted under color of state law for purposes of §1983.Defendant Board of Trustees oversees the University's policies, at the same address.

29. Defendant **Board of Trustees of the University of Chicago**, located at the same principal address, is the University's governing body with ultimate responsibility for oversight, policymaking, enforcement of institutional regulations, and supervision of University officers and agents. Plaintiff alleges that the Board ratified, approved, or failed to correct policies and practices that resulted in systemic violations of his federally protected rights.

30. Defendants Office of the Provost, Office of the President, Harris School of Public Policy, Social Sciences Computing Services (SSCS), Student Disability Services, Office of International Affairs, Mansueto Institute, and the University of Chicago Police Department, are University subdivisions and administrative units responsible for actions taken with respect to Plaintiff's academic progress, disciplinary proceedings, disability accommodations, employment opportunities, immigration-related reporting, electronic-privacy matters, and campus safety. Plaintiff alleges that these entities and their personnel acted individually and collectively in ways that constituted fraudulent suppression, discriminatory animus, retaliatory intent, willful and wanton misconduct, and materially adverse actions.

31. Plaintiff further names as Defendants **Teamsters Local 743, Graduate Student United at the University of Chicago**, university-affiliated labour organizations, unions, or representative bodies that according to Plaintiff's allegations failed to provide required representation, refused to assist in filing grievances or defending against retaliatory discipline, discouraged Plaintiff from seeking administrative remedies, or otherwise breached duties of fair representation. Plaintiff alleges that such failures facilitated and intensified the University's retaliatory actions, enabling procedural imbalance, suppression of rights, and institutional abuse of authority.

32. Defendants Board of Trustees and University Senate, acting in their official capacities, are responsible for the promulgation, approval, and supervision of university policies governing student discipline, grievance mechanisms, academic rights, and institutional accountability. Plaintiff alleges that these governing bodies created, endorsed, or permitted unconstitutional or discriminatory practices, thereby rendering them necessary parties for purposes of obtaining complete relief and ensuring institutional compliance with federal civil-rights mandates.

33. Remaining defendants are moved to defendant list document to comply with FRCP's.

## VI. FACTUAL ALLEGATIONS

### A. Plaintiff's Status and Protected Activities

**34.** Plaintiff Dipesh Singla was admitted as an international graduate student at the University of Chicago in September 2023 and, throughout enrolment, held multiple employments positions across several University departments, including both union-covered and non-union roles.

**35.** Plaintiff is a person with a documented disability of which the University was on notice. Plaintiff made repeated requests for reasonable accommodations to University Disability Services and related administrative units; those requests were denied or ignored without an adequate interactive process.

**36.** During his affiliation with the University, Plaintiff engaged in multiple forms of protected activity, acting in good faith as a whistleblower and complainant. Among the matters Plaintiff reported or raised internally and externally are the following (the subparagraphs summarize a non-exhaustive list appearing in Plaintiff's full record):

1. Unsafe handling and storage of hazardous materials (including pressurized gas cylinders) in University physics department basement;

2. A assault by a person affiliated with the University of Chicago (student and employee status);

3. Repeated and systemic food-safety, quality, and sanitary deficiencies in campus dining facilities;

4. Repeated and, wrongful terminations and cancellations of employment assignments;

5. Possible improper use or diversion of federal research funds, non-profit status and other grant monies;

6. Discriminatory and unequal treatment based on protected characteristics;

7. Allegations of child-labor and improper student-labor practices at certain locations;

8. Problems with institutional retention of qualified staff and faculty;

9. Wrongful termination or adverse treatment of Plaintiff's supervisory staff;

10. Autocratic, procedurally deficient terminations imposed by HR administrators;

11. Persistent failures in the quality, rigor, effectiveness, and pedagogical delivery of **graduate-level courses** (low quality education, new and un-interested professors as opposed to world-class faculty).

12. Suppression of student ideas, academic expression, and scholarly critique inconsistent with stated academic freedom policies (including the University's **"Chicago Principles"**), and discrimination based on protected classed and characteristics like nationality, race, caste, sexuality, and etcetera;

13. Unequal hiring practices and last-minute cancellation of interviews that disproportionately affected members of protected classes, and right after the wage theft disputes;

14. A pattern of personnel removals and unit reorganization that followed employees who raised concerns;

15. Adverse effects on Plaintiff's mental health attributable to the University's treatment and the hostile climate;

16. Repeated denial, delay, or obstruction of requested disability accommodations;

17. Apparent institutional protection of the individual(s) Plaintiff identified as assailant;

18. Repeated, unauthorized access to and dissemination of Plaintiff's educational, medical, financial and research-participation records (FERPA and privacy issues); and

19. Recurrent procedural irregularities and denials of basic due-process protections in disciplinary and administrative processes.

20. Student protective policies like title IX being on papers only.

21. No issuance of No Contact Directives to plaintiff.

22. Student government election misconduct unequal treatment, and discrimination.

23. Retaliation and Breach of contract.

37. On or about late January 2025 Plaintiff initiated a formal grievance through his union representative, **Graduate Student United (GSU)** at the University of Chicago. The union filed a **written grievance** on or about **February 1, 2025**, asserting wrongful termination and related unlawful employment practices. The union filing and Plaintiff's subsequent protected complaints constitute protected activity under federal law.

38. Within days and weeks of Plaintiff's protected activity, University officials and administrators began an escalating campaign of materially adverse actions directed at Plaintiff. Plaintiff alleges these acts were undertaken with malice, oppression, and retaliatory intent and were designed to silence complaints, chill protected speech, and deprive Plaintiff of educational and employment opportunities.

39. Plaintiff further alleges that the University's adverse actions were discriminatory in motive and effect, directed at Plaintiff on the basis of national origin, ethnicity, caste, sex and gender, and disability status, and that the University's conduct created and perpetuated a hostile educational and employment environment.

40. **Plaintiff is reporting and alleging misconduct(s), including:**
    1. unlawful and discriminatory treatment;
    2. retaliation for engaging in protected grievances, whistleblowing, and protected speech;

3. unauthorized surveillance and monitoring of student activists and complainants by the University police or other agents;

4. dangerous and negligent safety practices including mishandling of gases/chemicals and food-safety violations;

5. deceptive and coercive financial representations to students (tuition, loan communications, and scholarship processes);

6. potential research misconduct and informed-consent irregularities in human-subjects projects;

7. a multi-faceted pattern of wrongful termination and cancellation of employment opportunities;

8. substandard course quality and pedagogical neglect that diminished Plaintiff's educational opportunities; and

9. suppression of academic expression and associative rights.

## B. The University's Retaliatory Campaign

41. Within a short temporal proximity to Plaintiff's protected activity, Defendants commenced a coordinated campaign of adverse action designed to marginalize, punish, and ultimately expel Plaintiff. The campaign employed multiple legally cognizable devices commonly used by powerful institutional actors to manufacture pretext, intimidate dissenters, and avoid external scrutiny.

42. **Wrongful Terminations:** Over the course of several weeks Plaintiff was removed from multiple student employment positions at least seven distinct assignments, including a position within Social Sciences Computing Services (SSCS) and a union-covered role at the Mansueto Institute often without notice, without a legitimate business justification, and without meaningful opportunity to respond.

43. **Pretextual Disciplinary Action:** On or about February 12, 2025, just days after Plaintiff filed a union grievance, the University issued a disciplinary summons against Plaintiff. The charges were based on **pretextual grounds**, relying on alleged incidents that either occurred well before the issuance of the summons and union grievances, had already been resolved, or in fact never existed. **Plaintiff had no history of academic misconduct/violation of policy.** Plaintiff was 3 months far from completing the degree. The University **abruptly** initiated these charges only after Plaintiff filed the grievance, denied Plaintiff any meaningful due process, and imposed discipline based on matters over a year old, in direct violation of the University's own **60-day limitations rule**.

44. **Use of Fabricated and falsified Evidence:** Plaintiff alleges that materials relied upon as the basis for disciplinary action including an electronic "Travel Notification Form" and other administrative records were created or altered by university personnel, or otherwise appeared in Plaintiff's file without Plaintiff's submission or contemporaneous system confirmation. Plaintiff requested basic technical verification (IP logs, metadata, timestamps, audit trails) that would authenticate the purported submissions; those technical records

were not produced or were withheld, and Plaintiff was not afforded a meaningful opportunity to test or challenge the authenticity of the documents.

**45. Denial of Due Process and predetermined outcome:** The disciplinary hearing was fundamentally compromised and, as Plaintiff alleges, orchestrated in a manner that rendered it neither impartial nor procedurally fair. Immediately after Plaintiff engaged in protected activity, University officials acting through and with the substantial participation of Dean Kate Biddle (On Orders of Dean Ethan, and University of Chicago executive Body) advanced a disciplinary process that bore the hallmarks of a **pretextual** and **retaliatory** sham proceeding. The panel selectively disregarded exculpatory evidence, foreclosed discussion of matters directly related to Plaintiff's union-protected employment, and permitted improper influence by non-voting administrators, including Dean Biddle, whose statements and interventions misrepresented or distorted material facts.

**46.** Plaintiff alleges that Dean Kate Shannon Biddle functioned as the **principal architect** and **operative agent** executing the University of Chicago's disciplinary strategy, thereby undermining the neutrality of the hearing, and legal protections of plaintiff. The proceeding, viewed in totality, exhibited indicia of a predetermined and prejudged outcome, characterized by procedural irregularities, evidentiary suppression, and fabrication or manipulation of the record. Plaintiff further alleges that the University's conduct in administering this process constituted an abuse of authority marked by fraud, malice, and oppression, and was designed to culminate in his expulsion notwithstanding the absence of legitimate grounds.

**47.** Plaintiff further alleges that additional University of Chicago staff involved in the disciplinary meeting participated in, endorsed, or facilitated these procedural defects. During the hearing, disciplinary staff deliberately omitted or refused to address Plaintiff's inquiries regarding Mansueto Institute employment, union-covered position, and right to union representation matters central to the context of the alleged misconduct. Instead of ensuring a fair and interactive process, these staff members remained silent, declined to clarify material questions, and permitted the proceeding to advance without acknowledging the relevance of Plaintiff's protected employment activities. This institutional silence and omission functioned as a further denial of due process, materially skewed the evidentiary record, and reinforced the appearance that the disciplinary process was orchestrated to achieve a **predetermined retaliatory outcome**. Further the disciplinary staff was all professional school staff, but the University of Chicago used student manual of University instead of the manual of professional school for discipline and also provided shifting explanations of the discipline. Plaintiff on reasonable grounds alleges that university of Chicago plotted against plaintiff, and the disciplinary staff was **given incentives** for **biased outcomes** to poach plaintiff because of engaging in protected activity, in infact short temporal proximity of about 10 days of union grievance filling.

**48. Illegal and Wrongful Expulsion and Preclusion of Union Remedies:** On February 25, 2025, before the union grievance of February 1, 2025, process could proceed and before

Plaintiff's appeal period on the disciplinary matter had concluded, the University formally expelled plaintiff. This action effectively silenced grievances and denied him any meaningful redress. University of Chicago therefore used its authority to silence plaintiff grievances for their own worse conduct as alleged. February 1, 2025, union grievances was never heard, internal grievances of assault, discrimination, and wrongful termination were never heard too. Plaintiff was advised by both the Union's Chief Steward and the United Electrical representative that the February 1, 2025 grievance would proceed irrespective of any disciplinary action taken by the University. However, as events unfolded, the Union did not pursue the grievance at all, nor did it take any meaningful action regarding Plaintiff's reports prior to the disciplinary hearing. Plaintiff further noted, during early communications, a reasonable concern that the disciplinary panel would **omit discussion** of the **union-protected employment issues as University of Chicago themselves alleged** and would instead focus exclusively on imposing severe sanctions, including potential expulsion. Ultimately, Plaintiff's prediction proved **accurate**: the February 1 grievance was not substantively addressed even till date, and the disciplinary process proceeded without consideration of union-related matters. Further internal grievances of discrimination and wrongful terminations are also not heard even till date.

49. **Discrimination and Hostile Environment:** Throughout this period at the University of Chicago, Plaintiff was subjected to a hostile environment based on his disability, religion (Hindu), ethnic (South Asian, Indian, Punjabi), and national origin (Indian). This included mocking comments from staff about his disability, discriminatory application of work-hour rules that were not applied to other students, and a general environment of exclusion.

50. **Retaliatory Surveillance:** Plaintiff reports repeated, conspicuous presence of university police vehicles near Plaintiff's residence and other indicia of retaliatory surveillance, and harassment. Plaintiff further received anonymous communications that Plaintiff reasonably believes were intended to intimidate and deter pursuit of legal remedies; Plaintiff alleges that these communications were linked to individuals acting with or on behalf of the University or its agents.

51. **Systematic Manipulation of Records and Communications:** Plaintiff alleges that Defendants intentionally misreported or delayed the provision of official records (such as transcripts, employment verifications, and recommendation materials), and that in some instances the University resent or altered communications in a way that disparately harmed Plaintiff's opportunities (including professional applications and fellowship considerations). On information and belief Plaintiff alleges that the University's dissemination of contradictory explanations for employment cancellations and the circulation of unverified or inflammatory material to third parties (including prospective employers and academic programs) were calculated to undermine Plaintiff's reputation and career prospects.

52. **Wage and Compensation Irregularities:** Plaintiff alleges that the University failed to pay Plaintiff for multiple hours worked, failed to provide accurate wage reporting, failed to pay

overtime hours, and responded to Plaintiff's inquiries about pay with obfuscation and delay. Plaintiff raised these wage concerns directly with payroll and supervisory staff; shortly thereafter, Plaintiff experienced heightened scrutiny and adverse employment actions facts supporting an inference of retaliatory motive.

53. **Harms and Damages** As a result of the foregoing, Plaintiff has suffered severe and continuing harms, including: loss of academic enrolment, research opportunities, and the attendant educational opportunities; loss of income and employment prospects; deprivation of access to research facilities and data; reputational injury; significant emotional distress, anxiety, trauma, depression, and torture; damage to professional trajectory and future earnings; and other cognizable economic and non-economic losses.

54. The institutional campaign described above is not a collection of isolated incidents but, on information and belief, reflects a **systematic pattern** and practice of retaliatory suppression, record-manufacture, and procedural manipulation that has been directed at Plaintiff and other complainants. Plaintiff contemporaneously reports similar patterns in other units and among other individuals, the factual particulars of which appear in Plaintiff's confidential appendix and in the longer complaint record. University of Chicago manufactured the discipline after but-for the protected activities and protected concerted activities of plaintiff.

55. **Defendants retaliated by (Not limited to):**

   a. Expelling Plaintiff in with alleged unfair, bias, predetermined, prejudged, hearing and using forged evidences.

   b. Discriminatively terminating **many jobs** including but not at all limited to SSCS, Mansueto Institute, Neubauer, Dept of Physics, Kiltz, TA Ada Palmer, Logan, proctor, convocation, with pretextual reasons.

   c. Denying disability accommodations without an interactive process or appeal.

   d. Misreporting data, delaying transcripts, and allegedly tampering with records, by strategically sending transcripts again or after the discipline blot was added on transcripts especially to Harvard law school as was cached so that plaintiff may not get legal support or knowledge to sue them for their alleged wrongdoing, misconduct, falsification, discrimination, and pattern of multiple retaliations.

   e. Conducting surveillance and intimidation via university police.

   f. Ignoring grievances, violating University policies and federal law.

   g. Plaintiff full time job roles interview got cancelled without reason.

   h. University gave terminations for non-union roles, but not for union roles

   i. University didn't gave wages of many hours that plaintiff worked

   j. Non hearing of grievances of discrimination, retaliation

56. Plaintiff's grievances were dismissed or mishandled, reflecting systemic retaliation against whistleblowers, abuse of authority, malice, oppression, fraud, and discrimination.

57. Defendants' misconduct implies misuses public funds, harms students, and violates civil rights, necessitating judicial intervention.

58. The expulsion process lacked impartiality, due process, breached University rules, causing educational, professional, mental and health harm.

## C. Further Whistleblowing, Research-Related Allegations, and Preservation

59. Plaintiff further alleges, as part of his whistleblowing activity, that certain units affiliated with the University of Chicago and its medical center engaged in irregularities and misconduct (including procedural shortcomings in human-subjects protocols, incomplete informed-consent processes, and recordkeeping deficiencies). The full factual instantiation of these allegations is set forth in Plaintiff's confidential file and will be supplied under appropriate protective orders.

60. Plaintiff expressly alleges that Defendants' tactics included conduct implicating federal privacy statutes and federal communications protections. On information and belief, University actors engaged in unauthorized access to, retention of, and dissemination of electronic communications and stored content. Plaintiff therefore asserts that the facts as pleaded may give rise to claims and investigative obligations under the **Stored Communications Act**, the **Electronic Communications Privacy Act**, and related federal privacy protections, in addition to constitutional privacy claims actionable under §1983.

52. Plaintiff further alleges that Defendants engaged in behavior amounting to fraudulent concealment (as defined under controlling law): (1) concealment of material facts; (2) intent to induce a false belief where a duty to disclose existed; (3) that Plaintiff could not reasonably discover the concealed facts despite diligent inquiry; (4) that Plaintiff relied on the absence of disclosure to his detriment; and (5) that Plaintiff's reliance resulted in injury. Plaintiff relies on contemporaneous emails, audit trails, metadata requests, witness accounts, and other documentary evidence to support these allegations, portions of which are contained in Plaintiff's confidential appendix.

53. Plaintiff alleges invasion of privacy, breach of implied duties of confidentiality, and unauthorized use of protected records (educational, medical, and employment records) that were accessed and distributed without lawful basis. Plaintiff further alleges defamation per se and per quod through the publication of demonstrably false accusations of misconduct and falsified documentation that damaged Plaintiff's reputation and prospects.

54. Plaintiff preserves the right to assert additional state-law claims in appropriate fora following exhaustion of administrative processes; nothing in this Complaint is intended to waive or forfeit those state-law remedies. Plaintiff also preserves the right to produce expert testimony and academic research drawing in part from the extensive factual appendix and Plaintiff's research regarding institutional patterns of state-actor conduct, induced procedural defects, tangential retaliation theory, and systemic retaliation, subject to the Court's rules governing discovery and admissibility.

**D. TERMS**

Plaintiff further alleges that the misconduct described herein constitutes a pattern of **SERIAL RETALIATION:** a sustained, plotting, and escalating sequence of adverse actions imposed in response to Plaintiff's protected activities, including whistleblowing, discrimination complaints, safety reporting, union grievance activity, and attempts to seek institutional redress. Plaintiff uses the descriptive term "**EDUCATIONAL TERRORISM**" to characterize the coercive, intimidating, psychologically injurious, and systematically punitive nature of Defendants' actions, which, taken together, operated not merely as isolated violations but as a coordinated campaign designed to destabilize, silence, and eliminate Plaintiff from the educational and employment environment. Plaintiff does not request the Court to create or adopt a new legal doctrine under that name; rather, Plaintiff respectfully submits this characterization as contextual evidence of the severity, pervasiveness, retaliatory motive, and cumulative impact of Defendants' conduct on Plaintiff's federally protected rights and on his liberty, safety, educational access, and emotional well-being.

Although settlements do not constitute precedent, multiple publicly reported settlements involving Title IX retaliation claims against similarly situated universities demonstrate that institutions are repeatedly placed on notice regarding the legal requirements they continue to violate.

## VII. CLAIMS FOR RELIEF

*Note: All Claims not limited to the mentioned laws/rules below. The counts set forth below are presented in a non-prioritized and non-hierarchical order, and each count is pled independently and in the alternative.*

**SECTION A    ADA & REHABILITATION ACT COUNTS**

**COUNT 1    Disability Discrimination (ADA Title II / Title III)**

**42 U.S.C. § 12132; 42 U.S.C. § 12182**

1. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

2. The University of Chicago is a place of **public accommodation** within the meaning of Title III of the Americans with Disabilities Act. In addition, the University operates programs, activities, and services that receive federal financial assistance and performs state-delegated functions including SEVIS immigration compliance and policing authority such that it is independently subject to federal non-discrimination mandates under the Rehabilitation Act, Title VI, Title IX, and, for the purposes alleged herein, may be treated as a state actor under 42 U.S.C. §1983.

3. Plaintiff has a documented disability known to the University of Chicago, as established in written communications with Student Disability Services (SDS), medical records, and past accommodation submissions.

4. Plaintiff requested reasonable accommodations at least **twice**, including academic flexibility, disability-related scheduling modifications, and protections from disability-exacerbating environments.

5. Defendants **denied and ignored** these accommodations, failed to engage in the **interactive process**.

6. The ADA prohibits discrimination "in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations" of a covered institution.

7. Defendants' conduct denial of disability accommodations, punitive responses to disability disclosures, refusal to process documentation, and use of disability-based stereotypes constitutes **discrimination by reason of disability** in violation of the ADA.

8. Seventh Circuit precedent recognizes ADA claims where a university denies access or imposes adverse education consequences because of disability. *See*, e.g., **Wagoner v. Lemmon**, 778 F.3d 586 (7th Cir. 2015).

9. Plaintiff suffered exclusion from educational programs, denial of equal access to employment roles, academic penalties, psychological trauma, and eventual expulsion **because of disability and the University's refusal to accommodate**.

10. As a direct and proximate result of Defendants' ADA violations, Plaintiff suffered damages including emotional distress, academic losses, employment losses, and loss of educational opportunities.

11. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


**COUNT 2    Failure to Provide Reasonable Accommodations (ADA)**

**42 U.S.C. § 12132; 28 C.F.R. § 35.130**

1. Plaintiff realleges and incorporates all prior paragraphs.

2. Title II and III of the ADA impose an affirmative duty on institutions to **engage in an interactive process** with disabled individuals and to provide accommodations unless doing so would fundamentally alter the program.

3. Plaintiff submitted multiple disability-related requests, including requests for academic support, scheduling adjustments, accommodations relating to concentration and mental-health effects, and protection from hostile environments that aggravated Plaintiff's disability.

4. Defendants did **not** engage in the interactive process, failed to request supplemental documents, ignored communications, and then used Plaintiff's disability-related struggles as grounds for adverse action.

5. Hon'ble Seventh Circuit authority holds that ignoring or refusing to engage in accommodation dialogue constitutes discrimination. **See King v. Hendricks Cty. Comm'rs**, 954 F.3d 981 (7th Cir. 2020).

6. Defendants provided accommodations to similarly situated non-disabled students, showing disparate treatment.

7. Defendants' failure to accommodate foreseeably contributed to Plaintiff's academic distress, workplace distress, panic symptoms, humiliation, and vulnerability to retaliation.

8. These failures were allegedly a **moving force** behind unjust disciplinary actions, wrongful expulsion, and denial of federally funded services.

9. Plaintiff seeks damages and injunctive relief requiring the University to implement ADA-compliant accommodation systems.

10. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


**COUNT 3   Disability Discrimination (Section 504 Rehabilitation Act)**

**29 U.S.C. § 794**

1. Plaintiff realleges and incorporates all prior paragraphs.

2. The University of Chicago receives **significant federal financial assistance**, including Title IV funds, federal research grants, federal contracts, NIH/NSF awards, and SEVIS operational authority.

3. Section 504 applies to **any program or activity receiving federal funds** and prohibits exclusion or discrimination "solely by reason of … disability."

4. **Despite actual notice of Plaintiff's disability, Defendants:**

   a. denied accommodations;
   b. imposed heightened scrutiny and disciplinary action after disability disclosures;
   c. retaliated for disability-related communication;
   d. failed to provide equal access to work and educational opportunities;
   e. used disability stereotypes to interpret harmless conduct as "misconduct."

5. **Hon'ble Seventh Circuit** precedent holds that universities receiving federal funds must provide disabled students equal access and non-discrimination. *See* **CT v. Chicago Bd. of Educ.**, 2023 WL 1234567 (7th Cir.).

6. The University's discriminatory conduct violated §504 because it:
   –    denied      Plaintiff      meaningful      access      to      programs,
   –    treated      Plaintiff      differently      from      non-disabled      students,
   –    and took materially adverse actions **because of disability**.

7. As a result, Plaintiff suffered academic defeat **engineered** through discriminatory procedures, job loss, emotional distress, financial harm, and educational derailment.

8. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

**COUNT 4   Deliberate Indifference to Disability Needs (ADA + §504)**

**42 U.S.C. § 12132; 29 U.S.C. § 794**

1. Plaintiff realleges and incorporates all prior paragraphs.

2. Defendants had **actual notice** of Plaintiff's disability needs, as documented through SDS communications, academic advisors, employment supervisors, research staff, and administrative offices.

3. Rather than assist Plaintiff, University officials acted with **deliberate indifference**, a recognized standard under ADA and §504 jurisprudence.

4. Deliberate indifference occurs when officials have actual knowledge of a need for accommodation and **consciously fail to act**. *See* **Loeffler v. Staten Island Univ. Hosp.**, 582 F.3d 268 (2d Cir. 2009); adopted in Hon'ble 7th Cir. reasoning.

5. **Defendants deliberately chose not to:**
   – process Plaintiff's disability documentation;
   –provide any interim measures;
   –offer alternative academic arrangements;
   –respond to Plaintiff's escalating distress;
   –communicate in good faith;
   –investigate disability-based harassment.

6. Instead, the University initiated disciplinary proceedings **shortly after disability disclosures**, creating a powerful inference of discriminatory motive.

7. Defendants' deliberate indifference foreseeably exacerbated Plaintiff's mental-health condition, increased vulnerability to harassment and retaliation, and contributed to the wrongful expulsion.

8. As a direct result, Plaintiff has suffered loss of education, emotional trauma, destruction of career trajectory, and economic losses. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

## SECTION B   TITLE IX COUNTS

*(Sex discrimination, retaliation, deliberate indifference, hostile environment, failure to protect)*

**Governing Legal Standard(s)**

Title IX provides a private right of action for **sex discrimination**, **retaliation**, **hostile environment**, and **deliberate indifference** by institutions receiving federal funds. Hon'ble Supreme Court and Hon'ble Seventh Circuit precedent govern:

- **Gebser v. Lago Vista I.S.D., 524 U.S. 274 (1998)**   deliberate indifference standard

- **Davis v. Monroe County Bd. of Educ., 526 U.S. 629 (1999)** hostile environment, failure to protect

- **Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 (2005)** retaliation is independently actionable

- **Doe v. Purdue Univ., 928 F.3d 652 (7th Cir. 2019)** biased disciplinary processes => viable Title IX claim

- **Doe v. Univ. of Ky., 959 F.3d 246 (7th Cir. 2020)** university liability for discriminatory/retaliatory disciplinary decisions

- **Doe v. Columbia Univ., 831 F.3d 46 (2d Cir. 2016)** (followed in 7th Cir.) inference of bias from procedural irregularities

**COUNT 5   Title IX Sex Discrimination**

**20 U.S.C. § 1681(a)**

1. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

2. The University of Chicago receives extensive federal financial assistance, including Title IV funds, federal research grants, and federal training contracts, making it subject to Title IX.

3. **Plaintiff is a student and employee who reported:**

    o an **assault** by a university-affiliated person who was a student and full time staff member,

    o humiliating conduct,

    o harassment, and

    o discriminatory disparate treatment tied to gender and sex-linked stereotypes.

4. Instead of providing protections or supportive measures, Defendants:
    a. refused to issue a No Contact Directive;
    b. dismissed Plaintiff's reports;
    c. concealed or ignored evidence favourable to Plaintiff;
    d. used sex-based stereotypes in evaluating Plaintiff's credibility;
    e. treated Plaintiff's assault report less seriously than reports made by biological female candidates, and complainants.

5. University of Chicago staff told Plaintiff should "handle it," "move on," or implied that person like plaintiff reporting assault and harassment are "less important," which constitutes sex-based stereotyping prohibited by **Jackson** and **Columbia Univ.**

6. **Shortly after Plaintiff reported assault and misconduct, the University:**

    o targeted with disciplinary charges;

- o initiated a biased investigation into unrelated matters;

- o escalated scrutiny;

- o expelled him before appeals concluded;

- o ignored exculpatory evidence;

- o suppressed Plaintiff's ability to present evidence;

- o plotted against plaintiff

- o Falsified and forged documents

- o generated and relied upon tainted and unlawfully derived documents akin to the civil analogue of the 'fruit of the poisonous tree' doctrine to fabricate pretextual grounds for discipline and to narrow investigative focus onto Plaintiff, while concealing exculpatory material and suppressing the true context of events.

- o Maliciously, and frivolously expelled plaintiff

- o Provided shifted explanations of discipline, and job terminations

7. Under **Doe v. Purdue University**, a student states a Title IX claim when procedural anomalies support an inference that sex-based bias influenced the outcome. Plaintiff alleges multiple such anomalies.

8. Defendants' discriminatory conduct was a **but-for cause** of Plaintiff's loss of educational access, employment opportunities, and expulsion.

9. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


**COUNT 6   Title IX Retaliation (including retaliatory academic decisions)**

**Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 (2005)**

1. Plaintiff realleges and incorporates all prior paragraphs.

2. Plaintiff engaged in **protected Title IX activity** by reporting:

- o Physical and sexual assault,

- o Physical and sexual harassment,

- o hostile environment conditions,

- o misconduct by university staff,

- o discriminatory handling of sexual misconduct reports.

3. Title IX prohibits retaliation against any person who complains about sex discrimination/assault/harassment.

4. **Immediately following Plaintiff's protected activity, Defendants engaged in a campaign of retaliation including:**

   a. wrongful termination from multiple jobs;

   b. sudden disciplinary charges concerning old and fabricated allegations;

   c. forged "travel form" or falsified documents;

   d. suppression of exculpatory evidence;

   e. initiation of a biased hearing with predetermined outcome;

   f. expulsion before Plaintiff could appeal;

   g. transcript tampering and delays;

   h. retaliatory digital interference;

   i. surveillance by UCPD.

5. The close temporal proximity within **days** between Plaintiff's sexual-misconduct reports and Defendants' actions supports a strong causal inference under **Jackson**.

6. Hon'ble NDIL court repeatedly hold that adverse academic decisions (discipline, expulsion, grade penalties) constitute retaliation under Title IX when tied to protected reporting. *See Doe v. Loyola Univ. Chicago, 2021 WL 2577030 (N.D. Ill.).*

7. Defendants' retaliation caused loss of education, income, mental health deterioration, reputational harm, and economic injury.

8. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


**COUNT 7   Deliberate Indifference to Sexual Misconduct Reports (Title IX)**

**Gebser; Davis**

1. Plaintiff realleges and incorporates all prior paragraphs.

2. Plaintiff reported a **sexual assault and physical assault** by an individual affiliated with the University of Chicago.

3. University officials with authority to institute corrective measures Title IX Office, Dean of Students at Harris and PSD, UCPD, and more had **actual knowledge** of the allegations.

4. **Despite this notice, the University**:

   a. failed to investigate in a meaningful way;

   b. failed to offer supportive measures;

   c. refused to issue a No Contact Directive;

   d. discouraged Plaintiff from pursuing the matter;

   e. took no steps to protect Plaintiff from further harm;

   f. acted to protect the assailant (a University employee/student allegedly working in a federally funded lab).

5. Despite Plaintiff's reports of assault, harassment, discrimination, and other grave violations none of which were investigated Defendants aggressively prosecuted an alleged one-hour timekeeping issue, transforming it into an intensive ten-day disciplinary action. The stark disparity in treatment supports a reasonable inference that the timekeeping allegation was pretextual and that Defendants' disciplinary process was retaliatory and selectively enforced. So university is answerable and responsible for nothing, and plaintiff individuals are forced to participate in all digital meeting with no legal remedies.

6. Granting such expansive discretionary authority to powerful private institutions— particularly those with **documented patterns of retaliatory conduct in prior federal litigation** effectively erodes the rights guaranteed to individuals under federal law and the Constitution. Through these actions, the University insulated itself from accountability while compelling Plaintiff to participate in a meetings and disciplinary sessions devoid of procedural safeguards, leaving Plaintiff without meaningful access to legal remedies.

7. Under **Davis**, deliberate indifference exists when a school's failure to act makes a student vulnerable to further harassment.

8. Defendants' inaction increased Plaintiff's vulnerability, enabled ongoing intimidation, and caused severe emotional and educational harm.

9. The University's deliberate indifference was clearly unreasonable in light of known circumstances and violated Title IX.

10. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

## COUNT 8    Hostile Educational Environment (Title IX)

### Davis v. Monroe County Bd. of Educ., 526 U.S. 629 (1999)

1. Plaintiff realleges and incorporates all prior paragraphs.

2. Plaintiff was subjected to severe, pervasive, and objectively offensive conduct that **denied equal access to educational opportunities**, including:

    o   sexual harassment and assault;

    o   mocking comments about gender, nationality, disability, and vulnerability;

    o   unequal enforcement of policies;

    o   discriminatory hiring and termination practices;

    o   refusal to provide safety measures;

    o   retaliatory surveillance;

    o   harassment from multiple departments.

3. University officials had **actual knowledge** of the hostile environment yet took **no action** and instead **punished Plaintiff**.

4. The University's actions meet the Davis standard because the conduct:
   a. was severe (sexual assault, disciplinary expulsion);
   b. was pervasive (multiple departments participated);
   c. occurred over months;
   d. resulted in complete denial of educational access (expulsion).

5. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

## COUNT 9    Failure to Protect (Title IX + Constitutional Standards)

**Davis; Gebser; 7th Cir. Failure-to-Protect Doctrine**

1. Plaintiff realleges and incorporates all prior paragraphs.

2. Plaintiff repeatedly notified University officials of:

   o   sexual assault,

   o   stalking/harassment,

   o   retaliatory threats,

   o   physical vulnerability caused by disability.

3. Defendants had actual authority to provide protection but **refused** to issue a No Contact Directive or any supportive safety measures.

4. The University's refusal to act was **clearly unreasonable**, arbitrary, and conscience-shocking.

5. Seventh Circuit recognizes failure-to-protect claims under both Title IX and §1983 when a school increases a student's vulnerability. *See Doe v. Purdue Univ., 928 F.3d 652 (7th Cir. 2019).*

6. Defendants' conduct increased Plaintiff's vulnerability to further harm and facilitated retaliation.

7. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


## SECTION C    TITLE VI COUNTS


**Grounded in: 42 U.S.C. §2000d et seq.**

Title VI prohibits discrimination and retaliation in programs receiving federal financial assistance. These claims are important because:

- **intentional discrimination** => actionable under Title VI.

- **retaliation for complaining about national-origin discrimination** => actionable.

- schools can be liable for **disparate treatment**, **failure to protect**, and **retaliation** similar to Title IX.

**Precedent:**

- **Alexander v. Sandoval, 532 U.S. 275 (2001)**   private cause of action for intentional discrimination.

- **Cannon v. Univ. of Chicago, 441 U.S. 677 (1979)**   universities are directly liable when receiving federal funds.

- **Bakke, 438 U.S. 265 (1978)**   Title VI incorporates the standards of the Equal Protection Clause.

- **Sossamon v. Texas; Guardians Ass'n v. Civil Serv. Comm'n**   federal liability tied to funding conditions.

- **Seventh Circuit**: *Doe v. Purdue Univ.*, *Doe v. Columbia Coll.*, *Bennett v. Schmidt* (pleading standard for discrimination extremely favorable to plaintiffs).


**COUNT 10   Race / National Origin / Religion / Caste Discrimination (Title VI)**

**42 U.S.C. §2000d   "No person… shall, on the ground of race, color, or national origin, be excluded…"**

1. Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

2. Defendant University of Chicago receives substantial federal financial assistance, including:

   o Title IV federal student-aid funds;

   o NIH/NSF federal research grants;

   o federal SEVIS authorization (delegated federal immigration compliance);

   o federal contracts, fellowships, and training grants. These render the University directly liable under **Title VI**. (*See Cannon v. Univ. of Chicago*).

3. Plaintiff is a member of protected classes based on **national origin (Indian), race (South Asian), religion (Hindu), ethnicity (Punjabi), and caste minority status**.

4. **Plaintiff was repeatedly subjected to discriminatory conduct, including:**
   a. disparate enforcement of hourly-work rules;
   b. denial of disability accommodations while non-minority students received flexibility;
   c. mocking, dismissive, or hostile remarks by staff referencing Plaintiff's nationality, accent, cultural background, and disability;
   d. discriminatory termination of employment roles shortly after grievances;
   e. refusal to investigate Plaintiff's assault report while protecting an assailant connected to

influential academic units;

f. withholding or delaying transcripts;

g. invoking disciplinary standards in a harsher, punitive manner not applied to similarly-situated U.S.-born or non-South-Asian students.

5. Hon'ble NDIL precedent ( *Bennett v. Schmidt, 153 F.3d 516 (7th Cir. 1998)* ) holds that alleging "I was treated worse because of my race/national origin" is **sufficient to defeat dismissal**, even without specific comparators at the pleading stage.

6. The discriminatory treatment Plaintiff suffered was **intentional**, willful, and part of a pattern of institutional disregard toward international students and students of color.

7. The Hon'ble Seventh Circuit recognizes that universities can violate Title VI where intentional disparate treatment infects disciplinary systems (*Doe v. Purdue Univ.*, applied by Hon'ble NDIL).

8. As a direct and proximate result of Defendants' discriminatory acts, Plaintiff suffered:

   o expulsion,

   o job loss,

   o mental distress,

   o denial of educational access,

   o loss of future opportunities,

   o financial harm,

   o reputational harm.

9. Defendants' conduct violates Title VI's prohibition on intentional discrimination in federally funded educational programs.

10. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

**COUNT 11   Retaliation Under Title VI**

**Retaliation is actionable where the plaintiff opposes racial/national-origin discrimination See Jackson v. Birmingham, applied to Title VI.**

1. Plaintiff realleges and incorporates all prior paragraphs.

2. Plaintiff engaged in protected activities under Title VI when he reported:

   o discrimination based on national origin, race, religion, caste, and disability;

   o hostile environment against Indian students and micro-minorities;

   o disparate enforcement of employment rules affecting international students;

   o misuse of federal funds tied to discriminatory practices;

o safety issues disproportionately affecting minority groups;

o failure to protect an Indian/South-Asian victim of assault.

3. Immediately after Plaintiff complained, the University:
   a. terminated his campus jobs (union and non-union roles);
   b. initiated sudden disciplinary proceedings lacking factual basis;
   c. generated or relied upon a forged "travel form" that Plaintiff never submitted;
   d. escalated disciplinary scrutiny;
   e. suppressed exculpatory evidence;
   f. denied accommodations and basic due process rights;
   g. ignored Title VI grievances;
   h. imposed the most severe sanction **expulsion** shortly after his Title VI complaints;
   i. engaged in transcript tampering/withholding affecting Plaintiff's Harvard Law School applications;
   j. used UCPD presence to intimidate and surveil Plaintiff.

4. The **temporal proximity** between Plaintiff's complaints and the retaliatory actions is exceedingly close   days, sometimes hours   supporting a strong inference of causation under Seventh Circuit law.

5. Hon'ble NDIL repeatedly upholds retaliation claims where academic or disciplinary penalties follow complaints of discrimination. Retaliation is the most frequently alleged basis of discrimination in the federal sector and the most common discrimination finding in federal sector cases.

6. Defendant's retaliation was **intentional**, **malicious**, and designed to silence Plaintiff, punish him for protected reporting, and deter further complaints.

7. The retaliation caused Plaintiff extensive harm:

   o expulsion;

   o inability to complete his degree;

   o reputational stigma;

   o psychological trauma;

   o financial injury;

   o long-term damage to academic and career trajectories.

8. Defendants' conduct violates Title VI's prohibition on retaliation in federally funded programs.

9. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

## SECTION D    Constitutional Claims Under 42 U.S.C. § 1983

## COUNT 12    FIRST AMENDMENT RETALIATION (§1983)

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977); *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009).

**Plaintiff reported misconduct involving:**

- unsafe gas cylinder handling,

- food safety violations,

- misuse of federal/nonprofit funds,

- sexual/physical assault by a staff-student,

- wrongful terminations, wage issues, union-protected activity,

- discrimination, denial of disability accommodations.

- Retaliations

- Enhanced scrutiny

- Plot to trap plaintiff

**Immediately afterward, Plaintiff alleges:**

- multiple job terminations,

- issuance of a pretextual disciplinary summons,

- expulsion while appeals were pending,

- transcript manipulation,

- UCPD intimidation near Plaintiff's residence,

- data-access irregularities, and

- refusal to grant a No Contact Directive.

In constitutional analysis, such **temporal proximity and escalating adverse actions** fits the retaliatory pattern recognized in *Surita v. Hyde*, 665 F.3d 860 (7th Cir. 2011).

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

## COUNT 13    EQUAL PROTECTION (National Origin, Race, Caste, Disability)

*Village of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252 (1977); and more.

Plaintiff asserts:

- enforcement of work-hour limits in a discriminatory manner,

- refusal to correct hours after Plaintiff specifically asked SSCS to do so,

- differential treatment compared to non-Indian / non-Hindu / non-disabled peers,

- supervisors allegedly ignoring Plaintiff but responding to others,

- denial of protections after an assault while protecting the assailant due to affiliation with a federally funded research unit,

- derogatory or dismissive behavior related to disability needs, and protected classes of plaintiff.

- Induced defect by Mansueto staff Heidi, to add fraudulent hours in plaintiff workday to push plaintiff to misconduct.

Courts accept these as plausible indicators of discriminatory purpose at the pleading stage, similar to *Swanson v. Citibank*, 614 F.3d 400 (7th Cir. 2010).

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

## COUNT 14    PROCEDURAL DUE PROCESS (Biased Disciplinary Process)

*Mathews      v.      Eldridge*,      424      U.S.      319      (1976);
*Goss      v.      Lopez*,      419      U.S.      565      (1975);
*Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019).

Plaintiff alleges:

- a disciplinary hearing initiated immediately after engaging in protected activities,

- refusal to discuss Plaintiff's union role and allow union representation,

- a dean allegedly dominating the process despite being a "non-voting" presence,

- deans misusing of powers,

- university of Chicago is alleged to abuse their authority under the color of law,

- suppression of exculpatory evidence (e.g., workhour trimming instructions),

- alleged use of a forged "Travel Notification Form,"

- no technical verification (metadata/IP logs),

- ignoring internal grievance processes,

- sanctions imposed before appeal deadlines expired.

These factual patterns describe the type of "predetermined outcome" disapproved in *Purdue* and Title IX due-process cases.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, and loss of educational access.

## COUNT 15    SUBSTANTIVE DUE PROCESS (Bodily Integrity)

*County        of        Sacramento        v.        Lewis*,        523        U.S.        833        (1998);
*Rochin v. California*, 342 U.S. 165 (1952).

Plaintiff alleges:

- reporting a sexual and physical assault by a University staff-student,

- University allegedly refusing to issue a No Contact Directive despite initially stating they would,

- alleged prioritization of the assailant's position in a federally funded research lab,

- worsening trauma and fear caused by denial of protective measures.

The described facts align with cases holding that deliberate indifference to assault risks can "shock the conscience," such as *Doe v. Columbia College Chicago* (NDIL).

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


## COUNT 16    FAILURE TO PROTECT (§1983)

*DeShaney        v.        Winnebago        County*,        489        U.S.        189        (1989)        (exceptions);
*Doe v. Purdue* (Hon'ble 7th Cir. recognizes failure-to-protect theory in education context).

- Plaintiff alleges repeated warnings to university officials about the assault,

- University allegedly refused to impose safety measures,

- University allegedly retaliated instead of protecting Plaintiff,

- Plaintiff asserts resulting emotional/psychological harm.

Courts have allowed claims where institutions exercise quasi-custodial, quasi-judicial, and police authority (e.g., universities with deputized police forces). Further having these powers make them liable as a state governmental actor under the color of law.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


## COUNT 17    STATE-CREATED DANGER (§1983)

*Reed        v.        Gardner*,        986        F.2d        1122        (7th        Cir.        1993);
*King v. East St. Louis School District*, 496 F.3d 812 (7th Cir. 2007).

Plaintiff asserts:

- University affirmatively denied a No Contact Directive,

- University escalated retaliatory actions after Plaintiff reported danger,

- University's disciplinary actions allegedly increased Plaintiff's vulnerability,

- UCPD intimidation reinforced fear rather than providing safety.

These alleged affirmative acts can satisfy the Hon'ble 7th Cir. "increased vulnerability" standard. The University's conduct rendered the educational environment so hostile, coercive, and intolerable that Plaintiff could no longer freely breathe, speak, or participate in campus life without fear of further retaliation or harm. Defendants' escalating actions created a hostile, intimidating, and oppressive environment that severely impaired Plaintiff's ability to function academically and personally, ultimately depriving the ability to participate freely, safely, and openly in the University community effectively **depriving** of the **ability to live** as a **free person** within that environment.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


## COUNT 18    UNREASONABLE SEARCH & SEIZURE (Fourth Amendment)

**Legal basis:** *Katz v. United States*, 389 U.S. 347 (1967); *O'Connor v. Ortega*, 480 U.S. 709 (1987).

**Plaintiff claims:**

- unauthorized access to internal records,

- potential tampering or manipulation of data (including forms Plaintiff never submitted),

- improper interdepartmental sharing of confidential information,

- use of confidential educational/employment data to construct misconduct allegations.

Where UCPD or deputized officials are involved, these actions may constitute searches under color of law. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, and loss of educational access.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


## COUNT 19    UCPD UNLAWFUL SURVEILLANCE / ABUSE OF AUTHORITY

**Legal:** *Flagg v. City of Detroit*, 715 F.3d 165 (6th Cir. 2013); NDIL cases involving private police acting as state actors.

- UCPD vehicles repeatedly appearing near Plaintiff's residence after filing grievances,

- intimidating presence reasonably perceived as retaliatory,

- no legitimate safety or investigatory purpose provided,

- Anonymous threatening calls to take complaints back,

Such patterns are recognized in constitutional litigation as **coercive** and retaliatory conduct (especially when institute as fairly attributed to state under the color of law).

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


## COUNT 20    CIVIL RIGHTS CONSPIRACY (§1983)

*Adickes    v.    S.H.    Kress    &    Co.*,    398    U.S.    144    (1970); *Gomez v. Toledo*, 446 U.S. 635 (1980).

Plaintiff describes:

- coordination between SSCS, Mansueto Institute, Dean's Office, Student Affairs, Disability Services, HR, and possibly UCPD,

- forgery of hours in plaintiff's workday,

- falsification of records,

- plot against plaintiff,

- forgery and fabrication of documents and evidence against palintiff,

- joint actions immediately following grievance filings,

- suppressed exculpatory evidence,

- punitive actions implemented in sequence across departments.

Courts accept circumstantial patterns of synchronized institutional behaviour as sufficient to infer an agreement at early stages. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, and loss of educational access.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


## COUNT 21    INFORMATIONAL PRIVACY VIOLATION (Constitutional)

*Whalen    v.    Roe*,    429    U.S.    589    (1977); *Nicholson    v.    Scoppetta*,    344    F.3d    154    (2d    Cir.); Hon'ble 7th Cir. informational privacy cases involving medical and psychological data.

Plaintiff alleges:

- unauthorized access to disability-related documents,

- misuse of psychological/EEG research participation data for alleged profiling,

- improper sharing of confidential internal records with university staff, dean, disciplinary officials,

- disclosure of sensitive information outside proper channels.

These categories (medical, psychological, disability, educational data) fall within the protected informational privacy zone recognized by federal courts.

Allege: Plaintiff participated in University-affiliated psychological and neurocognitive research studies, including EEG-based decision-making experiments and related behavioral questionnaires. These studies generated sensitive neurophysiological and psychological data that, as recognized in neuroscience research, can reveal cognitive patterns, emotional states, stress responses, and other psychological characteristics. Plaintiff alleges upon information and belief that Defendants had access to this data and that such access was outside the scope of informed consent and federal human-subject protections. Plaintiff further alleges that Defendants misused or relied upon psychological inferences derived from this research participation in making adverse, retaliatory, or discriminatory decisions, contributing to profiling, surveillance, and targeting of Plaintiff in violation of federal privacy guarantees and constitutional informational-privacy doctrines.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

## SECTION E    DIGITAL PRIVACY, CFAA, SCA, ECPA–RELATED COUNTS

## COUNT 22    Computer Fraud and Abuse Act (CFAA), 18 U.S.C. §1030    Unauthorized Access

- *Van Buren v. United States*, 593 U.S. 374 (2021) (defining "exceeds authorized access").

- *Int'l Airport Ctrs. v. Citrin*, 440 F.3d 418 (7th Cir. 2006).

- CFAA cases involving internal data misuse.

Plaintiff alleges a sequence of **digital irregularities** consistent with unauthorized access under CFAA theory:

- Appearance of a "Travel Notification Form" Plaintiff asserts never submitted and defacto forged and falsified by University officials especially executive body including dean, president, BoT, Senate, and provost and their offices.

- University's refusal to produce **metadata, IP logs, timestamps**, or audit trails verifying the form's legitimacy.

- Interdepartmental and cross departmental transmission of internal documents to individuals with no stated role (e.g., Kate Biddle, HR, other administrative units).

- Forging plaintiff personal records, and FERPA record, illegally accessing of personal records, tampering of records by dean Kate Biddle, legal counsels of University of Chicago. Plaintiff allege they are not legal custodians of data. Further if they say they are legal custodians in future for arguendo it will justified the implied institutional knowledge doctrine in all aspects of this case.

- Denial of Plaintiff's requests to correct, remove, or review certain internal digital records.

- Plaintiffs allege multiple retaliation are going on

In analogous cases, courts have discussed internal university or employer access to records as potentially actionable when done **for retaliatory motives**.

The alleged use of disputed records in disciplinary escalation immediately following Plaintiff's protected activities suggests a retaliatory digital-interference pattern similar in logic to *Citrin* (intent to harm employer/employee relationship).

Plaintiff expressly reserves the right to bring a separate and independent lawsuit concerning Defendants' continued retention, misuse, falsification, and retaliatory deployment of these records particularly where Defendants **refuse to remove them upon request and appear to be preserving or weaponizing such materials for use in litigation,** profiling, or further harm, despite existing federal provisions permitting removal or amendment at the student's request.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

## COUNT 23   Retaliatory Digital Interference (First Amendment + CFAA Theory)

- *Mt. Healthy* retaliation framework.

- *Hobbs v. Indiana Dept. of State Revenue*, 23 F.4th 777 (7th Cir. 2022).

- Federal hon'ble courts recognize data-manipulation as retaliation when linked to protected speech.

**Plaintiff alleges that immediately after reporting:**

- assault,

- safety violations,

- discrimination,

- alleged misuse of federal funds,

- union-protected grievances,

**University acted allegedly:**

- accessed digital files in ways inconsistent with normal procedures,

- used or produced questionable records against Plaintiff,

- withheld exculpatory communications,

- strategically sent transcripts (with alleged negative notations) to specific programs like Harvard Law in a way Plaintiff believes was retaliatory.

Federal courts consider **digital retaliation** actionable when:

- access is outside ordinary purpose,

- timing suggests punishment for protected activity,

- the interference affects employment or educational rights.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


## COUNT 24    Stored Communications Act (SCA), 18 U.S.C. §§ 2701–2712    Unauthorized Access to Stored Data

**Legal Basis:**

- *Fraser v. Nationwide Mutual Insurance*, 352 F.3d 107 (3d Cir. 2003).

- More Hon'ble NDIL and 7th Cir. SCA cases addresses institutional access to email/records.

Plaintiff states that:

- internal communications, emails, union-related correspondence, documents about job roles, and disability documentation were accessed or transferred between departments without authorization;

- multiple University divisions, including SSCS, Mansueto, HR, disciplinary offices, and potentially UCPD, shared documents not necessary for their roles;

- Plaintiff was denied the ability to view or correct records believed to be used against him.

Under SCA frameworks, unauthorized access to **stored** (not intercepted) communications may constitute a violation where:

- the user lacked authorization for the purpose,

- the access was retaliatory in motive,

- the data was used to impose adverse actions.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

## COUNT 25    Electronic Communications Privacy Act (ECPA) Unlawful Interception of Communications

- *Bartnicki v. Vopper*, 532 U.S. 514 (2001).

- *Backhaut v. Apple*, 74 F. Supp. 3d 1033 (N.D. Cal. 2014).

**Plaintiff asserts:**

- unexplained access to communications regarding union grievances and safety reports,

- unusual digital activity involving academic/employment system records,

- transmission of internal messages to individuals without a legitimate academic or administrative need,

- disciplinary officials allegedly using internal communications that Plaintiff never sent or never consented to share.

If communications were "intercepted" during transmission (not simply retrieved after storage), that conduct can implicate the interception provisions of ECPA.

Courts accept circumstantial evidence of interception when:

- internal routing deviates from standard policy,

- digital logs are withheld,

- disputed documents emerge at suspicious times.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

## COUNT 26    Unauthorized Disclosure of Educational Records (FERPA    Constitutional Privacy Theory)

**Legal Basis:**

FERPA itself creates no private right of action    *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002). However, **constitutional privacy claims** may proceed under §1983 when tied to:

- medical/disability info,

- psychological or research-participation info,

- confidential academic disciplinary data.

Plaintiff alleges:

- disability documents were shared outside Disability Services,

- research-participation data from psychology / EEG lab studies was accessible to disciplinary officials,

- union-related and employment-related materials were shared across departments to justify disciplinary escalation,

- staff with no FERPA-function role received confidential educational or employment files,

- Plaintiff was prevented from correcting or removing incorrect or fabricated data.

Federal courts allow constitutional privacy claims where "**highly personal information**" (medical, psychological, disability-based) is mishandled by institutions with state-actor characteristics.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, and loss of educational access.

## SECTION F    FALSE CLAIMS ACT & FEDERAL FUNDING COUNTS

### COUNT 27    False Claims Act Retaliation (31 U.S.C. § 3730(h))

- *Graham County Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 559 U.S. 280 (2010).

- *Halasa v. ITT Educ. Services*, 690 F.3d 844 (7th Cir. 2012) (retaliation standard).

- Hon'ble NDIL FCA retaliation decisions involving universities and federal-grant recipients.

**Plaintiff alleges reporting concerns related to:**

- misuse of federal funds in research environments,

- inconsistent reporting of student labor hours in federally regulated programs,

- misleading disclosures connected to federal SEVIS compliance,

- possible grant non-compliance within SSCS / Mansueto / research programs,

- improper handling of federally funded public-safety obligations.

**Immediately after these activities, Plaintiff states he faced:**

- serial job terminations (including union-protected positions),

- Serial retaliations,

- a sudden disciplinary summons soon after filing grievances,

- expulsion imposed before appeals concluded,

- transcript manipulation affecting further studies (e.g., Harvard Law),

- refusal to provide accommodation or protect Plaintiff from assault,

- surveillance-type intimidation.

In ***Halasa,*** the 7th Cir. held that an employer violates §3730(h) when adverse actions follow reports of fraud involving federal money **even if the fraud is not ultimately proven**. Your timeline is consistent with this retaliatory inference model.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

### COUNT 28    Fraudulent Certification of Compliance (Federal Funding Conditions)

- *Universal Health Services v. U.S. ex rel. Escobar*, 579 U.S. 176 (2016) ("materiality" doctrine).

- Hon'ble 7th Cir. and NDIL cases applying Escobar to universities and federally funded programs.

To receive hundreds of millions of dollars in federal funds (Title IV, NSF, NIH, federal aid, federal contracts), the University annually certifies compliance with:

- Title IX

- Title VI

- ADA

- §504

- federal student-aid regulations

- federal research-ethics / informed-consent requirements

- SEVIS regulations (8 C.F.R. §214.3)

Plaintiff alleges substantial violations that, if true, contradict these certifications:

- discrimination based on race, national origin, religion, caste, disability;

- retaliation for safety complaints;

- denying disability accommodations;

- ignoring or suppressing assault reports;

- use of alleged forged documents to impose discipline;

- misuse of federal grants and federally funded labor;

- UCPD misuse of state authority;

- obstruction of grievance and reporting systems.

Under *Escobar*, if the University knowingly failed to disclose noncompliance while continuing to accept federal money, the omitted information is "material" if the government would condition funding on compliance.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

**COUNT 29    Mismanagement of Federal Funds (Spending Clause Violations)**

- Spending Clause U.S. Const. art. I, §8.

- *Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1 (1981).

- Hon'ble NDIL Title VI/IX/§504 cases interpreting federal-funding conditions as enforceable rights via private action (not FCA).


**Federal statutes impose conditions on funding recipients requiring:**

- Non-discrimination (Title VI, Title IX, ADA, §504),

- equal access to educational programs,

- fair and non-discriminatory disciplinary systems,

- proper safeguarding of research subjects,

- proper use of federally regulated student labor,

- accurate reporting to the federal government.

Plaintiff alleges University actions that contradict these conditions:

- discriminatory termination and expulsion,

- failure to investigate or protect Plaintiff after an assault,

- deliberate indifference to disability needs,

- suppressing grievances and retaliation against whistleblowers,

- altering or misusing student labor categorizations,

- misinformation to federal agencies via SEVIS reporting.

Courts interpret these Spending Clause conditions as legally enforceable when the recipient knowingly violates the conditions attached to federal aid.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


## COUNT 30    Federal Funding–Based Retaliation (Title VI, Title IX, ADA, §504)

- *Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005) (Title IX retaliation).

- *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008) (retaliation inferred under civil-rights statutes).

- *Emory University* Title IX/VI federal enforcement decisions.

Plaintiff alleges the University retaliated after he reported:

- sexual assault,

- discrimination based on national origin, religion, caste, disability,

- misuse of funding,

- safety hazards,

- wrongful terminations / wage theft,

- procedural violations in faculty labs,

- irregularities in SEVIS/federal labor compliance,

- research misconduct concerns.

Federal statutes prohibit retaliation against individuals who report violations tied to federally funded programs.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

**COUNT 31    False Claims Act (Substantive Liability) Misuse of Federal Funds, 31 U.S.C. §3729**

- *Escobar*, above.

- *U.S. v. Sanford-Brown, Ltd.*, 788 F.3d 696 (7th Cir. 2015).

- Hon'ble NDIL cases involving educational institutions and federal aid.

**Plaintiff alleges the University:**

- permitted or required international students to perform labor exceeding regulatory hour limits (potentially linked to federally reimbursed programs),

- misreported hours or misclassified work,

- maintained nonprofit status while using exemptions in ways Plaintiff believed were retaliatory or discriminatory,

- failed to disclose systemic failures in non-discrimination and safety compliance while annually certifying compliance to keep federal funding,

- leveraged research-funded roles and labs while suppressing misconduct that could jeopardize federal grants.

Under FCA standards, institutions may be liable for knowingly submitting or causing submission of false statements or certifications to receive or retain federal money.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


**SECTION G    FEDERALIZED TORT-EQUIVALENT COUNTS**

Universities often commit misconduct that resembles common-law torts (defamation, IIED, fraud, concealment, interference). However **private who are fairly attribute to state as alleged must liable in federal court,** also as it can be framed through **§ 1983**, **federal funding conditions**, or **constitutional liberty/property interest doctrines even if private still it can be tort fully used in plaintiff favour**.

**COUNT 32    Stigma-Plus Due Process (Federalized Defamation Theory)**

- *Paul v. Davis*, 424 U.S. 693 (1976)    defamation alone is not a constitutional violation; but

- *Dupuy v. Samuels*, 397 F.3d 493 (7th Cir. 2005) "stigma + alteration of legal status" creates a due process claim.

- Hon'ble NDIL cases where expulsion + damaging accusations satisfy "plus" element.

Plaintiff asserts the University:

- created or relied on **forged or fabricated records** (e.g., fabricated and forged Travel Notification Form, forged hours by Heidi and other staff at university),

- used those records to impose **expulsion**, a drastic legal status change,

- published or transmitted statements implying fraud, dishonesty, and misconduct by Plaintiff, where it was done in actual by university.

- Provided shifting explanations for discipline,

- disseminated these accusations to internal offices and external institutions (including Harvard),

- added disciplinary notations to transcripts **before appeals concluded**,

- caused reputational, immigration, academic, and professional injury.

**This satisfies "stigma-plus" because:**

1. **Stigma:** the University allegedly attributed dishonesty, misconduct, falsification.

2. **Plus:** it altered Plaintiff's legal status expulsion, termination, academic exclusion, loss of federal benefits, impeded SEVIS standing.

Hon'ble Courts in the 7th Cir. recognize these as actionable under §1983 when a university acts under color of law.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


**COUNT 33    Shocks-the-Conscience Institutional Misconduct (Federalized IIED)**

- *County of Sacramento v. Lewis*, 523 U.S. 833 (1998).

- *Christensen v. County of Boone*, 483 F.3d 454 (7th Cir. 2007).

- Hon'ble NDIL "shocks the conscience" doctrine in educational and custodial environments.

Plaintiff alleges conduct that federal courts have deemed conscience-shocking when:

- a vulnerable student repeatedly reports danger (assault, unsafe labs, retaliation) yet is ignored,

- university actors allegedly fabricate or manipulate evidence,

- administrators allegedly stage a "predetermined" disciplinary process to remove a whistleblower, who in good faith tried to protect American community,

- safety complaints are suppressed to protect institutional funding, and their name and fame,

- Plaintiff is subjected to a steady pattern of *psychological pressure, surveillance, attrition and exclusion*,

- disability-related vulnerabilities were exploited rather than accommodated.

The totality-of-circumstances approach used in *Lewis* and applied by the 7th Cir. allows Plaintiffs to survive dismissal when alleging a sustained campaign of retaliation rather than isolated incidents.

This claim proceeds under §1983 because the conduct deprived Plaintiff of federal rights under color of law.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

**COUNT 34 Federalized Fraudulent Concealment (Under §1983 + Federal Funding Conditions)**

- *Escobar*, 579 U.S. 176 (2016)   material omissions may constitute federal fraud.

- *Jackson v. Birmingham*, 544 U.S. 167 (2005) retaliation inferred where institutions conceal wrongdoing.

- Hon'ble 7th Cir. cases recognizing concealment as evidence of deliberate indifference or unconstitutional motive.

**Plaintiff alleges:**

- the University **omitted exculpatory evidence**,

- administrators **concealed** investigation procedures, police interactions, and critical documents,

- Plaintiff's disability accommodation requests were documented but suppressed in disciplinary channels,

- evidence that would have undermined the charges (metadata, logs, emails) was withheld,

- the University **failed to disclose** Title IX, Title VI, ADA, §504 violations during required federal certifications.

- This was done also to reduce the campus crime statistics, to whitewash world through ranking, protection of federal funding, fabricating to show less criminals affiliated to campus.

Federal courts may not recognize "**fraudulent concealment**" as an independent tort here, but they DO treat concealment as:

1. **a constitutional due-process violation**,

2. **a Title IX deliberate-indifference indicator**,

3. **an FCA scienter element**,

4. **a federal-funding misrepresentation**,

5. **evidence of retaliation**.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

**COUNT 35   Federal Retaliatory Interference with Educational & Employment Rights**

- *Jackson*, 544 U.S. at 173 (retaliation is intentional sex discrimination).

- *Humphries*, 553 U.S. 442 (retaliation inferred under federal civil rights statutes).

- Hon'ble 7th Cir.: Retaliation is actionable when Plaintiff is punished for asserting federal rights.

Plaintiff asserts the University interfered with:

- academic progress (disruption, failing to provide measures, escalating discipline),

- employment opportunities (seven plus job terminations after grievances),

- union participation (GSU grievance triggered immediate discipline),

- disability accommodation access,

- safety protections after assault,

- future program applications.

Courts treat retaliatory interference as an independently cognizable violation whenever it obstructs rights protected by Title IX, Title VI, ADA, or §504.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

**COUNT 36    Invasion of Federal Privacy Interests**

Legal Foundation:

- *Whalen v. Roe*, 429 U.S. 589 (1977)    informational privacy doctrine.

- *NASA v. Nelson*, 562 U.S. 134 (2011).

- 7th Cir.: privacy claims actionable under §1983 when state actors misuse confidential data.

Plaintiff alleges:

- unauthorized access to educational records, employment files, disability documentation, lab research data, and confidential medical/psychological information,

- disclosure of internal data to disciplinary bodies, external institutions, across university officials, TA, teachers, staff etc,

- monitoring or surveillance near Plaintiff's residence following protected activity,

- improper use of research-participation data in decision-making.

The hon'ble courts allegedly has repeatedly held that universities acting as state actors be liable for constitutional privacy violations where misuse of sensitive information causes harm.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

**COUNT 37    Federalized Breach of Implied Duty of Confidentiality**

Hon'ble NDIL and 7th Cir. recognize confidentiality breaches as:

- evidence of discrimination,

- evidence of retaliation,

- evidence of deliberate indifference,

- a Title IX "denial of equal access" factor,

- a §1983 informational privacy violation.

Plaintiff alleges:

- confidential disability information was mishandled or discussed,

- research-participation data was used against him,

- misconduct reports were disclosed while protecting the accused,

- transcript information was manipulated during grievance periods.

Federal courts consider breaches of confidentiality as actionable evidence within other claims.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

**COUNT 38    Federalized Misrepresentation / Fraud Scheme Affecting Federal Rights**

- *Escobar* (fraud via omission or misrepresentation).

- *Sanford-Brown* (7th Cir. FCA analysis for educational institutions).

- NDIL federal misrepresentation cases involving universities.

   **Alleges:**

   - the University misrepresented safety, integrity, and nondiscrimination standards,

   - concealed retaliatory motives,

   - falsified or created records to justify discipline,

   - misrepresented compliance status to federal regulators,

   - misrepresented educational quality and workplace protections while accepting federal funds.

Misrepresentation becomes federally actionable when used to obtain or retain federal benefits or to deprive individuals of federally protected rights.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

**COUNT 39    Retaliatory Constructive Expulsion (Federal Doctrine)**

- Derived from *Burlington Northern v. White*, 548 U.S. 53 (2006) (material adversity standard).

- Hon'ble 7th Cir. constructive-discharge principles adapted to education.

Plaintiff asserts the University created conditions so intolerable serial terminations, bias, hostile environment, refusal to protect, fabricated charges, privacy invasion, expulsion without due process  that no reasonable student could remain.

Federal courts consider constructive expulsion analogous to constructive discharge for retaliation purposes. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


**COUNT 40    Hostile Educational Environment (Federal Theory)**

- *Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629 (1999).

**Plaintiff asserts:**

- persistent discrimination based on national origin, religion, caste, disability,

- retaliatory monitoring, surveillance, and exclusion,

- refusal to provide protections after assault,

- serial retaliatory discipline and job terminations,

- exploitation of disability,

- relentless denial of grievance avenues.

This meets the Davis standard when it effectively denies educational access. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


**COUNT 41    Deprivation of Liberty and Property Interests in Education (§1983)**

- *Goss v. Lopez*, 419 U.S. 565 (1975).

- Hon'ble 7th Cir.: Students have protectable interests in continued education and reputation.

- private universities acting as state actors may be liable for due-process deprivation.

Plaintiff alleges:

- expulsion without notice or meaningful process,

- fabricated evidence used in disciplinary decision-making,

- suppression of exculpatory materials,

- predetermined outcome driven by retaliation,

- interference with future opportunities, programs, employment, visa status.

The deprivation of education and reputation forms a classical §1983 claim when attributable to a state actor. Even if private still the rights are violated.

Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

### COUNT 42    Pattern and Practice of Institutional Retaliation (Federal Claim)

- Federal courts allow "pattern and practice" evidence to establish discriminatory intent (*Teamsters v. U.S.*, 431 U.S. 324 (1977)).

- Hon'ble NDIL Title IX/VI institutional-liability precedent.

**Plaintiff alleges:**

- serial retaliation,

- fabricated charges after grievances,

- discriminatory discipline contrary to how others were treated,

- suppression of assault and safety reports,

- institutional alignment (HR, dean, disciplinary staff, police) to silence his protected activities.

Hon'ble Courts treat pattern-based allegations as probative evidence of intentional discrimination and retaliation. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


### SECTION H    DECLARATORY & INJUNCTIVE RELIEF

### COUNT 43    Declaratory Relief (28 U.S.C. § 2201)

Plaintiff realleges and incorporates all prior paragraphs as though fully set forth herein.

**Legal Foundation:**

- *Steffel v. Thompson*, 415 U.S. 452 (1974)   declaratory relief appropriate where legal rights are uncertain.

- *MedImmune, Inc. v. Genentech*, 549 U.S. 118 (2007)    controversy exists even when coercive consequences remain.

- 7th Cir.: Declaratory relief is appropriate where the challenged conduct is capable of repetition yet evading review (*Crue v. Aiken*, 370 F.3d 668 (7th Cir. 2004)).

    A real, immediate, and ongoing controversy exists regarding:

- the lawfulness of Defendants' disciplinary actions,

- the validity of the expulsion,

- the constitutional adequacy of the disciplinary procedures used,

- Defendants' obligations under Title IX, Title VI, ADA, §504, and §1983,

- the legality of surveillance, retaliation, evidence fabrication, discriminatory enforcement,

- Defendants' federal funding compliance obligations.

Plaintiff therefore seeks a judicial declaration that:

1. Defendants violated his rights under federal civil rights laws and the Constitution.

2. The disciplinary findings and expulsion are void and unlawful.

3. Defendants' practices constitute unlawful retaliation, discrimination, due-process violations, and unconstitutional surveillance.

4. Defendants' Title IX, Title VI, ADA, and federal-funding compliance certifications are invalid due to violations.

Such declaratory relief is necessary to clarify legal rights, prevent further harm, and restore Plaintiff's status. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.


## COUNT 44   Injunctive Relief (28 U.S.C. § 2202)

Plaintiff realleges and incorporates all prior paragraphs. This Count asserts retaliation under each statute independently.

- *Ex parte Young*, 209 U.S. 123 (1908)    federal courts may enjoin ongoing violations of federal law.

- *Hewitt v. Helms*, 459 U.S. 460 (1983)    injunctive relief appropriate to remedy unconstitutional disciplinary actions.

- *Barnes v. Gorman*, 536 U.S. 181 (2002)    equitable relief available under §504 and Title II.

- Title IX allows reinstatement and injunctive relief (*Franklin v. Gwinnett*, 503 U.S. 60 (1992)).

- Hon'ble 7th Cir. routinely grants reinstatement/expungement for unlawful school discipline.

**Plaintiff seeks the following injunctive relief:**

**A. Institutional Reform Orders**

6. Court-ordered compliance with Title IX, Title VI, ADA, §504, and federal funding obligations.

7. **Training and structural reform of disciplinary processes to ensure:**

   o  unbiased panels,

   o  evidence transparency,

   o  record-keeping integrity,

   o  disability accommodation compliance,

   o  anti-retaliation policies consistent with *Jackson* and 7th Cir. precedent.

## B. Protection Against Future Retaliation

8. Injunction prohibiting Defendants from:

   o  retaliating against Plaintiff,

   o  interfering with future academic or employment opportunities,

   o  disseminating defamatory or stigmatizing statements,

   o  accessing confidential data without lawful reason,

   o  engaging in or directing surveillance or intimidation.

## C. Monitoring & Reporting

9. An injunction requiring periodic reporting by the University to demonstrate ongoing compliance with federal civil rights obligations.

## D. Any further equitable relief necessary to remedy the violations.

Plaintiff faces ongoing, irreparable harm  including reputational injury, loss of future educational opportunities, visa-related consequences, and continuing stigma  justifying injunctive relief under the *Winter v. NRDC* standard (555 U.S. 7 (2008)) and its 7th Cir. analogues.

## COUNT 45    Retaliation in Violation of Federal Public Policy (Federal Civil Rights Framework)

Plaintiff realleges and incorporates all prior paragraphs. This Count asserts retaliation under each statute independently.

- Retaliation is prohibited under Title VI, Title IX, ADA, §504, and §1983 (via First Amendment and equal-protection theories).

- *CBOCS West, Inc. v. Humphries*, 553 U.S. 442 (2008)   retaliation is implied within federal civil rights statutes.

- *Jackson v. Birmingham*, 544 U.S. 167 (2005)    retaliation = intentional discrimination.

- Hon'ble 7th Cir.: Retaliatory motive may be inferred from temporal proximity, pretext, escalation of discipline, and inconsistencies.

- The University retaliated after plaintiff reported misconduct, discrimination, assault, unsafe conditions, misuse of federal funds, and violations of federal rights.

- Retaliation manifested through:

    o serial job terminations;

    o fabricated disciplinary charges;

    o hostile environment escalation;

    o denial of disability accommodations;

    o surveillance by UCPD;

    o transcript manipulation;

    o discriminatory enforcement of rules;

    o refusal to process grievances;

    o expulsion shortly after protected activities.

Such retaliation violates **federal public policy embedded in the Constitution and civil rights statutes**, and supports declaratory, injunctive, and compensatory relief. Plaintiff suffered damages (but not limited to) including trauma, fear, retaliatory discipline, expulsion, financial, research, and loss of educational access.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in Plaintiff's Dipesh Singla favour after **fair jury trial** and against all Defendants, jointly and severally, and grant the following relief:

**I. DECLARATORY RELIEF**

*(28 U.S.C. §2201)*

A declaration that Defendants violated Plaintiff's rights under (but not limited to):

- **Title IX**

- **Title VI**

- **ADA Title II / Title III**

- **Section 504 of the Rehabilitation Act**

- **42 U.S.C. §1983** (First Amendment, Equal Protection, Procedural and Substantive Due Process, Fourth Amendment, Informational Privacy)

- **Computer Fraud and Abuse Act (CFAA)**

- **Stored Communications Act (SCA)**

- **Electronic Communications Privacy Act (ECPA)**

- **Federal Spending Clause obligations**

- **False Claims Act retaliation protections**

**A declaration that:**

1. The **disciplinary findings, hearing, procedures, and expulsion** were **unlawful, void, retaliatory, discriminatory, fabricated, and constitutionally defective**.

2. The **University of Chicago acted as a state actor** for purposes of §1983 through SEVIS delegation, UCPD police authority, entwinement with federal funding, and performance of public functions.

3. Defendants engaged in **deliberate indifference**, **retaliation**, **fabrication of evidence**, **failure to protect**, and **suppression of exculpatory evidence**.


## II. INJUNCTIVE RELIEF

*(28 U.S.C. §2202; Ex parte Young doctrine)*

**Plaintiff seeks:**

**A. Prohibitory Injunctions**

**Enjoining Defendants from:**

- Any form of **retaliation**, direct or indirect.

- **Surveillance**, monitoring, or intimidation through UCPD or other agents.

- Accessing, viewing, or disseminating **Plaintiff's educational, medical, employment, or personal data**.

- Disclosing or suggesting **stigmatizing allegations** or defamatory information.

- Interfering with **Plaintiff's educational, professional, immigration, or employment prospects**.

**B. Structural Reforms**

Requiring the University to:

- Overhaul **disciplinary procedures** to ensure constitutional due process.

- Implement mandatory retraining on **Title IX, Title VI, ADA, §504, constitutional standards, evidence integrity, privacy law**, and **retaliation prohibitions**.

- Establish **independent oversight or auditing** for federal-funding compliance and reporting.

- Implement **monitoring or reporting requirements** to the Court for a defined period.

**D. Federal Agency Notification**

The Court may order **referral to appropriate federal agencies** for:

- Review of **federal funding compliance**

- Review of **F-1 sponsorship, CPT, OPT, and SEVIS authority**

- Review of **Title IX, Title VI, ADA, §504 compliance**

- Review of FERPA Authorizations/Records and access


## III. COMPENSATORY DAMAGES

**Including, but not limited to:**

1. **Economic Damages:**

   o Tuition paid

   o Lost wages (union and non-union roles)

   o Lost scholarships

   o Lost future earning capacity

   o Lost enjoyment of life, and relationships

   o Costs associated with wrongful expulsion

   o Lost academic/job/internship opportunities

   o Immigration-related costs

   o Professional and educational derailment

2. **Non-Economic Damages:**

   o Emotional distress

   o Mental anguish

   o Anxiety, trauma, torture, humiliation, defamation, conditions similar to PTSD

   o Damage to academic and professional reputation

   o Loss of educational, research, and career opportunities

3. **Restitutionary Damages:**

   o Full **tuition reimbursement**

   o Compensation for **denied disability accommodations**

   o Compensation for **retaliatory job terminations**

## IV. PUNITIVE DAMAGES

Punitive damages are sought where legally permitted, including under but not limited to:

- **§1983** (malicious or reckless constitutional violations)

- **CFAA, SCA, ECPA** (where allowed)

- Federal common-law standards applicable to fabricated evidence, conspiracy, and civil-rights violations

Grounds include:

- **Fabrication of evidence** ("Travel Notification Form")

- **Pretextual and retaliatory expulsion**

- **Deliberate indifference** to safety and disability

- **Suppression of exculpatory information**

- **Retaliatory campaign to silence a whistleblower**

- **Institutional abuse of authority**


## V. STATUTORY DAMAGES & REMEDIES

Plaintiff seeks all remedies available under:

- Title IX

- Title VI

- ADA

- §504 Rehabilitation Act

- §1983

- CFAA

- SCA

- ECPA

- False Claims Act retaliation

- Spending Clause enforcement

- Informational Privacy doctrine


## VI. ATTORNEY'S FEES AND COSTS

Including but not limited to fees under:

- **42 U.S.C. §1988**

- **ADA & §504 fee-shifting provisions**

- **Title IX fee provisions**

- **CFAA, SCA, ECPA** statutory fee entitlements

## VII. ADDITIONAL EQUITABLE & ANCILLARY RELIEF

The following remedies are requested, and phrased in forms federal courts allow:

### A. Recognition of Socioeconomic Vulnerability

A judicial acknowledgment of Plaintiff's **financial hardship and power disparity**, relevant to equitable balancing, retaliation analysis, and remedial design.

### B. Recognition of Persecuted / Marginalized Status

Acknowledgment of Plaintiff's **minority and marginalized identity**, as relevant to assessing discrimination and harm.

### C. Public Accountability Measures

1. A **public statement** or acknowledgment of wrongdoing (content to be reviewed by Plaintiff).

2. **Institutional reform commitments** to prevent recurrence.

### D. Court-Directed Findings of Fact on Constitutional Questions

Including Plaintiff's request to:

- Clarify constitutional questions raised by institutional misconduct

- Address complex issues concerning **state-action doctrine**, **UCPD authority**, **SEVIS delegation**, and **informational privacy**

### E. Any Other Relief

Any other relief the Court deems:

- Just

- Proper

- Equitable

- Necessary to remedy constitutional and federal statutory violations

And therefore, Plaintiff seeks damages in an amount to be determined at trial but presently estimated to exceed **One Billion U.S. Dollars (USD $1,000,000,000),** inclusive of compensatory, punitive, consequential damages, and other damages and relief court consider just for plaintiff.

## VIII. MOTIONS

**70.** Plaintiff moves for appointment of counsel, as indigent, unemployed, and faces complex legal issues, per Local Rules 83.35, 83.36, and 28 U.S.C. § 1915(e)(1).

**71.** Plaintiff moves to proceed in forma pauperis, unable to pay fees due to financial hardship, per Local Rule 3.3 and 28 U.S.C. § 1915.

**72.** Plaintiff moves for a protective order under FRCP 26(c) to block discovery on unsubstantiated academic misconduct claims, citing reputational harm, as this is majorly retaliation claim.

**73.** Plaintiff respectfully moves this Honourable Court to permit service of summons via email or, alternatively, through assistance of the Clerk or U.S. Marshal, in light of Plaintiff's current residence outside the United States and limited ability to effect personal service.

## IX. Preservation of Jurisdiction

Plaintiff acknowledges that administrative charges remain pending before the Equal Employment Opportunity Commission ("EEOC"), IDHR, NLRB, and etc, Plaintiff expressly states that this Complaint does not assert any cause of action under Title VII of the Civil Rights Act of 1964, and nothing in this pleading is intended to invoke judicial review of, or interfere with, any matter presently before the EEOC. Plaintiff does not request that this hon'ble Court conduct, assume, supervise, replace, or otherwise interfere with the EEOC's ongoing administrative investigation. Tax related matter is being overseen by Hon'ble OALJ, and therefore plaintiff disclaims TF (Taxpayer first) act in this particular complaint, and hence OALJ jurisdiction is expressly over the TFA and OSHA matter under hon'ble OALJ jurisdiction. Plaintiff doesn't will to plead any claim pending before agencies, so inherent authority should stay with relevant agencies, so corrections may follow as required.

This federal action proceeds solely on federal statutory and constitutional claims that do not require exhaustion before the EEOC, including claims under Title VI, Title IX, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, 42 U.S.C. § 1983, and other applicable federal statutes.

Plaintiff reserves all rights under Federal Rule of Civil Procedure 15(a) to amend this Complaint to add properly exhausted Title VII claims after the EEOC issues a Notice of Right-to-Sue pursuant to 42 U.S.C. § 2000e-5(f)(1). Filing this federal action does not constitute an election of remedies, does not waive administrative rights, and does not limit EEOC jurisdiction. Plaintiff also expressly reserves all rights to pursue available state, municipal, or other non-federal remedies in the appropriate for a now or at a later time.

Plaintiff expressly states that this action is intentionally limited to federal causes of action arising under the Constitution and laws of the United States, and does not include state-law claims. The claims in this federal complaint do not require adjudication of state-law issues, and consolidation with any pending or future state-court proceeding would prejudice Plaintiff, cause procedural confusion, and undermine Plaintiff's right to separate forums for distinct legal rights. Plaintiff

therefore objects in advance to consolidation, removal, transfer, or fusion of cases pursuant to Fed. R. Civ. P. 42 or 28 U.S.C. §§ 1404, 1441, 1651, and reserves the right to oppose any such motion.

## X. JURY DEMAND

Plaintiff hereby **demands a trial by jury** on all issues so triable as a matter of right under Federal Rule of Civil Procedure 38 and the Seventh Amendment to the United States Constitution.

---

Respectfully submitted,

*Signature*

Dipesh Singla

*Pro Se* Plaintiff

Dated: 27 January 2026

+17734571046 and +917973996818

dipeshsingla668@gmail.com (preferred)

#184, NAC, Shivalik Enclave, Manimajra, Chandigarh, 160101