BC

FILED
11/2/2026
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

TE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DIPESH SINGLA, | ) | |
| | ) | Case No. 1:25-cv-08098 |
| **Plaintiff,** | ) | |
| | ) | Hon. Jeffrey I. Cummings |
| v. | ) | |
| | ) | Magistrate Judge |
| THE UNIVERSITY OF CHICAGO; | ) | Jeffrey T. Gilbert |
| GRADUATE STUDENTS UNITED; | ) | |
| INTERNATIONAL BROTHERHOOD OF | ) | JURY TRIAL DEMANDED |
| TEAMSTERS LOCAL UNION 743; | ) | |
| CITY OF CHICAGO; and | ) | |
| NATIONAL LABOR RELATIONS BOARD, | ) | |
| **Defendants.** | ) | |

**AMENDED COMPLAINT**

(Pursuant to the Court's October 30, 2026 Order, Dkt. 117)

**Dated**: November 2, 2026

## I. NATURE OF THE ACTION

**1.** Plaintiff Dipesh Singla ("Plaintiff"), a former international graduate student and employee of The University of Chicago (the "University", "UChicago"), sues the University; Graduate Students United ("GSU"); International Brotherhood of Teamsters Local Union 743 ("TL743"); the City of Chicago (the "City"); and the National Labor Relations Board ("NLRB"). Plaintiff alleges discrimination based on protected characteristics & activities, sexual and physical assault and harassment, abuse and shaming, retaliation, failure to accommodate a disability, unpaid wages, hostile work & educational environment, inhumane working & educational conditions, falsified records, forgery, fabrication of records, fraud, educational and work malpractice, whistleblower retaliation, invasion of privacy, tax evasion & misuse of tax-exempt/nonprofit status, evidence spoliation & tampering, deceptive business practices, defamation, breach of contract, Intentional Infliction of Emotional Distress, Violations of the Clery Act, Abuse of process and denial of due process, Labor law violations, National security and foreign funding violations, Research misconduct & misuse of federal grant funds, Breach of fiduciary duty, collusion(Aid and Abet), breach of the duty of fair representation, denial of police and civil-rights process, constitutional(And it's amendments) violations, biased agencies so-called investigations, and conspiracy. These accusations are merely a part of educational terrorism("The Education that TERRORISES"), and is an act of SERIAL RETALIATION Pursuant to the language used in the ADT Case("Serial Killers"). SEE(Research Document). Also see: 1:26-cv-06575.

**2.** All such accusations are not at all in a vacuum. University of Chicago have a history of acts of revenge and retaliation; I have compiled data about UChicago that spans about 1000 of cases, many related to retaliation, sexual assault, harassment, and workplace violations, in which relief granted by agencies and courts is NEAR ZERO. This is possible due to a defect in the Constitution and/or aid and abet of the government, and it's entities to provide absolute protection to the crimes of the University of Chicago that people bring to the courts'

attention over and over again. Further, University of Chicago counsels claims them to be aggressive counsel which start working from making plaintiff the defendant in the case that many interpreters of law comply with (Making victim the defendant). Right to remedy shall exist in constitution of America; otherwise, institutions like the recidivist University of Chicago, and it's friend like it's Unions, Governmental entities like City of Chicago, National Labour relation board will first poach MANY MORE individual plaintiff's who are having no money to prosecute, especially when counsel sayings are taken as true even when false and pro se are treated as CHEAP people to disregard the pleading, and dismissing the complaints by the way of hook and crook by ALL COURTS AND TRIBUNALS that shall intuitively have duty of JUSTICE. **Plaintiff will provide evidence to all such accusations.** See: https://1drv.ms/w/c/cb5a9ea1fc1bce73/IQB7Jo4cZB93QpF2UBXqpNBYAVREt7WlHv7wcqBy8HAUTJM?e=TDfnf3 . This shows all statements made herein are due to the conduct of the University and its multi-million-dollar business partner, the City of Chicago. The research is about 2600 pages or so long. **To save so-called judicial resources, the interpreters can't let big fish destroy the smaller ones. That's why, looking at the conduct of Justice in USA, I can say that, without constitutional amendments, justice for the poor in the USA shall be called poor justice. Language copied from(for legal aid; as it's a matter of right, Article 39 Indian Const.): See: Legal aid to the poor should not become poor legal aid: Supreme Court Justice Atul Chandurkar. I have myself filed a case against UChicago in courts/tribunals most of the places I have seen discrimination by almost all agencies, and dismissiveness to end the plaintiff to end the grievances with the ways of fraud. IHRC, for example, has not taken a single action against UChicago; IDHR hides the FOIA data; CCHR has found substantial evidence in one complaint, 23-E-10; that complaint is completely omitted strategically from FOIA when that data was demanded, EEOC dismiss/provide RTS in days(less than a week) of providing them 1000's of pages of data, (This is merely a part of governmental fraud; there's a lot more to it)**. In my knowledge NLRB, EEOC, and almost all agencies claims that they are getting many more charges than normal so instead of telling in sum that people have a mental illness to sue the defendants **courts are advised** by this plaintiff Dipesh Singla that see the mental illnesses of abusive employers instead and see why they are taking revenge over and over against individuals. Liability and accountability are a big ZERO in USA and Illinois law. In sum, my experiences from cases against UChicago have told me what **I SHALL say without shame:** COURTS COMPLY with University of Chicago orders. **RELIEF GRANTMENT IS NEAR ZERO IN USA LAW**. Also see: Civil Right to Counsel, ""Civil Gideon"". Without constitutional amendments, justice is IMPOSSIBLE in the USA. If the court so wants counsel for justice, they shall assign counsel to the needy.

**3.** I am really concerned about sharing statistical data: THAT the University of Chicago ranks **TOP** in the number of NLRB cases as compared to any other University in the USA; still it's immune from the NLRA, and almost each and every law and agency. However, courts choose not to do any profiling of UChicago despite it being in their notices of cases against such recidivists like the University of Chicago, when they can do it against plaintiffs. It is believed that in the court cases, UChicago also tops the USA; in the state court portal, it shows merely 200 or 300 cases (This doesn't cover cases in Dist. Courts), which is the maximum limit of state court cases its portal can show. This gives recidivist employers like UChicago confidence to ask for attorney fees in the WHISTLEBLOWER CASES. Business is always running. The cost of so-called education is per American standards, and the service of education (and justice) is per "SOMALIAN" standards. See.

**4.** In 22 November 2024, Plaintiff reported that a university employee had sexually and physically assaulted him and asked for a No-Contact Directive. The University refused. From January 7, 2025, it fired him from at least three student jobs and cancelled his interview for a full-time HPC Admin job. After he complained of

discrimination (January 19) and GSU grieved the retaliation and more on February 1 2025, the University expelled plaintiff on February 25, 2025, about three months before he would have graduated.

**5.** GSU stopped his grievance after Step 3, and TL743 never filed one. The City's Commission on Human Relations ("CCHR") accepted the University's email filings, rejected his despite his documented disability, and refused his complaints against the unions. The City's Police Department ("CPD") made no record of his assault report for over a year and still hasn't taken any action against the criminal (it's about 2 years now; from Nov 22 2024). The NLRB gave all four of his charges to the one agent he had challenged and dismissed all four on the same day. Some agencies like CCHR/COC mention that victims of crime should be treated with dignity and respect; in actuality, they treat you with further discrimination, and then their further abuses are upheld by the court, and they live in open society as govt actors when the right place for them to live should be in prisons. Counsel of UChicago lie to courts in broad daylight, and courts still comply with UChicago orders; that shows courts have so much tolerance for criminals that civilian rights are not considered over the acts of crime in the USA. If freedom to lie and perjury are legal in the USA, I may not dispute the lies of UChicago, and it's aggressive counsel then. They use all kinds of lies, lies by omission, lies by commission, paltering, and more manipulative tactics. See: https://www.chicagopolice.org/victimservices/ "The Office of Victim Services is dedicated to supporting and assisting victims and survivors of crime with the utmost respect, dignity, and care.". See: https://chicagosurvivors.org/i-need-help-now/ "You have…. Every person in every system should recognize that you are a victim of crime and should treat you with dignity and respect.". See: Crime Victims' Bill of Rights: "The right to be treated with fairness and with respect for the victim's dignity and privacy." Illinois Victim Compensation Funds appear to be provided to plaintiffs after their death, apart from ILAG being incompetent to do anything about disability/civil rights or any complaint. See: 1-25-cv-12810(there's much more to it).

**6.** Each Count names its Defendant: the University (Counts I–XII, XX, and XXII), GSU (XIII, XIV, XX, and XXI), TL743 (XV, XVI, and XX), the City (XVII, XVIII, and XX), and the NLRB (XIX). No individual is a defendant; this has changed solely to make the complaint short and plain. To protect privacy, Plaintiff calls the student-employee who assaulted him "Respondent A," a co-worker "F.S.," and a Library staff member the "Library Staff Member." Defendants know who they are. Reserved claims are described in Part VII (Responsive Pleadings and Reservation). All claims in the Court are filed timely, and no right is waived even if not in this short and concise complaint.

**7.** This Amended Complaint is filed under the Court's October 30, 2026 Order (Dkt. 117), which allowed "a single, amended complaint" by November 20, 2026. To meet Rules 8(a), 10(b), 18(a), and 20(a)(2), it pleads approx twenty-two Counts, each naming its Defendant and each theory in a separate lettered paragraph so a Defendant can admit or deny it, and pleads the joining transactions in Part IV. Each Count incorporates all of the preceding paragraphs of Parts I through VII and no other Count.

## II. JURISDICTION AND VENUE

**8.** The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) - (4) over claims under Title VII; the Americans with Disabilities Act ("ADA"); Section 504 of the Rehabilitation Act; Titles IX and VI; 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986; the Fair Labor Standards Act ("FLSA"); the False Claims Act, 31 U.S.C. § 3730(h); Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185; the National Labor Relations Act ("NLRA") and the duty of fair representation it implies; Illinois Law/Rules/Codes/Canons/Acts, the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706; the Fifth Amendment; and 28 U.S.C. § 1361. Declaratory relief is available under 28 U.S.C. §§ 2201–2202.

**9.** The Court has supplemental jurisdiction over the Illinois-law claims (Counts VIII (in part), IX through XII, XIV and XVI (in part), XX (in part), XXI, and XXII) under 28 U.S.C. § 1367(a), because they arise from the same events. Alternatively, it has diversity jurisdiction under 28 U.S.C. § 1332(a)(2): Plaintiff is a citizen of India, the University is an Illinois not-for-profit based in Chicago, on information and belief GSU, TL743, and the City are Illinois citizens, and more than $75,000 is at stake.

**10.** The United States has waived sovereign immunity for the non-monetary relief sought from the NLRB in Count XIX. 5 U.S.C. § 702. Plaintiff seeks no damages from the NLRB because of their immunity, assuming immunity of the NLRB to be true for monetary damages.

**11.** Venue is proper under 28 U.S.C. § 1391(b)(1)–(2) and (e)(1) and 42 U.S.C. § 2000e-5(f)(3). The University, GSU, TL743, and the City are in this District; the NLRB's Region 13 office is in Chicago, and the events happened in Chicago.

**III. THE PARTIES**

**12.** Plaintiff Dipesh Singla is a citizen of India, of Indian national origin, South Asian (Indian, Punjabi) ancestry and ethnicity, and Baniya caste, and a Hindu. The University admitted him in September 2023 as an international graduate student at the University of Chicago. He was in Chicago on an F-1 visa until his illegal and retaliatory expulsion on February 25, 2025, and now lives in India. He has a disability. He asks to receive notices by email at the address dipeshsingla668@gmail.com .

**13.** Defendant The University of Chicago is a private, not-for-profit university located at 5801 S. Ellis Avenue, Chicago, Illinois 60637 (telephone 773-702-1234; email provost@uchicago.edu, president@uchicago.edu, and infocenter@uchicago.edu). It is an "employer" under Title VII, the ADA, and the FLSA. On information and belief, it receives federal funds, including Title IV student aid and research grants, and is subject to Titles VI and IX and Section 504. It is a place of education under 42 U.S.C. § 12181(7)(J). It runs the University of Chicago Police Department ("UCPD"), whose officers exercise police powers conferred by Illinois law, and administers the federal SEVIS program for its F-1 students. UChicago is an alleged state actor under the State action doctrine(SAD), and it is fairly entwined with the state. See: https://constitution.congress.gov/browse/essay/amdt14-2/ALDE_00000810 . UChicago is Private Entitity Acting Under Color of State Law.

**14.** Defendant Graduate Students United ("GSU"), affiliated with/or a subsidiary of the United Electrical, Radio and Machine Workers of America (UE), is a labor organization under 42 U.S.C. §§ 2000e(d) and 12111(2), located at 5500 S. Woodlawn Avenue, Chicago, Illinois (telephone (224) 534-9146). It takes money from graduate employees (and more) at the University of Chicago, including those in Plaintiff's Mansueto Institute position. This union has a collective bargaining agreement with the University of Chicago.

**15.** Defendant International Brotherhood of Teamsters Local Union 743 ("TL743") is a labor organization under 42 U.S.C. §§ 2000e(d) and 12111(2), headquartered at 4620 S. Tripp Avenue, Chicago, Illinois 60632 (telephone 773-254-7460; email hjohnson@teamsterslocal743.com). It was the certified bargaining representative for Plaintiff's Regenstein Library position. This union has a collective bargaining agreement with the University of Chicago.

**16.** Defendant City of Chicago is an Illinois municipal corporation with offices at City Hall, 121 N. LaSalle Street, Chicago, Illinois 60602 (telephone 311 within Chicago, or 312-744-5000 from outside Chicago). It acts through its departments, including CCHR, which enforces the Chicago Human Rights Ordinance; CPD; and COPA. These departments are not named separately. The City is a "public entity" under 42 U.S.C.

§ 12131(1) and, on information and belief, receives federal funds for these programs. It acted under color of state law.

**17.** Defendant National Labor Relations Board is a federal agency, created by 29 U.S.C. § 153, that administers the NLRA and investigates unfair-labor-practice charges through Regional Offices, including Region 13 in Chicago. Its headquarters is at 1015 Half Street SE, Washington, D.C. 20570-0001 (telephone 202-273-1000; email publicinfo@nlrb.gov).

**18.** As in forma pauperis status is granted, Plaintiff asks that the United States Marshals Service serve defendants under Fed. R. Civ. P. 4(i) and 4(c)(3).

## IV. JOINDER AND ADMINISTRATIVE PREREQUISITES

### A. Joinder of the Defendants

**19.** All claims arise from the same series of transactions and occurrences. Fed. R. Civ. P. 20(a)(2)(A). They are (But not limited to these): (a) the University's response to Plaintiff's assault report and its January–February 2025 firings, discipline, and expulsion; (b) GSU's and TL743's handling of his grievances about those same events; (c) the City's handling of his November 22, 2024 assault report and his CCHR complaint about those events; and (d) the NLRB's handling of his charges about the same grievances.

**20.** Common questions will arise. Fed. R. Civ. P. 20(a)(2)(B). They include whether the University's reasons were pretext; whether the unions dropped his grievances because of his protected traits or complaints; whether the City and the NLRB gave him the access and fair process others get; and whether Defendants acted together. Plaintiff joins all claims against each Defendant under Rule 18(a). If the Court finds any Defendant misjoined, he asks it to sever the claims under Rule 21 rather than dismiss them, because limitations periods are running. Also join the case as parties in 1-25-cv-12810 and assign counsel who can do this properly due to complexity.

### B. Charges Filed with the EEOC

**21.** Plaintiff filed five charges with the Equal Employment Opportunity Commission ("EEOC") and received a Determination and Notice of Rights on each. Each states that the EEOC makes "no determination" on the merits and that this "does not mean the claims have no merit." They are: (a) No. 440-2025-07788 against the University, notice issued March 16, 2026; (b) No. 440-2026-05617 against the University for retaliation after the first charge, notice issued September 3, 2026; (c) No. 440-2026-05619 against the City, notice issued September 3, 2026; (d) No. 440-2026-05621 against TL743, same dates; and (e) No. 440-2026-05623 against GSU, same dates.

**22.** Counts I and II rely on charges (a) and (b); Count XIII on charge (e); and Count XV on charge (d). Charge (c) is cited for Counts XVII and XVIII, which need no charge.

**23.** Plaintiff timely filed each charge and, to the best of his knowledge, timely complied with every EEOC request and deadline. The EEOC has not told him of any late filing or deficiency. On fifteen dates between April 19 and August 27, 2026, he asked it to mediate all pending charges and got no reply. He gave the EEOC written notice of this action on September 3, 2026. This Amended Complaint is filed on or before November 20, 2026, within 90 days of the September 3 notices. 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a). Plaintiff have further approached Unions, City, and the University of Chicago for settling the matter through IDHR mediation team, EEOC, NLRB, and Centre for Conflict Resolution; none of the defendants shown any interest in amicably settlement of dispute (EEOC, and NLRB didn't forward mediation request, but CCR have forwarded request to defendants, none have shown any interest in amicable solution, so litigation is the only way to resolve dispute at least as of now.

**24.** The EEOC's notice on Charge No. 440-2025-07788 issued March 16, 2026. Plaintiff gave it to this Court that day and pleaded its claims in his April 9, 2026 amended complaint, within 90 days. The Court dismissed the earlier pleadings without prejudice and granted leave to replead (Dkt. 117). These claims arise from the same conduct and relate back to July 16, 2025 (Dkt. 1). Fed. R. Civ. P. 15(c)(1)(B).

**25.** The Title VII and ADA claims rest on conduct like or reasonably related to the conduct charged, within 300 days of the charge or part of a continuing course. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115–17 (2002). All conditions precedent have occurred or been performed. Fed. R. Civ. P. 9(c).

### C. Charges Filed with the NLRB

**26.** Plaintiff filed four unfair-labor-practice charges with NLRB Region 13, each within six months of the conduct charged. 29 U.S.C. § 160(b). They are: Case No. 13-CA-366016 (University; NLRA §§ 8(a)(1), (3)); No. 13-CB-376043 (TL743; §§ 8(b)(1)(A), (2)); No. 13-CB-376044 (GSU; §§ 8(b)(1)(A), (2)); and No. 13-CA-383755 (University; §§ 8(a)(1), (2), (4), retaliation after the earlier charges). Region 13 dismissed all four on April 30, 2026.

### D. Other Claims and Limitations

**27.** No EEOC charge is needed for the claims under Section 504, ADA Title II, Titles IX and VI, 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986, the FLSA, the False Claims Act, the NLRA, the APA, or Illinois law. Plaintiff began this action on July 16, 2025 (Dkt. 1). Events from November 2023 forward fall within two years, so the Illinois claims for assault, battery, and emotional distress (735 ILCS 5/13-202) and the § 1983 claims are timely, and they relate back. Rule 15(c)(1)(B). Later events are pleaded under Rule 15(d) as a continuation of the same conduct. The § 1981 claims are timely under 28 U.S.C. § 1658(a).

**28.** If any shorter period applies to a claim against a union or an agency, Plaintiff relies on the unions' continuing refusals, including TL743's silence after his December 20, 2025 request, and on equitable tolling. He is pro se, disabled, outside the United States, and has diligently pursued the EEOC, the NLRB, the City, and the Cook County Commission on Human Rights.

## V. FACTUAL ALLEGATIONS

### A. Enrollment and Employment

**29.** Plaintiff enrolled at the UChicago in September 2023. By February 2025 he was about three months from finishing his degree.

**30.** He held about **fifteen** student jobs at the University, including at SSCS, the Mansueto Institute, the Regenstein Library (Document Delivery), the Logan Center for the Arts, the Department of Physics, and convocation and proctoring services. GSU represented the unit covering his Mansueto position. TL743 represented the unit covering his Regenstein Library position.

**31.** Before January 7, 2025, Plaintiff had no warning, reprimand, or adverse finding. University supervisors assigned or approved his hours, including hours in more than one job.

### B. Disability and the Denied Accommodations

**32.** Plaintiff has a documented medical condition that includes varicocele, Odema, and recurrent infections. It affects his genitourinary and immune functions and substantially limits major life activities, including those functions, working, learning, and concentrating. The infections recur when adequate hygiene facilities are unavailable.

**33.** In November 2023, Plaintiff told the University's Student Disability Services ("SDS") of the condition and asked for (a) double time on exams, (b) an individual testing room, and (c) a bidet or equivalent in restrooms. He offered to pay for the bidet, about thirty dollars.

**34.** SDS issued a letter dated November 9, 2023, copied to Dean Biddle and Ms. Mandelaro, that granted none of these. SDS did not meet with him, gave no written reason, and did not tell him how to appeal. On information and belief, an SDS staff member said the double-time denial most likely had been about cost, roughly eight dollars per hour for each exam, when SDS, per their modus operandi, has to hire 2 people for proctoring exams, which is $16 per hour extra for proctoring for disabled. There was no interactive process.

**35.** As an SDS proctor, Plaintiff saw SDS routinely give double time and individual rooms to other students, including students whose disabilities were not visible.

**C. Harassment, Sexual Touching, Slurs, and Shaming**

**36.** In Fall 2024, SSCS staff, including Kerry Sharkey, Shomari Tate, Cory Martin, and Ruben, F.S. repeatedly mocked Plaintiff's medical condition and Hindu practices. They also imposed restroom restrictions that conflicted with his disclosed medical needs and were not imposed on others, and applied work-hour rules to him more strictly than to others.

**37.** In October and November 2024, F.S., a fellow SSCS student-employee who is not Hindu, disparaged Hindu practices to Plaintiff, including "idol worship." Hindu deities were also stored in a University basement, which Plaintiff found demeaning to his faith.

**38.** In about September or October 2024, in the SSCS office, F.S. touched Plaintiff's private parts without consent and made derogatory faces. She kept making unwelcome contact afterward.

**39.** Plaintiff reported the touching to his supervisor, Kerry Sharkey, who told him to "be like a strong man." The University took no corrective action, and the touching and remarks continued.

**40.** From about June through September 2024, in the Regenstein Library Document Delivery department, the Library Staff Member, a full-time University employee, repeatedly invaded Plaintiff's space, touched his hips and backside, and put his hands on Plaintiff's shoulders against his will. When Plaintiff said, "I am not that kind of person," the touching continued. On at least one occasion, the Library Staff Member said, "You are a bloody Indian brown bastard."

**41.** After Plaintiff objected, the Library Staff Member restricted his restroom breaks, yelled at him, and watched him more closely. Plaintiff reported this to a Library supervisor. The University did nothing.

**42.** In Spring 2024, Professor John Burrows, who knew of Plaintiff's disability, called him an "idiot" in front of a class after he asked a question. Throughout his enrollment, multiple instructors routinely ignored his questions.

**43.** **See:** U. of C. students protest sexual violence: 'It's frustrating to know that something like that could happen to me'; 'We were extremely careful that night,' says witness to alleged sexual assault at fraternity party near U. of C.; Second allegation of sexual assault emerges this week from University of Chicago fraternity parties; Woman alleges sexual assault in bathroom at off-campus fraternity near University of Chicago in police report; Sexual assault reported at University of Chicago off-campus party, officials say;

**44.** Doe v. University of Chicago (1:26-cv-06575) : See: https://storage.courtlistener.com/recap/gov.uscourts.ilnd.501904/gov.uscourts.ilnd.501904.1.0.pdf

**D. Reports, Pay Practices, and Payroll Records**

**45.** Between Sept 2023 and March 2025, Plaintiff reported to University officials, including the University Police, the Dean of Students, the Title IX office, and Human Resources: (a) unsafe storage and noises coming out of gas cylinders in the basement of the Kersten Physics Teaching Center; (b) food-safety deficiencies in campus dining; (c) on information and belief, misuse of federal or grant funds, maroon dollars, GEMS card(taxless dollars and cards); and (d) unpaid hours, wrongful termination and irregular pay affecting him and other student-workers.

**46.** The University paid student workers and other student-workers in gift cards or stored-value credits, including "Maroon Dollars," instead of through payroll, and did not pay him for all hours worked. Plaintiff raised this with payroll and supervisors. The University delayed and did not correct his pay or records.

**47.** In about January 2025, Arun Banotra removed ("rolled back") recorded hours from Plaintiff's July 2024 time records in Workday. Also in about January 2025, Heidi Lee of the Mansueto Institute added 11.1 hours to his Workday record after the fact, without his authorization or any record. Neither change was disclosed to him. Together they made it look as if he had exceeded work-hour limits. The University also removed all the hours from his Workday account, cutting off his access to his own time records.

**48.** The University employed Plaintiff in all of his jobs, so his hours count together. For many hours and overtime hours not paid for hours worked.

**E. The Assault and the Denial of a No-Contact Directive**

**49.** On November 22, 2024, in Hyde Park, Chicago, on University premises, Respondent A, a University student and employee, knocked Plaintiff to the ground and struck his private parts, neck, and face, using racial and religious slurs. Respondent A had repeatedly intimidated Plaintiff and threatened to kill him and his family.

**50.** Plaintiff reported the assault that day to CPD officers who came about twenty minutes after his 911 call, and through the University's CARES portal and Office for Sexual Misconduct Prevention. In November 2024 he also reported the assault and the discrimination to Dean Lambert, Dean Biddle, the President, the Provost, and the University Police. Dean Lambert misstated what he reported. University in all closed the complaint and was rushing to destroy the complaint by hook and crook.

**51.** Plaintiff asked for a No-Contact Directive. In December 2024, the University refused, though its policies let it issue one. Staff told him to "handle it," "move on," and "be a man."(And more). On information and belief, it is alleged the University gave female students who made similar reports no-contact directives or other support, and it refused Plaintiff in part to protect Respondent A's position in a federally funded laboratory.

**52.** In December 2024, Plaintiff wrote that the University's Title IX policies were not protecting him. The University never held a hearing or told him of any outcome. University took no protective steps regarding Respondent A and let him stay in university settings and employment while Plaintiff, who had been threatened with death, feared for his safety.

**F. The January 2025 Firings and the Cancelled Interview**

**53.** On January 7, 2025, forty-six days after the assault report, within about 20 days of denial of No Contact Directive, the University fired Plaintiff from SSCS at a meeting with Bart Longacre, Kerry Sharkey, and Arun Banotra. Asked why, Mr. Longacre said, "HR pushed me to do it." The University said the reason was a breach of student-employment and visa work-hour limits.

**54.** At about the same time, F.S. said in the SSCS workplace that she had worked more than twenty hours a week in multiple weeks. The University did not fire or discipline her. On information and belief, F.S. is neither Hindu nor of Indian national origin.

**55.** On January 9, 2025, the University fired Plaintiff from his union-covered Mansueto position without advance notice, written notice, or a documented reason. At a meeting about the added Workday hours, Ms. Heidi Lee, "Aimee," and "Brian" confronted him and denied his request for union representation.

**56.** On January 10, 2025, Mr. Arun Banotra cancelled Plaintiff's interview for a full-time HPC Administrator job, with no explanation and no offer to reschedule.

**57.** In January and February 2025, the University ended Plaintiff's other jobs too, including at Neubauer, the Department of Physics, and the Logan Center for the Arts, a teaching-assistant role, and proctoring and convocation work. In all, it ended at least seven or more jobs. No payment was ever made for the Logan Center role, and many other hours were also stolen from payroll. Despite his requests, it has given him no written termination notices or final employment records. While his complaints and grievances were pending, it cut his access to university systems, facilities, and work resources.

**G. The January 19 Complaint and the February 1 Grievance**

**58.** On or about January 19, 2025, Plaintiff filed a written complaint with UChicago CARES alleging discrimination by University officials and supervisors because of his Indian national origin, ethnicity, and caste, and other protected characteristics invoking Title VI, IX, and more.

**59.** On or about February 1, 2025, GSU filed a written Step 1 grievance for Plaintiff challenging his frivolous firing from three jobs, the cancelled interview, and other violations of the collective-bargaining agreement.

**60.** On or about February 10, 2025, the University asked Plaintiff for confidential personal records.

**61.** On or about February 11, 2025, Dean Biddle emailed Plaintiff, showing she knew of the February 1 grievance. She sent it while GSU was meeting with university officials about the grievance.

**62.** On February 25, 2025, Plaintiff was expelled, in 25 days of union grievance filing.

**H. The Expulsion**

**63.** On July 17, 2024, Paige Akagi Azuma of the Harris School gave Plaintiff two options for tax withheld from his internship stipend. He chose Option 1, which required nothing from him, and Plaintiff refused to take $ 840 withheld as tax by the University. The University later processed the $840 deposit without his request or authorization, then, right after the grievance, called it academic misconduct by him. University post hoc plotted against Singla, conspired expulsion, and used lies by commission, lies by omission, paltering, and more fraudulent tactics against Singla.

**64.** This Conduct is repeated, and that's why access to PACER Multi District was asked from this court, which is still pending determination; much more fraud will come out once Singla has access to it. This very court has granted PACER fee waiver to UChicago affiliates but not yet to Singla. See: In RE: Multi-District PACER Exemption for Graduate Student Mr. Sixun Tang from the University of Chicago, Booth School of Business (1:25-mc-91535). Motions at 93 and 97, which were denied without prejudice, included these requests. For equal treatment and shown evidence of work, plaintiff shall be granted access to all legal resources demanded, including multi-dist PACER.

**65.** Plaintiff did not submit the Travel Notification Form. He asked for the IP logs, metadata, timestamps, and audit trails showing who created it. The University did not produce them and gave him no real chance to test the form. On information and belief, University personnel created or altered it.

**66.** University policy requires discipline to begin within 60 days of the alleged conduct. The summons relied on conduct from July 2024, over six months earlier, and on matters up to a year old.

**67.** The University applied its University-wide Student Manual instead of the disciplinary policies that govern the Harris School. University used policies for students on work-related disputes. That all too with intent to defraud. University committed a crime satisfying both mens rea and actus reus, allegedly.

**68.** At the February 24, 2025 disciplinary meeting, the University did not let Plaintiff bring an effective support person for all fraudulent claims against Singla, though University policy allows one.

**69.** The University did not seek or consider input from Professor Royce, the project lead who directed the work. It left out the internship agreement and Ms. Azuma's emails, which favored Plaintiff. It relied on Ms. Lee, "Brian," and "Aimee," who had no direct knowledge of the work and pressed Plaintiff to admit working outside his assigned duties.

**70.** On February 25, 2025, twenty-four days after the grievance, and thirty-seven days after the January 19 complaint, the University expelled Plaintiff. It did so before the grievance was heard and before the appeal period ended. On information and belief, it chose this single sweeping proceeding to end every pending grievance and complaint at once.

**71.** The expulsion ended Plaintiff's remaining jobs and ended his F-1 status. He had to leave the United States abruptly. University of Chicago defrauded Singla and plotted expulsion following protected activities.

**I. Facts Showing Discriminatory and Retaliatory Motive**

**72.** Timing. Assault report (Nov. 22, 2024); SSCS firing (Jan. 7); Mansueto firing (Jan. 9); cancelled interview (Jan. 10); discrimination complaint (Jan. 19); grievance (Feb. 1); expulsion (Feb. 25).

**73.** Statement. Plaintiff's supervisor said, "HR pushed me to do it". The decision came from Human Resources, not from any judgment about his work. Further hours were approved by multiple people from the university supervisors and HR about three times; each time money was paid. Plaintiff also complained multiple times about not getting the wages. Further, the University forced student workers to work for more hours.

**74.** Comparators. F.S. admitted working over twenty hours a week and was not fired or disciplined.

**75.** Shifting reasons. The University first cited work-hour violations. In February 2025, it relied on new claims of falsification, the $840 deposit, etc.

**76.** Departures from rules. The University ignored its 60-day rule, used the wrong manual, refused an effective support person, and excluded the project lead.

**77.** Knowledge. Dean Biddle knew of the union grievance before the summons, and the SDS letter documenting his disability was copied to her.

**78.** Altered records. Hours in his Workday record were removed and added after the fact. That created the appearance of the violation the University then cited. 11.1 Hours were added fraudulently by Heidi Lee.

**J. Conduct by the University After the Expulsion**

**79.** After Plaintiff made his reports and complaints, he repeatedly saw UCPD vehicles parked near his home in Chicago. He also got anonymous calls and messages meant to deter him from legal action, which he reasonably believes were connected to people acting for or encouraged by the University.

**80.** The University delayed releasing his transcript and records for long periods after he asked, and the records carry a disciplinary notation. The delays and the notation hurt his applications to other programs, including Harvard Law School, and to fellowships and jobs.

**81.** After Plaintiff filed his administrative complaints and asked for his personnel file, the University gave him only temporary, view-only access, refused downloadable copies, left out grievance documents, and put in his file a document dated July 9, 2024 that had not been disclosed in the discipline. On information and belief, it was added after his complaints. The University also changed his Workday status to "terminated."

**82.** The University filed Plaintiff's confidential expulsion record as Exhibit A in a U.S. Department of Labor proceeding (OALJ No. 2025-TAX-00018) without notice to him, without his consent, and without the notice 820 ILCS 40/7 requires. On information and belief, it also gave his disciplinary information and personal data to others, including Abu Bakar and debt-collection agents, who contacted Plaintiff and threatened and assaulted his family in Indian residence. On February 20, 2026, the University told the Illinois Department of Labor it had "no obligation to provide records" under 820 ILCS 40/10(f) because discovery had begun in the federal Department of Labor proceeding. It then resisted producing the same records there in DOL. Plaintiff has his records in neither forum. Acts of revenge and abuse by the University of Chicago and it's officials are ongoing and continue to date.

**83.** The University's conduct, and the loss of his enrollment, F-1 status, income, and safety, have caused Plaintiff severe emotional distress, including anxiety, humiliation, and trauma symptoms resembling post-traumatic stress. Plaintiff requests the court to order medical evaluations to record evidence about mental health, such as PTSD evaluations, as in India when Plaintiff tried and was unable to get the documentation.

**K. GSU and TL743**

**84.** After filing the February 1, 2025 grievance, GSU told Plaintiff by phone that he was fully protected and the grievance would go forward regardless of any discipline. He relied on that in choosing to pursue his claims through the union.

**85.** The University issued the summons eleven days after the Step 1 grievance and expelled him twenty-four days after. GSU filed a new grievance to Step 3 on or about February 28, 2025, three days after the expulsion, then took no step to Step 4. Asked about status, GSU cited "less resources." On information and belief, GSU did not raise his assault report, harassment, or discrimination complaints in the grievance. It did not answer his follow-up emails, including one in December 2025. Union abandoned the Step 1, Feb 1, 2025, Union grievance completely, and didn't prosecute that at all; that grievance, after putting Plaintiff into trouble because of UChicago illegal retaliation, was backed off by GSU.

**86.** On information and belief, GSU carried the grievances of similarly situated members who were not of Plaintiff's national origin, religion, and disability past Step 3.

**87.** In September 2024, Plaintiff asked TL743 to file a grievance about hostile supervision in his Library job, including invasion of his space, verbal abuse, sexual touching, and yelling. TL743 did not acknowledge, investigate, or file anything, and gave no reason.

**88.** In February 2025, Plaintiff asked again. TL743 official Harold Johnson said he was not an "active member" in TL743's database. The grievance concerned conduct while Plaintiff was an active, dues-paying member. TL743 gave no written reason and no other route.

**89.** On December 20, 2025, Plaintiff emailed six TL743 officials, including Mr. Johnson, and asked TL743 to grieve the academic discipline that cited his Library hours. None answered. TL743 has never filed a grievance for him. On information and belief, it files grievances for similarly situated members who are not of his national origin, religion, or disability.

**90.** Both unions knew of Plaintiff's Indian national origin, Hindu religion, Baniya caste(lower caste), brown ethnicity, Punjabi, South Asian, Vegetarian, disability, reports of harassment and discrimination, and more protected characteristics, and classes. Neither gave him a reasoned explanation or notice of any internal appeal.

**L. The City: CCHR, CPD, and COPA**

**91.** In 2025, Plaintiff filed a complaint against the University with CCHR (Case No. 25-E-43). He is pro se, disabled, unemployed, and outside the United States. He told CCHR so, asked it to accept filings and service by email as an accommodation, and CCHR was aware of Plaintiff's protected characteristics.

**92.** On or about October 7, 2025, the University filed an email-only motion, and CCHR Investigator Peter Oakley gave it an extension within about thirty minutes. The University filed no paper original. CCHR complied with UChicago ORDERS.

**93.** Between October 11 and 16, 2025, Plaintiff filed identical email motions with proof of disability. On October 14, 2025, CCHR Director Marisol Gallegos rejected them, said paper originals were required under CCHR Rule 210.120, **and threatened dismissal.** It said "no exceptions" could be made, though its published rules allow filing and service by email subject to later paper originals (see CCHR Rules 270.210–270.230), and it had accepted the University's email filings. CCHR is a dismissive agency, therefore. City of Chicago and other governmental agencies have the option to open shops of dismissal letters that may say: **"Dismissal Letter for a Buck"**, shops can be named as **"Dismissal Tree"** (Like Dollar Tree). That'll save lots of city, state, and federal hard-earned money of the taxpayers. Paying to Peter Oaklet, Marisol etc, is not yielding any substantive result in the interests of justice. In fact, paying them is working against the interests of justice.

**94.** CCHR did not enter default when the University filed its position statement late. It held no interactive process on Plaintiff's accommodation requests and did not answer his requests for pro bono information, language access, or effective communication. UChicago further didn't comply with the testimony timelines in CCHR fraudulent investigation; then also CCHR didn't comply to their own orders at all to default in Plaintiff's favour as a matter of right.

**95.** Plaintiff's CCHR filings alleged sexual harassment, assault, and retaliation by the University and breaches of duty by GSU and TL743. CCHR refused to file or process complaints against GSU and TL743. It also did not refer complaints about its own handling of the case to the Cook County Commission on Human Rights, as the 1998–1999 Memorandum of Understanding between the

two bodies provides. CCHR further did not docket the retaliation complaint after filing of the initial complaint against UChicago.

**96.** After Plaintiff petitioned the Circuit Court of Cook County for certiorari (No. 2025 CH 10816) and served CCHR, CCHR issued a November 3, 2025 Investigative Order that focused on evidence favoring the University and ignored his claims of harassment, assault, retaliation, and union misconduct. On information and belief, the University later used that order in the Department of Labor proceeding described above. CCHR later dismissed his complaint. His FOIA requests for records of prior complaints against the University and of procedural disparities were not fully answered. Case 23-E-10 was never produced by CCHR in the FOIA request. These kinds of things that can go against the University of Chicago were strategically omitted from the FOIA record.

**97.** On November 22, 2024, CPD officers came to the scene of the assault in Hyde Park, were told of it, and made no arrest. CPD created no report, report number, or written record, and Plaintiff asked for the report for the same. Plaintiff asked CPD repeatedly, by email, telephone, and letter, and through referrals from oversight bodies, for a report and for information on crime-victim rights. CPD was asked to stay after the cops arrive, cops refused to stay in the residence for some time.

**98.** CPD knew Plaintiff has a documented disability and was outside the United States. It insisted on in-person participation and refused electronic intake, written confirmation, or any remote option it routinely offers other crime victims.

**99.** On December 24, 2025, the Illinois Attorney General's Crime Victims Compensation Bureau wrote that CPD had no record of the crime and that a police report or hospital record was needed for compensation. CPD's failure to create a report made Plaintiff ineligible. COPA acted only after Plaintiff sent pre-suit notices and began legal proceedings, over a year after the assault, and issued a "Notice Distribution." Then only COPA filed the police report by Officer Elbert Thomas. CPD has still not filed a complaint against digital arrest and retaliation that is alleged, in my belief, against UChicago as revenge, so it continues.

**100.** Plaintiff complained to COPA about CPD's refusal to document his report. COPA disclaimed jurisdiction and sent him back to CPD, the agency whose inaction he was reporting. It did no intake, investigation, or review, and issued no written decision.

**101.** Plaintiff gave the City's Department of Law, CCHR, CPD, COPA, and the Office of Inspector General written pre-suit notice. The City took no corrective step. On information and belief, this conduct reflects a City policy, practice, or custom, or the decisions of officials with final authority over CCHR case administration and CPD report-taking, and a failure to train and supervise.

**M. The NLRB**

**102.** All four of Plaintiff's charges were assigned to one Board Agent, Zachary Manor. On December 15, 2025, Plaintiff wrote to Region 13 asking for reassignment and describing his concerns about the agent's impartiality and predetermined outcomes. Region 13 did not reassign them and gave the later retaliation charge (No. 13-CA-383755) to the same agent. Supervisor "Edward" called Mr. Manor "the best staff".

**103.** During the investigation, Mr. Manor told Plaintiff that if he did not agree to withhold evidence, the University would share information adverse to him. He denied or ignored Plaintiff's requests for subpoenas, an independent medical evaluation, and mediation, without explanation. He also

told Plaintiff in a meeting that he would tell the director and the seniors and they would dismiss the charge.

**104.** On April 30, 2026, about four and one-half months after Plaintiff's December 15 letter, Region 13 dismissed all four charges on the same day.

**105.** The dismissals, among other errors, misstated Plaintiff's *Weingarten* representation rights; accepted employer defenses the University had not formally raised; ignored his December 2025 communications with the unions in the limitations analysis; left both unions unaccounted for the same events (One filed the grievance, one did not; both are not guilty of NLRA); reached the merits of untimely matters in one place while refusing to reach timely matters in another; and did not weigh evidence of fabricated time entries and account credits.

**106.** On information and belief, the University has been the subject of roughly 350 NLRB charges over the years, under the name of "University of Chicago", and "The University of Chicago", and the NLRB has taken no meaningful enforcement action against it. Plaintiff pleads this only as context for the appearance of partiality in the NLRB's handling of his charges. University of Chicago have highest number of Charges in NLRB as compared to any other University in USA.

**N. Coordination Among Defendants**

**107.** The summons and expulsion followed the February 1 grievance by eleven and twenty-four days. GSU's Step 3 filing came after the expulsion, and GSU then stopped. TL743 refused three times to file a grievance that would have covered the Library hours the University cited. CCHR declined to investigate the union claims. CPD declined to document the assault. COPA sent Plaintiff back to CPD. The NLRB dismissed every charge on the same day. Each omission left the expulsion unchallenged in every forum open to him.

**108.** On information and belief, University officials communicated with GSU officials during the grievance and with CCHR personnel during its fraudulent investigation, and those communications came before GSU's abandonment of the grievance and CCHR's one-sided Investigative Order. Plaintiff cannot know their content without discovery.

**109.** The University benefited from each omission. Each Defendant knew of the others' roles, and each failure made the next more harmful. The unions' abandonment removed the formal challenge to the expulsion. The City's inaction removed the police and civil-rights record. The NLRB's dismissals removed the federal labor forum.

**O. Harm**

**110.** Plaintiff has lost wages and benefits from more than seven jobs; the tuition and fees he paid and the chance to finish his degree three months short of graduation; academic, research, and job opportunities, including at Harvard Law School and other competitive programs; access to police protection and crime-victim compensation; and his F-1 status, forcing him to leave the United States at a cost. He has suffered physical harm from recurring infections and Odema, and severe emotional distress, humiliation, reputational harm, and stigma.

**VI. MATERIAL FACTS IN GENUINE DISPUTE**

**111.** These facts are disputed. Each turns on intent, motive, or credibility, which are for the jury. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Plaintiff lists them so each Defendant can admit or deny them specifically.

**112.** Whether Plaintiff exceeded any work-hour limit, given that staff added and removed hours in his Workday record after the fact, and whether F.S., who admitted exceeding the same limit, was treated differently.

**113.** Who created and submitted the Travel Notification Form, and why the University has not produced its logs and metadata.

**114.** Whether the University's stated reasons were its real reasons, given that they changed, followed his protected activity within days, and broke University rules. A jury may infer discrimination from a false explanation. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S.147–48 (2000).

**115.** Why the University refused a No-Contact Directive to a male assault victim threatened with death, and then disciplined him and not the accused.

**116.** Why SDS denied low-cost accommodations it routinely gave others, and why University staff touched, mocked, and slurred Plaintiff with no response.

**117.** Why GSU stopped a grievance it promised would proceed, and why TL743 never filed one.

**118.** Why CCHR accepted the University's email filings and rejected Plaintiff's, why CPD made no report, and why COPA sent him back to CPD.

**119.** Why the NLRB gave all four charges to one agent after Plaintiff objected, what that agent said, and why all four were dismissed on one day.

**120.** Whether Defendants communicated and agreed to act together.

**121.** AND MORE

## VII. RESPONSIVE PLEADINGS AND RESERVATION

**122.** Each Count names its Defendant and the facts it rests on. Plaintiff asks that each Defendant answer Count by Count and paragraph by paragraph under Rule 8(b), admitting or denying each allegation, and that any Rule 12(b) motion name the specific Counts, paragraphs, and grounds it challenges, rather than seek dismissal of the whole pleading. A defect in one Count is no ground to dismiss the others. Plaintiff asks the Court to require Defendants to answer the Counts not challenged. Fed. R. Civ. P. 12(a)(4), 12(e).

**123.** A complaint need not plead a prima facie case. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–12 (2002). A short, plain statement naming the Defendant, the protected trait or activity, and the adverse action is enough. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Alternative and inconsistent claims are allowed. Fed. R. Civ. P. 8(d)(2)–(3). Plaintiff asks the Court to disregard arguments that rely on matters outside this pleading. Fed. R. Civ. P. 12(d). Disputed facts, including those in Part VI, should be tried.

**124.** To comply with Rules 8(a) and 10(b) and the Court's Order, Plaintiff omits claims that depend on steps not yet complete or facts not yet known, including claims under the Illinois Human Rights Act (pending the Illinois Department of Human Rights process), the Stored Communications Act and Electronic Communications Privacy Act (if discovery shows unauthorized access), and claims against persons not named in the caption. He waives none of them and reserves the right to seek leave to amend and to proceed in other forums.

## VIII. CLAIMS FOR RELIEF

**COUNT I**

**Title VII - Discrimination, Hostile Work Environment, and Retaliation**

**Against Defendant The University of Chicago**

(42 U.S.C. §§ 2000e-2(a)(1), 2000e-3(a))

**125.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**126.** The University is Plaintiff's employer under Title VII. He is a biological male, an LGBTQ person, of Indian national origin, South Asian ancestry, and Baniya caste, disabled, brown/black in color, Punjabi, and Hindu, and the University knew it. He timely filed EEOC Charge Nos. 440-2025-07788 and 440-2026-05617 and sues within 90 days.

**127.** Discrimination. Plaintiff met expectations. The University fired him, cancelled his interview, and ended his other jobs, but did not discipline F.S., who is outside his religion and, on information and belief, of different national origin, for the same work-hour violation. The remarks about his faith, the "HR" statement, and the shifting reasons show discriminatory motive. 42 U.S.C. § 2000e-2(m).

**128.** Hostile work environment. From June to November 2024, staff and co-workers mocked his faith, F.S. touched his private parts, and the Library Staff Member touched his hips, backside, and shoulders and used an ethnic slur. The conduct was unwelcome, because of his religion, national origin, and sex, and was severe and pervasive. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 79–80 (1998). The University knew from his reports and did nothing.

**129.** Retaliation. Plaintiff opposed discrimination and filed EEOC charges. The University knew. It fired, disciplined, and expelled him, and afterward delayed his records, altered his file, and had UCPD watch his home. Title VII reaches this. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997). The facts showing discriminatory and retaliatory motive, pleaded above, show but-for cause and pretext.

**130.** Plaintiff lost wages and benefits and suffered emotional distress and reputational harm. He seeks back pay, reinstatement or front pay, compensatory and punitive damages (42 U.S.C. § 1981a), and fees.

**COUNT II**

**ADA Title I and Section 504 (Employment)- Disability Discrimination, Failure to Accommodate, and Retaliation**

**Against Defendant The University of Chicago**

(42 U.S.C. §§ 12112(a), (b)(5)(A), 12203(a); 29 U.S.C. § 794(a), (d))

**131.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**132.** Plaintiff has a disability and could not do his job without accommodation. The University is a covered employer that receives federal funds. He timely filed EEOC Charge Nos. 440-2025-07788 and 440-2026-05617 and sues within 90 days.

**133.** Discrimination: The University knew of his condition, which SSCS staff mocked. Some of the same staff attended the January 7 firing, which rested on altered hours. His disability was a reason for that firing and the end of his other jobs.

**134.** Failure to accommodate: The University knew his hygiene needs yet imposed conflicting restroom restrictions, held no interactive process, and gave no accommodation.

**135.** Retaliation: After Plaintiff requested and renewed accommodation requests, of which SDS, Ms. Mandelaro, and Dean Biddle knew, the University within weeks fired, disciplined, and expelled him. The facts showing discriminatory and retaliatory motive, pleaded above, show but-for cause. 42 U.S.C. § 12203(a); 29 U.S.C. § 794(d).

**136.** Plaintiff lost wages and benefits and suffered distress and physical harm. He seeks back pay, reinstatement or front pay, compensatory damages, and fees.

**COUNT III**

**Section 504 and ADA Title III (Education) - Denial of Accommodation, Deliberate Indifference, Disability-Based Discipline, and Retaliation**

**Against Defendant The University of Chicago**

(29 U.S.C. § 794(a), (d); 42 U.S.C. §§ 12182(a), (b)(2)(A)(ii), 12189, 12203; Part 36 § 36.102)

**137.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**138.** Plaintiff is a qualified individual with a disability. The University receives federal funds and is a place of public accommodation.

**139.** Denial of accommodation (§ 504). The University denied double time, a private testing room, and a hygiene accommodation, with no interactive process, reason, or appeal, though they were cheap and he offered to pay. On information and belief, it gave them to others.

**140.** Deliberate indifference. SDS staff, Ms. Mandelaro, and Dean Biddle knew of his disability, requests, and harm and did nothing. Instead, the University disciplined him and used the distress its refusals caused as a pretext. *Wagoner v. Lemmon*, 778 F.3d 586 (7th Cir. 2015).

**141.** Disability-based discipline and retaliation. The summons and expulsion followed his complaints within months, rested on altered records, and had no academic basis. 29 U.S.C. § 794(d); 42 U.S.C. § 12203(a).

**142.** Title III (injunctive relief only). The University failed to modify exam practices or offer an equivalent hygiene accommodation. Plaintiff seeks reinstatement and so faces a real threat of the same denials. He seeks declaratory and injunctive relief, costs, and fees (42 U.S.C. § 12188(a)), and no damages under this subpart.

**143.** Plaintiff suffered physical and academic harm, lost his enrollment, and suffered distress. He seeks all kinds of damages.

**COUNT IV**

**Title IX - Sex Discrimination, Deliberate Indifference to Harassment and Assault, and Retaliation**

**Against Defendant The University of Chicago**

(20 U.S.C. § 1681(a))

**144.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against 1Defendant The University of Chicago only.

**145.** The University runs an education program that receives federal funds. Plaintiff is male.

**146.** Sex discrimination. The University treated his assault report less seriously than female students' reports: it told him to "be a man," refused a No-Contact Directive, held no hearing, and, on information and belief, gave female students support. His sex was a reason.

**147.** Deliberate indifference. F.S., the Library Staff Member, and Respondent A harassed or assaulted him in University programs. Officials with power to act had actual notice and responded unreasonably: "be like a strong man," no action on F.S. or the Library Staff Member, no directive, no hearing, no outcome. *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999). The harassment continued and denied him equal access to education. The University pursued a charge against the victim while protecting the accused.

**148.** Retaliation. After Plaintiff reported harassment and assault and complained the process was failing him, the University within weeks fired, disciplined, and expelled him. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167(2005).

**149.** Plaintiff lost his enrollment, opportunities, and wages and suffered distress and reputational harm. He seeks all kinds of damages.

**COUNT V**

**Title VI - National-Origin Discrimination and Retaliation in the Education Program**

**Against Defendant The University of Chicago**

(42 U.S.C. § 2000d; 34 C.F.R. § 100.7(e))

**150.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**151.** The University receives federal funds. Plaintiff is of Indian national origin and South Asian ancestry. This Count concerns the education program (discipline and expulsion), not employment. 42 U.S.C. § 2000d-3.

**152.** Discrimination: The University imposed a process and expulsion on Plaintiff that it did not impose on others who admitted comparable violations, broke its own rules, failed to protect an Indian student assaulted with ethnic slurs, and held his transcript. His national origin was a motivating reason. *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001).

**153.** Retaliation: After his January 19, 2025 Title VI complaint, the University issued the summons in 24 days, expelled him in 37, and delayed his transcript. The timing, broken rules, and shifting reasons show retaliation. 34 C.F.R. § 100.7(e). Also see: https://www.ed.gov/laws-and-policy/civil-rights-laws/retaliation/retaliation-discrimination

**154.** Plaintiff lost his enrollment and suffered reputational harm and distress. He seeks all kinds of damages.

**COUNT VI**

**42 U.S.C. § 1981 - Race, Ancestry, and Ethnicity Discrimination, Harassment, and Retaliation Against Defendant The University of Chicago**

(42 U.S.C. § 1981(a)–(b))

**155.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**156.** Section 1981 bars discrimination based on ancestry and ethnic characteristics. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987). Plaintiff is of Indian and South Asian ancestry. He had employment and enrollment contracts with the University.

**157.** Discrimination and harassment: The University impaired those contracts by firing, disciplining, and expelling him and by harassment and slurs. But for his race, ancestry, and ethnicity, it would not have.

**158.** Retaliation: After Plaintiff opposed ancestry discrimination, which the University knew, it fired, and expelled him. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 457 (2008).

**159.** Plaintiff lost wages and enrollment and suffered distress and reputational harm. He seeks compensatory and punitive damages.

**COUNT VII**

**42 U.S.C. § 1983 - First Amendment Retaliation, Due Process, and State-Created Danger Against Defendant The University of Chicago**

(42 U.S.C. § 1983; U.S. Const. amends. I, XIV)

**160.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**161.** State action. The University administers the federal SEVIS program that controls its international students' status; its police exercise powers conferred by Illinois law, and UCPD vehicles watched Plaintiff; and its functions are entwined with federal and state funding and regulation. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,(2001).

**162.** First Amendment retaliation. Plaintiff spoke on public concerns: gas cylinders, food safety, misuse of funds, assault, wage practices, and discrimination. The University fired and expelled him, manipulated his transcript, and had UCPD watch his home. Its reasons rest on altered records. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle* (1977).

**163.** Procedural due process. Plaintiff had a protected interest in continued enrollment. *Goss v. Lopez*, 419 U.S. (1975). The University took it with stale or fabricated charges, no effective support person, suppressed evidence, a non-voting dean on the panel, altered records, the wrong manual, and a sanction before the appeal period ended.

**164.** Substantive due process and state-created danger. After Plaintiff reported an assault and death threat, the University refused a No-Contact Directive, left him exposed to a known assailant, and

turned discipline on the complainant. These acts increased his danger and shock the conscience. *Reed v. Gardner*, 986 F.2d 1122, 1126–27 (7th Cir. 1993).

**165.** Plaintiff lost his enrollment, income, and safety and suffered distress. He seeks compensatory and punitive damages, reinstatement, and fees (42 U.S.C. § 1988).

**COUNT VIII**

**Unpaid Overtime and Wages; Wage-Practice and FLSA Retaliation**

**Against Defendant The University of Chicago**

(29 U.S.C. §§ 206, 207, 215(a)(3), 216(b); 820 ILCS 115/4, 115/5, 115/14(a))

**166.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**167.** The University was Plaintiff's employer, and he was its non-exempt employee under the FLSA and the Illinois Wage Payment and Collection Act ("IWPCA").

**168.** Overtime and minimum wage (FLSA). The University did not pay overtime for hours over forty, did not pay for all hours worked, and paid for research studies in part in gift cards and credits. The violation was willful: it altered his time records. He is owed unpaid wages, equal liquidated damages, costs, and fees. 29 U.S.C. § 216(b).

**169.** Retaliation (FLSA). After Plaintiff complained of unpaid hours and gift-card pay, the University altered his payroll record, fired him, and cancelled his interview. 29 U.S.C. § 215(a)(3).

**170.** IWPCA. The University did not pay all wages earned and paid part in gift cards or credits, 820 ILCS 115/4, and did not pay final compensation in full, 820 ILCS 115/5. Plaintiff demanded correct pay. He seeks unpaid wages, statutory damages, costs, and fees. 820 ILCS 115/14(a).

**COUNT IX**

**Illinois Whistleblower Act, Retaliatory Discharge, and False Claims Act Retaliation**

**Against Defendant The University of Chicago**

(740 ILCS 174/15, 174/30; Illinois common law; 31 U.S.C. § 3730(h))

**171.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**172.** Plaintiff was the University's employee under the Illinois Whistleblower Act, 740 ILCS 174/5.

**173.** Whistleblower Act. Plaintiff disclosed to the University Police and other officials an assault, unsafe gas cylinders, food-safety deficiencies, and unpaid wages, and said he would report to outside agencies. He reasonably believed these were violations of law. The University then fired, disciplined, and expelled him. 740 ILCS 174/15, 174/30.

**174.** Retaliatory discharge: The University discharged him from at least seven jobs in retaliation for those reports. That violates Illinois public policy favoring crime reporting, workplace safety, and payment of earned wages.

**175.** False Claims Act retaliation: On information and belief, his reports included misuse of federal or grant funds, and he took lawful steps to stop it. The University retaliated by discharge, discipline, and expulsion. 31 U.S.C. § 3730(h). He seeks a hundred times back pay, interest, special damages, costs, punitive damages, defamatory damages, and fees.

**176.** Plaintiff lost wages and benefits and suffered distress and reputational harm.

**COUNT X**
**Breach of Contract and Implied Covenant of Good Faith; Breach of Collective-Bargaining Agreements**
**Against Defendant The University of Chicago**
(Illinois common law; 29 U.S.C. § 185)

**177.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**178.** Enrolment contract: When Plaintiff enrolled and paid tuition, he and the University formed a contract whose terms include the published discipline policies, the Harris School's procedures, the 60-day limit, the right to a support person, and the University's grievance and accommodation policies. Plaintiff performed.

**179.** Breach: The University started discipline late, used the wrong manual, refused an effective support person, ignored exculpatory evidence, relied on altered records, sanctioned him early, and expelled him. It also used its discretion arbitrarily and in bad faith. Plaintiff does not ask the Court to review academic judgment, only the University's failure to follow its promised procedures.

**180.** Collective-bargaining agreements: The University's agreements with GSU and TL743 bound it to their procedures. It breached them by firing him from the Mansueto job without notice, denying him union representation, and ignoring the grievance procedure. Because GSU and TL743 breached their duties (Counts XIV and XVI), he may enforce them. 29 U.S.C. § 185.

**181.** Plaintiff lost his degree program, tuition, and wages.

**COUNT XI**
**Illinois Torts - Assault, Battery, Harassment, Intentional Infliction of Emotional Distress, Negligence, and Interference with Prospective Advantage**
**Against Defendant The University of Chicago**
(Illinois common law)

**182.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**183.** Assault and battery. Respondent A, a university student and employee, assaulted Plaintiff and threatened to kill him. F.S. and the Library Staff Member, University employees, touched him without consent. The University is liable to the extent it acted within its roles and because it ratified the acts by inaction and, as to Respondent A, by protecting him.

**184.** Intentional infliction of emotional distress (harassment, abuse, shaming): The University told a male assault victim, threatened with death, to "be a man," refused protection, ridiculed his condition and faith, relied on a form he did not submit, expelled him so that he had to leave the country, and, on information and belief, let his information reach debt collectors who assaulted his family in India. That is extreme and outrageous. It knew he was an international student, disabled, and a recent victim, and that severe distress was highly probable. He suffered it.

**185.** Negligence, negligent supervision and retention, failure to protect: The University owed him reasonable care as employer, as operator of his workplaces, and because it undertook to respond

to reports of assault. It breached that duty by not supervising or separating F.S. and the Library Staff Member and by taking no protective step about Respondent A, causing continued harassment, fear, and injury.

**186.** Interference with prospective economic advantage. Plaintiff reasonably expected the full-time HPC Administrator job and admission to programs including Harvard Law School. The University knew, cancelled the interview, and delayed and marked his transcript, intentionally interfering and causing loss.

**187.** Plaintiff seeks compensatory and punitive damages.

**COUNT XII**

**Personnel-Record Violations; Defamation Per Se; False Light**

**Against Defendant The University of Chicago**

(820 ILCS 40/2, 40/7, 40/12; Illinois common law)

**188.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**189.** Personnel Record Review Act. The University gave Plaintiff only temporary, view-only access to his file, refused copies, left out grievance documents, added a July 9, 2024 document, and told the Illinois Department of Labor it had no duty to provide records while resisting production elsewhere. 820 ILCS 40/2. It disclosed his disciplinary record in a U.S. Department of Labor proceeding, and on information and belief to others, without notice. 820 ILCS 40/7. The violations were willful. 820 ILCS 40/12. University also violated FERPA and more federal statutes, but private action is not possible and the Dept. of Education is not willing to do anything.

**190.** Defamation per se. In 2025 and 2026, the University published false statements about Plaintiff in disciplinary records, transcript notations, and disclosures to third parties, including Abu Bakar, debt collectors, prospective employers, and academic programs. They said he committed misconduct and dishonesty: submitting the Travel Notification Form, falsifying work and tax records, and copying work. He did not. The statements impute dishonesty and are actionable per se, or alternatively per quod, with special damages in lost jobs and opportunities. This Count does not rest on statements made in a judicial proceeding.

**191.** False light: The same publications put Plaintiff in a false light highly offensive to a reasonable person, with knowledge or reckless disregard of their falsity, because the University controlled the records.

**192.** Plaintiff seeks damages, expungement, costs, fees, and punitive damages where allowed.

**COUNT XIII**

**Labor-Organization Discrimination and Retaliation - Title VII, ADA, and 42 U.S.C. § 1981**

**Against Defendant Graduate Students United**

(42 U.S.C. §§ 2000e-2(c), 2000e-3(a), 12112(a), 12203(a), 1981)

**193.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant Graduate Students United only.

**194.** GSU is a labor organization. Plaintiff is of Indian national origin and ancestry, Hindu, male, and disabled, and GSU knew it. He timely filed EEOC Charge No. 440-2026-05623 and sues within 90 days.

**195.** Title VII and ADA. GSU promised the grievance would proceed regardless of discipline, took it to Step 3 after the expulsion, never went to Step 4, and ignored his follow-up. It treated him worse than similar members outside his protected classes and dropped his grievance after his protected activity. "Less resources" does not fit the timing or its assurance, and pretext is for the jury.

**196.** Section 1981. GSU intentionally impaired Plaintiff's union relationship and contract benefits because of his race, ancestry, and ethnicity, and in retaliation for opposing discrimination. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669 (1987).

**197.** Plaintiff lost fair representation, his expulsion went unchallenged, and he suffered lost wages, enrollment, and distress. He seeks compensatory and punitive damages, injunctive relief, and fees.

**COUNT XIV**

**Breach of the Duty of Fair Representation and Breach of Contract**

**Against Defendant Graduate Students United**

(NLRA § 9(a), 29 U.S.C. § 159(a); *Vaca v. Sipes*, 386 U.S. 171 (1967); Illinois common law)

**198.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant Graduate Students United only.

**199.** Duty of fair representation. GSU is the exclusive representative of the unit that included Plaintiff's Mansueto job and owed him fair representation, without hostility, arbitrariness, or bad faith. *Vaca v. Sipes*, 386 U.S. 171, 177, 190 (1967). After filing Steps 1 and 3 and assuring him it would proceed, GSU abandoned the grievance without going to Step 4, investigating, explaining, or telling him his options. That was arbitrary and, on information and belief, discriminatory and in bad faith.

**200.** Breach of contract and implied covenant (alternative). As a dues-paying member, Plaintiff was a party to, or beneficiary of, GSU's agreement with the University, which set a grievance procedure GSU had to run in good faith. GSU breached it.

**201.** Plaintiff lost the chance to reverse the firings and expulsion, with lost wages, enrollment, and distress. If a shorter limitations period applies, GSU's refusal continues and the period is tolled. He seeks damages and an order requiring GSU to pursue the grievance.

**COUNT XV**

**Labor-Organization Discrimination and Retaliation - Title VII, ADA, and 42 U.S.C. § 1981**

**Against Defendant International Brotherhood of Teamsters Local Union 743**

(42 U.S.C. §§ 2000e-2(c), 2000e-3(a), 12112(a), 12203(a), 1981)

**202.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant International Brotherhood of Teamsters Local Union 743 only.

**203.** TL743 is a labor organization. Plaintiff is of Indian national origin and ancestry, Hindu, male, and disabled, and TL743 knew it. He timely filed EEOC Charge No. 440-2026-05621 and sues within 90 days.

**204.** Title VII and ADA. TL743 refused to file any grievance three times: September 2024, February 2025, and December 20, 2025. Its February reason, "not an active member," did not apply to conduct during his dues-paying period. It treated him worse than similar members outside his protected classes, after his complaints of sexual touching and discrimination.

**205.** Section 1981. TL743 intentionally impaired Plaintiff's union relationship and contract benefits because of his race, ancestry, and ethnicity, and in retaliation for opposing discrimination. *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669 (1987).

**206.** Plaintiff lost fair representation, the Library harassment went unaddressed, and the Library hours cited in his discipline went unchallenged. He seeks compensatory and punitive damages, injunctive relief, and fees.

**COUNT XVI**
**Breach of the Duty of Fair Representation, Breach of Contract, and Unjust Enrichment**
**Against Defendant International Brotherhood of Teamsters Local Union 743**
(NLRA § 9(a), 29 U.S.C. § 159(a); *Vaca v. Sipes*, 386 U.S. 171 (1967); Illinois common law)

**207.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant International Brotherhood of Teamsters Local Union 743 only.

**208.** Duty of fair representation. TL743 is the exclusive representative of the unit that included Plaintiff's Library job and owed him fair representation. *Vaca*, 386 U.S. at 177, 190. It ignored his September 2024 request, refused his February 2025 request on an arbitrary ground, and ignored his December 20, 2025 request to six officials, without investigating or explaining. Refusing representation for a dispute that arose while he paid dues is arbitrary. On information and belief, it was also discriminatory and in bad faith.

**209.** Breach of contract and unjust enrichment (alternative). TL743 took Plaintiff's dues while refusing to represent him in disputes from that period, breaching the implied membership agreement and unjustly enriching itself.

**210.** Plaintiff lost the chance to challenge the Library harassment and the use of his Library hours in the discipline. If a shorter limitations period applies, TL743's refusal continues and the period is tolled. He seeks damages, restitution of dues, and an order requiring TL743 to process a grievance, including retroactively.

**COUNT XVII**
**ADA Title II, Section 504, ADA Retaliation, and Title VI**
**Against Defendant City of Chicago**
(42 U.S.C. §§ 12132, 12203(a)–(b), 2000d; 28 C.F.R. §§ 35.130(b)(7), 35.160; 29 U.S.C. § 794(a))

**211.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant City of Chicago only.

**212.** The City is a public entity that, on information and belief, receives federal funds. Plaintiff is a qualified individual with a disability. He timely filed EEOC Charge No. 440-2026-05619 and cites it, though these claims need no charge.

**213.** Failure to accommodate. Plaintiff asked for email filing and service, remote participation, effective communication, and accessible crime reporting. CCHR refused categorically, with no interactive process, though it took the University's email filings. CPD insisted on in-person participation it knew he could not provide. The requests were reasonable, and CCHR's Director and CPD personnel knew and were deliberately indifferent.

**214.** Discrimination & Retaliation: After Plaintiff requested accommodation, objected to unequal treatment, petitioned the Circuit Court, and made FOIA requests, CCHR threatened dismissal, issued a one-sided order, withheld records, and dismissed his complaint, and CPD acted only after pre-suit notices. 42 U.S.C. § 12203(a)–(b).

**215.** Title VI: On information and belief, CCHR and CPD receive federal funds. The City denied him CCHR's process and police services on terms it gives others: it favored the University and made no report of an assault with racial and religious slurs. On information and belief, his national origin and ancestry were a motivating reason.

**216.** Plaintiff was shut out of CCHR's process and police services, denied crime-victim compensation, and suffered distress. He seeks damages and injunctive and declaratory relief.

**COUNT XVIII**

**42 U.S.C. § 1983 - Equal Protection, Due Process, Access to Courts, and First Amendment Retaliation (*Monell*)**

**Against Defendant City of Chicago**

(42 U.S.C. § 1983; U.S. Const. amends. I, XIV)

**217.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant City of Chicago only.

**218.** The City, through CCHR, CPD, and COPA, acted under color of state law.

**219.** Equal protection. CCHR accepted the University's email filings and extension within about thirty minutes, excused its late statement, and rejected Plaintiff's identical filings with a dismissal threat. It also refused to file complaints against the unions. On information and belief, CPD documents other victims' reports. There was no rational basis, since the City's rules allow email filing. The difference was intentional and, on information and belief, because of his national origin, race, and disability, or irrational and malicious. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

**220.** Procedural due process. Plaintiff has a protected interest in his pending CCHR complaint and in the crime-victim compensation that required a police report. CCHR rejected his filings and threatened dismissal with no notice of how to cure, no hearing, and no neutral decisionmaker, then dismissed his complaint. CPD and COPA made no record or decision. No adequate post-deprivation remedy existed.

**221.** Access to courts; First Amendment retaliation. CPD's failure to create any report for over a year blocked his access to compensation and review, and COPA's referral back to CPD made review illusory. After Plaintiff petitioned the Circuit Court and sought records, CCHR raised barriers and threatened sanctions in retaliation.

**222.** Municipal liability. These acts reflect City policy or custom, the decisions of officials with final authority over CCHR case administration and CPD report-taking, or a failure to train and supervise after notice. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

**223.** Plaintiff lost his CCHR remedies, was denied compensation, was chilled from seeking redress, and suffered distress. He seeks damages, declaratory relief, and injunctive relief.

**COUNT XIX**

**Administrative Procedure Act, Mandamus, and Fifth Amendment Due Process (Non-Monetary Relief) Against Defendant National Labor Relations Board**

(5 U.S.C. §§ 702, 706(1), 706(2); 28 U.S.C. § 1361; U.S. Const. amend. V)

**224.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant National Labor Relations Board only.

**225.** Plaintiff seeks only declaratory and non-monetary relief. He challenges the biased process by which the NLRB investigated and dismissed his charges. The April 30, 2026 dismissals are final agency action, and he has no other adequate remedy. 5 U.S.C. §§ 701(b)(1), 704.

**226.** APA, 5 U.S.C. § 706(2). The dismissals were arbitrary, capricious, contrary to law, and without required procedure. Region 13 kept all four charges with the agent whose impartiality Plaintiff had challenged. That agent said he would tell the director and seniors and they would dismiss the charge, and that the University would share adverse information if Plaintiff did not withhold evidence. All four were dismissed the same day, months after Plaintiff's complaint, on grounds that accepted unasserted defenses, misstated the record, and ignored evidence of fabricated time entries. *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

**227.** APA, 5 U.S.C. § 706(1), and mandamus, 28 U.S.C. § 1361. The NLRB must investigate a charge impartially. 29 U.S.C. § 160; 29 C.F.R. § 101.4. It denied or ignored, without explanation, his requests for reassignment, subpoenas, an independent medical evaluation, and mediation. Plaintiff asks the Court to compel an impartial investigation.

**228.** Fifth Amendment due process. Plaintiff was entitled to an impartial decision-maker. *Withrow v. Larkin*, 421 U.S. 35, 46–47 (1975). Giving every charge to the agent he had challenged, and that agent's statements, created an unacceptable risk of bias.

**229.** Plaintiff seeks a declaration that the process was unlawful; vacatur of the dismissals in Case Nos. 13-CA-366016, 13-CB-376043, 13-CB-376044, and 13-CA-383755; remand for a new investigation by a different agent and region; production of the investigative record; and an order against retaliation for filing this action. He seeks damages **only if** the NLRB is considered non-immune from sovereign immunity.

**COUNT XX**

**Conspiracy and Aiding and Abetting**

**Against Defendants The University of Chicago, Graduate Students United, Teamsters Local Union 743, and the City of Chicago**

(42 U.S.C. §§ 1985(3), 1986; Illinois common law)

**230.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against the University, GSU, TL743, and the City, and each of them.

**231.** Conspiracy (42 U.S.C. § 1985(3)). The University, GSU, TL743, and the City agreed, expressly or tacitly, to deprive Plaintiff of equal protection by closing every avenue to challenge the

University's discrimination: the grievance process (GSU, TL743), the municipal civil-rights process (CCHR), and police documentation (CPD, COPA). The agreement is shown by the timing of the summons and expulsion, GSU's abandonment, TL743's refusals, CCHR's one-sided order and the University's use of it elsewhere, and the communications alleged on information and belief. Class-based animus toward Plaintiff's race, national origin, religion, and sex motivated it.

**232.** Overt acts. (a) The summons and expulsion; (b) GSU's abandonment; (c) TL743's refusals; (d) CCHR's refusal to file complaints against the unions and its one-sided order; and (e) CPD's and COPA's refusals to document or review the report. Each Defendant that knew of the conspiracy and could have stopped it is liable under 42 U.S.C. § 1986.

**233.** Illinois civil conspiracy. In the alternative, Defendants knowingly agreed to accomplish an unlawful purpose, or a lawful one by unlawful means, and committed torts in furtherance, including those in Counts IX, XI, XII, and XXII. *Adcock v. Brakegate, Ltd.*, 164 Ill. 2d 54 (1994). An agreement may be inferred from coordinated timing and shared aims.

**234.** Aiding and abetting. Each Defendant knew of another's wrongful conduct and substantially assisted it. GSU and TL743 aided the University by abandoning or refusing grievances. The University aided the unions' breaches by expelling Plaintiff before any grievance was resolved. The City aided the unions by refusing to file complaints against them, and aided the University by accepting its filings and issuing a one-sided order.

**235.** Defendants' joint acts magnified the harm beyond what any one caused. Plaintiff seeks compensatory damages, punitive damages against the University, GSU, and TL743, joint and several liability, and injunctive relief.

**COUNT XXI**
**Promissory Estoppel and Negligent Misrepresentation (Pleaded in the Alternative to Count XIV)**
**Against Defendant Graduate Students United**
(Illinois common law)

**236.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant Graduate Students United only.

**237.** Promissory estoppel. After the February 1, 2025 grievance, GSU unambiguously promised Plaintiff by phone that he was fully protected and the grievance would go forward regardless of any discipline. GSU should have expected him to rely, and he did, in choosing to pursue his claims through the union. GSU broke the promise. He was harmed, and only enforcement avoids injustice.

**238.** Negligent misrepresentation. In the course of its business of representing members, GSU gave Plaintiff false information for his guidance: that he was fully protected and the grievance would proceed regardless of discipline. GSU did not use reasonable care in obtaining or communicating it. Plaintiff justifiably relied and was harmed.

**239.** Plaintiff lost the chance to challenge the firings and expulsion by other means and suffered lost wages, enrollment, and distress. He seeks compensatory damages.

**COUNT XXII**

**Invasion of Privacy - Public Disclosure of Private Facts and Intrusion upon Seclusion**

**Against Defendant The University of Chicago**

(Illinois common law)

**240.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**241.** Public disclosure of private facts. The University disclosed Plaintiff's confidential expulsion record and, on information and belief, his disciplinary information and personal data, to third parties, including Abu Bakar and debt-collection agents, and more, without notice or consent. These facts were private, their disclosure would be highly offensive to a reasonable person, and they were of no legitimate public concern. The disclosures led to contacts and threats & assault against Plaintiff's family in India. This subpart does not rest on statements made in a judicial proceeding.

**242.** Intrusion upon seclusion. On information and belief, the University, through UCPD and others acting for or encouraged by it, parked vehicles near Plaintiff's home and made anonymous calls and messages to deter him from legal action. This was an intentional, unauthorized intrusion into his private affairs, highly offensive to a reasonable person, and it caused him anguish and suffering.

**243.** Plaintiff seeks compensatory and punitive damages.

**COUNT XXIII**

**Illinois Gender Violence Act**

**Against Defendant The University of Chicago**

(740 ILCS 82/5, 82/10, 82/11, 82/20)

**244.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**245.** Gender-related violence. The Act defines gender-related violence as a form of sex discrimination, including physical intrusion or invasion of a sexual nature under coercive conditions and acts of violence or physical aggression committed at least in part because of sex. 740 ILCS 82/5. In about September or October 2024, in the SSCS office, F.S. touched Plaintiff's private parts without consent and kept making unwelcome contact. From about June through September 2024, in Regenstein Document Delivery, the Library Staff Member touched Plaintiff's hips, backside, and shoulders against his will, continued after he objected, and then restricted his restroom breaks. On November 22, 2024, Respondent A knocked Plaintiff down and struck his private parts, neck, and face. Each act was a sexual physical intrusion under coercive conditions, a violent act committed at least in part because of Plaintiff's sex, or both.

**246.** Employees or agents; workplace. F.S., the Library Staff Member, and Respondent A were University employees or agents. The touching by F.S. and the Library Staff Member occurred in University workplaces. Respondent A assaulted Plaintiff on University premises.

**247.** Failure to take remedial measures. 740 ILCS 82/11. Plaintiff reported the conduct to his supervisor Kerry Sharkey, to a Library supervisor, and in November 2024 to CARES, the Office for Sexual Misconduct Prevention, Dean Lambert, Dean Biddle, and the University Police. The University

separated no one, disciplined no one, issued no No-Contact Directive, held no hearing, and reported no outcome. The conduct continued.

**248.** Plaintiff filed this action on July 16, 2025, within the period in 740 ILCS 82/20.

**249.** Plaintiff seeks compensatory and punitive damages, injunctive relief, and costs and attorney's fees as the Act allows.

**COUNT XXIV**

**Fraud and Fraudulent Concealment**

**Against Defendant The University of Chicago**

(Illinois common law)

**250.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**251.** Misrepresentation Between 2023 and 2025, University supervisors and Human Resources assigned or approved Plaintiff's hours across multiple jobs, on about three occasions approved them, and paid him each time. The University treated Maroon Dollars, gift cards, and stored-value credits as payment for work. These representations were false when made, because the University knew it would later count his combined hours as violations and that credits were not wages, and it made them to obtain his labor.

**252.** Concealment: In about January 2025, Arun Banotra removed hours from Plaintiff's July 2024 Workday records, and Heidi Lee added 11.1 hours after the fact. The University told Plaintiff of neither change, then removed all hours from his Workday account and cut off his access to his own time records. It also placed in his file a July 9, 2024 document it did not disclose in the discipline. The University controlled these records and had made partial disclosures of approved and paid hours, so it had a duty to speak.

**253.** Reliance: Plaintiff kept working the hours the University approved, accepted credits in place of payroll pay, and did not contest ALL his records or seek correction, he contested some. Had he known the truth, he would have objected, grieved, demanded correction, and preserved evidence before the February 2025 proceeding.

**254.** Plaintiff lost wages, jobs, and enrollment and suffered distress. He seeks compensatory and punitive damages.

**COUNT XXV**

**Spoliation of Evidence**

**Against Defendant The University of Chicago**

(Illinois common law)

**255.** Plaintiff incorporates herein all of the preceding paragraphs and allegations of this Amended Complaint set out in Parts I through VII above, as though fully stated here, and no other Count. This Count is against Defendant The University of Chicago only.

**256.** Duty. The University controlled the evidence. By the January 19, 2025 CARES complaint, the February 1, 2025 grievance, and Plaintiff's request at the February 24, 2025 disciplinary meeting for IP logs, metadata, timestamps, and audit trails showing who created the Travel Notification Form, the University knew or should have known the evidence was material to foreseeable litigation.

**257.** Breach On information and belief, the University failed to preserve those logs and the original Workday time entries, or altered or destroyed them, and did not produce them.

**258.** Causation and harm. The loss impairs Plaintiff's ability to prove he did not submit the form and did not exceed work-hour limits, and so to prove his claims in this action. The University's conduct was negligent or, alternatively, willful.

**259.** Pleaded in the alternative as Rule 8(d)(2)–(3) allows, and to the extent the evidence cannot be recovered in discovery. Plaintiff seeks compensatory and punitive damages and all sanctions available.

## IX. PRAYER FOR RELIEF

**260.** Plaintiff asks the Court to enter judgment for him and against each Defendant on the Counts asserted against it, and to award the following relief to the extent available under each Count:

**(a)** a declaration under 28 U.S.C. § 2201 that Defendants' conduct violated the federal statutes, the Constitution, and the Illinois laws on which the Counts rest, and that the February 25, 2025 expulsion and the disciplinary findings are void for unfair process, fabricated evidence, and retaliatory & discriminative motives;

**(b)** against the University, an order to (1) reinstate Plaintiff to the Harris School, with accommodations, and to his student jobs; (2) expunge the expulsion and findings; (3) correct the Workday and payroll records that were altered or rolled back; (4) release his transcript, without any notation; and (5) stop retaliation, surveillance, intimidation, and disclosure of his confidential information;

**(c)** against GSU and TL743, an order to process Plaintiff's grievances through every contractual step, including arbitration and retroactive processing, to give him fair representation, and to stop discrimination and retaliation;

**(d)** against the City, an order to (1) accept Plaintiff's filings, service, and remote participation by email as a disability accommodation; (2) reinstate his CCHR complaint and process it before a neutral decisionmaker with the same procedures other parties get, and process his complaints against GSU and TL743 or refer them as the Memorandum of Understanding requires; (3) create and give him a complete police report and records of his November 22, 2024 report; (4) stop retaliation; and (5) preserve all related records;

**(e)** against the NLRB, a declaration that its process was unlawful, vacatur of the April 30, 2026 dismissals and remand for a new, impartial investigation by a different agent and region, production of the investigative record, and an order against retaliation, under 5 U.S.C. §§ 702 and 706, 28 U.S.C. § 1361, and the Fifth Amendment;

**(f)** back pay, front pay or reinstatement, and lost benefits, from each Defendant liable under the Counts that allow them;

**(g)** compensatory damages, including for emotional distress, physical harm, reputational harm, and lost educational and professional opportunities, to the extent available under each Count, in the amounts proved at trial and not less than: (1) $500,000,000 against the University of Chicago; (2) $500,000,000 against the City; (3) $500,000 against Teamsters Local 743; and (4) $500,000 against Graduate Students United;

**(h)** punitive damages against the University, Graduate Students United, and Teamsters Local 743 under 42 U.S.C. §§ 1981, 1981a(b)(1), and 1985, 740 ILCS 82/15, and Illinois common law, in amounts to be determined by the jury to punish and deter, to the extent permitted by law. Plaintiff

does not seek punitive damages from the City or the NLRB; unpaid wages, liquidated damages under 29 U.S.C. § 216(b), and statutory damages under 820 ILCS 115/14(a);

**(i)** damages for breach of contract and on the alternative theories in Count XXI, including tuition and fees paid for a program the University did not let Plaintiff finish, and restitution of dues paid to TL743, and GSU;

**(j)** an order under Rules 1, 12(a)(4), 12(e), and 16 directing each Defendant to answer each numbered paragraph and each Count naming it, and to identify by Count and paragraph any ground on which it moves to dismiss, so that the disputes in Part VI may be tried;

**(k)** an order requiring all Defendants to preserve relevant evidence, including Workday records and audit logs, Travel Notification Form metadata, access logs, email, and disciplinary, grievance, and academic files;

**(l)** pre-judgment and post-judgment interest;

**(m)** costs and, if Plaintiff is represented, reasonable attorney's fees under the statutes cited in the Counts; and

**(n)** any other relief the Court finds just.

**X. JURY DEMAND**

**261.** Under Federal Rule of Civil Procedure 38(b) and the Seventh Amendment, Plaintiff demands a jury trial on all issues so triable.

Dated: November 2, 2026

Respectfully submitted,

/s/ Dipesh Singla
Dipesh Singla, Plaintiff, pro se
184 NAC, Shivalik Enclave, Manimajra
Chandigarh 160101, India
Email: dipeshsingla668@gmail.com
Telephone: +1 (773) 457-1046

**VERIFICATION**

I, Dipesh Singla, declare under penalty of perjury under 28 U.S.C. § 1746 that I have read this Amended Complaint and its factual allegations are true and correct of my own knowledge, except those stated on information and belief, which I believe to be true.

/s/ Dipesh Singla

**CERTIFICATE OF SERVICE**

I certify that on November 2, 2026, I filed this Amended Complaint through the Court's Pro Se Efile Dropbox, I am serving each Defendant by email only, and also asking US marshals to serve them, Each entity have access to emails, and commit communication regularly via emails. Because Plaintiff has asked to proceed in forma pauperis, Plaintiff requests that, as in forma pauperis status is granted, the Court direct the United States Marshals Service to serve the summons and this Amended Complaint on each Defendant at the addresses listed below. Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

(a) The University of Chicago: provost@uchicago.edu; president@uchicago.edu; infocenter@uchicago.edu. Address for Marshals Service: 5801 S. Ellis Avenue, Chicago, Illinois 60637.

(b) Graduate Students United: graduatestudentsunited@gmail.com. Address for Marshals Service: 5500 S. Woodlawn Avenue, Chicago, Illinois.

(c) International Brotherhood of Teamsters Local Union 743: hjohnson@teamsterslocal743.com; lmassey@teamsterslocal743.com. Address for Marshals Service: 4620 S. Tripp Avenue, Chicago, Illinois 60632.

(d) City of Chicago: cchr@cityofchicago.org; cchrfilings@cityofchicago.org. Address for Marshals Service: City Hall, 121 N. LaSalle Street, Chicago, Illinois 60602.

(e) National Labor Relations Board: publicinfo@nlrb.gov. Addresses for Marshals Service: 1015 Half Street SE, Washington, D.C. 20570-0001; and, under Fed. R. Civ. P. 4(i), the United States Attorney for the Northern District of Illinois, 219 South Dearborn Street, Chicago, Illinois 60604, and the Attorney General of the United States, 950 Pennsylvania Avenue NW, Washington, D.C. 20530.

/s/ Dipesh Singla
Dipesh Singla, Plaintiff, pro se